Filing # 45998210 E-Filed 09/01/2016 05:37:57 PM

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
## IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

      Plaintiff,                                 CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation.

      Defendants.
_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
## COMPEL DEPOSITION TESTIMONY

NOW COMES the Plaintiff, ASI Holding Company, Inc. ("ASI"), by and through its undersigned counsel, and files this Opposition to Defendant's Motion to Compel Deposition testimony, and in support states as follows:

## INTRODUCTION

ASI filed this action against Defendants for theft of trade secrets and breach of non-disclosure agreements. In the instant Motion, Defendants seek to compel ten (10) depositions, which Defendants unilaterally noticed to occur, without giving Plaintiff even a full 48 hours-notice to coordinate. Moreover, ASI was *actually in the process of working with the witnesses to coordinate all ten depositions*, when Defendants unilaterally noticed the depositions. Those depositions are now the subject of Plaintiff's Motion for Protective Order, based on Defendants being in continuing contempt of this Court's orders and subject to show cause as to why Defendants' pleadings should not be stricken.

1

It is the height of hypocrisy that Defendants file the instant motion to compel depositions, when Defendants continue to be in violation of this Court's most recent contempt order.  Defendants' Motion is merely an attempt to obfuscate Defendants' own misconduct.  Plaintiff urges the Court to consider the frivolity of Defendants' motion, including the false representations, mischaracterizations of events, and material omissions to the Court, in evaluating the conduct of Defendants in ruling on the Plaintiff's Motion to Strike Defendants' Pleadings.

For the reasons set forth herein, procrastination on the party of Defendants does not constitute grounds to compel that which does not even need to be compelled.  Plaintiff respectfully requests that this Court deny Defendants' Motion to Compel Deposition Testimony, and to award Plaintiff its attorneys' fees and costs incurred in having to respond to this Motion.

## BACKGROUND

The Defendants' purported "grounds to compel" depositions are the sole and exclusive product of Defendants' own procrastination and contempt of Court orders.  On August 31, 2016, Defendants filed this Motion to compel depositions of ten (10) witnesses, most of whom are nonparty employees of Plaintiff. Defendants concede that Defendants did not even reach out to schedule these 10 depositions until August 24, 2016, which was only three weeks prior to the discovery cut-off. *See* Def's. Mtn. to Compel. at para. 6.  Moreover, by the time Defendants finally requested the depositions, there were only five (5) available dates between August 24 and the discovery cut-off.  When Plaintiff's counsel pointed this fact out, Defendants sought to require Plaintiff, Plaintiffs' counsel and nonparty witnesses to sit for depositions after hours and on

2

weekends to compensate for Defendants' own tardiness in discovery.

Rather than "stonewall," as Defendants' motion characterizes, Plaintiff and its attorney immediately engaged with Defendants to accommodate Defendants' requests.

- Plaintiff's counsel *did not object to the untimely nature of the request and confirmed a willingness to work afterhours* to accommodate this belated, unreasonable request for excessive depositions.

- *That same day,* Plaintiff responded to confirm the deposition of ASI's corporate officer Darrell Blanton, the primary witness requested by Defendants. *See* Def's. Mtn. to Compel. at para. 7.

- *The very next day,* Plaintiff confirmed the deposition of two more of the ten witnesses. *See* Def's. Mtn. to Compel. at para. 7.

- *In less than 48 hours from the Defendants' request,* Plaintiff confirmed dates, times and agreed to voluntarily produce 3 of the 10 deponents, and confirmed that Plaintiff's counsel was in coordination with the other 7 nonparty witnesses to confirm their availability.

Nonetheless, on August 26, Defendants proceeded to unilaterally set each of the remaining seven (7) individuals for deposition without permitting any further coordination. *See* Def's. Mtn. to Compel. at para 9. Still, Plaintiff did not seek a protective order as to those depositions, until Defendants (yet again) refused to comply with the Court's order to produce documents by August 26, which necessitated delaying the depositions of Defendants themselves.

**ARGUMENT**

As an initial matter, there is no need to compel these depositions.  If the Court grants Plaintiff's Motion to Strike Defendants' Pleadings, then the depositions will not even be needed.  Even if the Court does not strike the pleadings, as Plaintiff has always maintained, ASI is willing to coordinate the depositions, in a reasonable manner, that works for all parties, counsel and the witnesses themselves, once the Defendants have fully responded to prior discovery and sat for their depositions, as previously requested and ordered by the Court.  This motion is without merit and provides the Court with additional grounds on which to find the striking of Defendants' pleadings appropriate and necessary.

**I. Defendants Mischaracterize the Communications Between Counsel.**

Defendants' Motion falsely asserts that Plaintiff's counsel "stonewalled" Defendants.  Defendants represent to this Court that Plaintiff's counsel stated that "there simply was not enough time to conduct the requested depositions." *See* Def's. Mtn. to Compel at para 6(a). This is false.  There is no evidence of Plaintiff's counsel making any such statement.

As is clearly reflected in the Defendants' own Exhibit "A," on August 24, 2016, upon receiving the e-mail requesting the 10 depositions, Plaintiff's counsel responded *within the hour* as follows:

> Please advise how long you believe each witness' deposition will take.  There are only 5 days between this coming Monday and the cut-off deadline on which we are not already scheduled to take depositions and/or attend hearings in this matter.

Plaintiff's counsel never said "there was not enough time" for depositions, but merely

sought to confirm the amount of time for each deponent to assist in coordinating the completion of the 10 depositions in 5 days.

When Defendants responded that they did not know how long they needed for each of the 10 deponents, Plaintiff's counsel re-affirmed Plaintiff's willingness to coordinate the depositions.  Plaintiff's counsel responded:

> **We will do everything we can to work with you to schedule these depositions in good faith.** However, you have requested the depositions of ten individuals, and there are approximately five full days between now and the discovery cut-off deadline on which we are not already scheduled to take depositions or attend hearings in this matter.  Even assuming that we will make ourselves available each and every one of those days, I still cannot schedule ten full day depositions between now and September 15th.  Can you please let me know which individuals you are requesting a full day for?

Def's. Mtn. to Compel at Exhibit "A."

*Defendants' counsel then acknowledged the lack of available deposition dates*, and requested that the Plaintiff provide *seven* dates for depositions.  Still, Plaintiff's counsel did not assert that there "simply was not enough time to conduct the depositions."

To the contrary, Plaintiff responded as follows:

> Please confirm that you are seeking 7 full days of depositions. If so, please let me know when you would propose that we schedule those depositions between now and the discovery cut off deadline.

Def's. Mtn. to Compel at Exhibit "A."

In response, Defendants' counsel proposed five dates, with two depositions to occur on each date. *See* Def's. Mtn. to Compel at Exhibit "A."  Defendants' proposal simply ignored the previously scheduled hearings in this matter, which required Plaintiff's counsel to inquire as to how Defendant would work around the hearings. *See* Def's. Mtn.

to Compel at para. 6(b). In their Motion, Defendants' state that they provided "numerous

solutions" including:

> 1. Altering the start time of the September 7[th] hearing (pertaining to attorney's fees) or the depositions;
>
> 2. Resolving the matters underlying the September 8[th] hearing (pertaining to outstanding discovery requests); and
>
> 3. With regard to the September 12[th] hearing (allegedly pertaining to case management), Defendants reached out to the office of the Defendants' First Attorney of Record and this Court's Judicial Assistant: neither could locate a record of the hearing being scheduled. Nonetheless, Defendants suggested delaying the "case management conference" (scheduled to take place a mere four (4) days before this Matter's Pre-Trial Conference) so that valuable deposition testimony could be taken.

Def's. Mtn. to Compel at para. 6(b).

To falsely mislead this Court to believe that Plaintiff sought to "stonewall" these

proposals, Defendants' Motion purposely omits key aspects of this exchange:

> 1. Defendants withhold from the Court that Plaintiff's counsel promptly responded that *"[they would] work around those hearings…and make [themselves] available after hours, if necessary."* Def's. Mtn. to Compel at Exhibit "A."
>
> 2. With respect to "resolving discovery disputes," Defendants do not inform the Court that their proposal was a stipulated order "denying" a motion to compel discovery that was outstanding for more than three months and remains outstanding even today.   A true and correct copy of these communications are attached hereto as Exhibit "A."
>
> 3. In proposing the parties just skip the case management conference, Defendants refuse to acknowledge that, on July 28, 2016, this Court entered an Emergency Order to Stay, which specifically stated that the stay would be in place until the Case Management Conference on September 12, 2016.  A true and correct copy of the Order is attached hereto as Exhibit "B."
>
> 4. Defendants' Motion notably omits communications from the Plaintiff attaching that Emergency Order to Stay, which set the case management

conference, and Plaintiff's concession to "surely be able to work around this short hearing for the purpose of taking depositions." *See* Exhibit "A."

Defendants also falsely claim that, after Plaintiff confirmed Mr. Blanton's deposition:

> Defendants sent a follow up e-mail regarding the availability of the other witnesses. *That email was ignored.*

Defs. Mtn. to Compel at. paras. 7 and 8. (emphasis added).   In truth, Plaintiff actually responded to Defendants' email the following day.   Defendants' Motion intentionally omitted these communications by the Plaintiff, *as well as the Defendants response to these communications.*   On August 26, Plaintiff responded to the Defendants' e-mail as follows:

> As to the availability of the other non-party witnesses, *we are inquiring as to their availability and will get back to you as soon as we are able to do so.*  Given that you are seeking to take these depositions with only two weeks notice, *we are doing the very best we can.*

Exhibit "A" (emphasis added).   In response, Defendants stated that Defendants were "forced" to unilaterally set these nonparty deponents for deposition, as Plaintiff was not able to confirm their availability for deposition in the less than 48 hours it was given to do so. *See* Exhibit "A."

Again, the evidence demonstrates that Plaintiff and Plaintiff's counsel never sought to "stonewall" depositions.   In fact, Plaintiff's counsel went above and beyond to accommodate Defendants.   The Defendants find themselves in the situation where they are today by their own hand, not that of Plaintiff.

## II. Defendants' Arguments Are Belied by Defendants' Own Conduct.

The Defendants' characterization of Plaintiff and Plaintiff's counsel as

"stonewalling" – for not confirming dates, times and availability of 7 of 10 deponents within 48 hours for depositions on only 5 days within 2 weeks, including after-hours and on weekends – is completely at odds with Defendants self-serving characterization of their own efforts as being in "good faith."

By way of example, Defendants suggest that they made "good faith efforts" to further the timely completion of discovery by confirming the depositions of the Defendants, Don Abreu and Andrew Manios, on August 22, 2016. *See* Defs. Mtn. to Compel at. para.5. Defendants fail to acknowledge that *Defendants took thirteen (13) days to respond to Plaintiff's request for deposition dates of these two (2) individuals, both of whom are named defendants*. A true and correct copy of the letter Plaintiff's counsel sent to Defendants requesting these depositions on August 9 is attached hereto as Exhibit "C." In light of Defendants'' own conduct, including ongoing contempt of Court orders, Plaintiff's timely communications within 48 hours cannot constitute "stonewalling."

In addition, Defendants fail to acknowledge that they agreed to produce the Defendants in Okaloosa County only as part of an exchange for Plaintiff's agreement to postpone the deposition of Chris Manios, which was initially scheduled for August 5. On August 4, 2016, Plaintiff's counsel sent the following communication to Defendants' counsel:

> I wanted to schedule a call because we were not aware that you had not been given adequate notice of Chris Manios' deposition tomorrow. It was not our intention to catch you off guard, and we would be willing to reschedule the deposition, so long as it would not further delay the case. If all three of your clients would be able to produce the outstanding documents and make themselves available for deposition in Florida by the end of this month, rescheduling tomorrow's deposition would not be a problem for us.

A true and correct copy of this e-mail is attached hereto as Exhibit "D." Later that evening, Plaintiff's counsel spoke with Defendants' counsel and agreed to postpone the deposition of Chris Manios, in exchange for the Defendants' agreement to make Don Abreu and Andrew Manios available for their depositions in Okaloosa County, and produce *all outstanding discovery* by the end of the month. Defendants' counsel represented that he would respond the following day with available deposition dates for his clients in Okaloosa County and would produce all outstanding documents by the end of the month.  Still, Defendants acknowledge in their Motion that they did not confirm the depositions of their clients until thirteen (13) days later, and to date, the Defendants remain in contempt of this Court's Orders for having failed to produce *any* outstanding discovery.

### III. Defendants' Have Improperly Noticed the Requested Depositions.

As set forth in Plaintiff's Motion for Protective Order[1], absent agreement among counsel, Plaintiff should not be required to produce any of the requested witnesses for deposition, because: (1) the Defendants' requests are untimely; (2) the Defendants have failed to make a good faith attempt to coordinate these depositions with Plaintiff's counsel; (3) the notices of deposition contain requests for the production of documents, in violation of Rule 1.310(5) and 1.350, *Florida Rules of Civil Procedure*; (4) the Defendants noticed several non-parties for deposition without a subpoena; and (5) the Defendants remain in contempt of this Court's Orders for failure to produce outstanding discovery. A true and correct copy of Plaintiff's Motion for Protective Order is attached hereto as Exhibit "E."

WHEREFORE, and for the foregoing reasons, Plaintiff respectfully requests that

---

[1] Plaintiff's Motion for Protective Order was filed on August 29, 2016. Filing # 45829483.

the Court deny Defendants' Motion to Compel Depositions and any other relief as the Court deems just and proper, including attorney's fees incurred bringing this motion.

/s/ Darian Zamora
A. Benjamin Gordon
Florida Bar No.: 528617
Darian Zamora
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:   (850) 863-1974
Facsimile:    (850) 863-1591
Email:         bgordon@kaglawfirm.com
                  dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original hereof has been filed with the Clerk of this Court, and a true and correct copy of hereof has been furnished by electronic mail to Joseph M. Scheyd, Jay@jscheyd.com and matt@jscheyd.com and Jonathan E. Pollard, Pollard, PLLC, jpollard@pollardllc.com on this 1st day of September, 2016.

/s/ Darian Zamora
A. Benjamin Gordon
Florida Bar No.: 528617
Darian Zamora
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:   (850) 863-1974
Facsimile:    (850) 863-1591
Email:         bgordon@kaglawfirm.com
                  dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

| | |
|---|---|
| **From:** | Darian Zamora |
| **To:** | Elena Lawniczak |
| **Subject:** | Fwd: ASI v. Abreu et. al. |
| **Date:** | Thursday, September 01, 2016 3:49:20 PM |

Sent from my iPhone

Begin forwarded message:

> **From:** Deaken Shuler <dshuler@pollardllc.com>
> **Date:** August 26, 2016 at 4:07:05 PM CDT
> **To:** Darian Zamora <dzamora@kaglawfirm.com>
> **Cc:** Denise Grant <dgrant@pollardllc.com>, Mackenzie Baughn
> <mbaughn@kaglawfirm.com>, Kia Johnson <kjohnson@kaglawfirm.com>,
> "Elena Lawniczak" <elawniczak@kaglawfirm.com>
> **Subject: RE: ASI v. Abreu et. al.**
>
>
> Darian,
>
> Good afternoon.
>
> The requested documents were not produced as we hadn't heard your thoughts on the
> attached proposed order until now.  We simply cannot agree to pay another $400
> absent a court order.  We remain of the mind that the hearing is a waste of everyone's
> time, as we are willing to draft another proposed order (absent the fee, your
> corrections and clarifications are much appreciated), agree, and provide the Requests
> for Admissions.
>
> As for the depositions, we continue to believe that the individuals scheduled are not
> "non-parties" they are high-ranking employees and agents of Defendant. As such,
> simple notice is sufficient for their production. Because we have not heard from you,
> and as available dates are limited, we were forced to go with dates discussed on
> Wednesday morning. will be providing deposition notices shortly.
>
> We will attempt to reach out again to Mr. Scheyd about the September 12 hearing
> (again, Judge Brown's JA and Mr. Scheyd's assistant are wholly unfamiliar with the
> hearing).
>
> Regards,
>
> Deaken
>
> **From:** Darian Zamora [mailto:dzamora@kaglawfirm.com]

**EXHIBIT "A"**

**Sent:** Friday, August 26, 2016 4:37 PM
**To:** Deaken Shuler <dshuler@pollardllc.com>
**Cc:** Denise Grant <dgrant@pollardllc.com>; Mackenzie Baughn
<mbaughn@kaglawfirm.com>; Kia Johnson <kjohnson@kaglawfirm.com>; Elena
Lawniczak <elawniczak@kaglawfirm.com>
**Subject:** RE: ASI v. Abreu et. al.

Deaken:

With respect to your proposed order, you did not provide the requested
documents by the date specified (yesterday, August 25, 2016). Moreover,
the order was inaccurate, as it denied a "Motion for Civil Contempt and
Order to Show Cause" which was never filed. The Motion at issue was a
Motion to Compel. That Motion is attached.  If you would provide the
documents and stipulate to an Order granting the attached Motion to
Compel, with a recovery of minimal attorney's fees in the amount of $400,
we would be happy to cancel the hearing.

As to the availability of the other non-party witnesses, we are inquiring as
to their availability and will get back to you as soon as we are able to do
so.  Given that you are seeking to take these depositions with only two
weeks notice, we are doing the very best we can.

I also wanted to point out that, to my knowledge, there will be a Case
Management Conference held on September 12, at 9:00 a.m., per the
attached Order Granting Defendants' Motion for Emergency Order to Stay
Non-Final Discovery. We will surely be able to work around this short
hearing for the purpose of taking depositions.

Please let me know if you have any questions. Thank you,

Darian Zamora
dzamora@kaglawfirm.com

 **Keefe, Anchors
& Gordon**

Keefe, Anchors and Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Fort Walton Beach, FL 32547
Phone: (850) 863-1974 (direct number)
Fax: (850) 863-1591
www.kaglawfirm.com

The information contained in this e-mail is confidential and may be subject
to the attorney client privilege or may constitute privileged work product.
The information is intended only for the use of the individual or entity to

whom it is addressed. If you are not the intended recipient, or the agent or employee responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this e-mail in error, please notify us by telephone or return e-mail immediately. Thank you.

**From:** Deaken Shuler [mailto:dshuler@pollardllc.com]
**Sent:** Thursday, August 25, 2016 2:55 PM
**To:** Darian Zamora <dzamora@kaglawfirm.com>
**Cc:** Denise Grant <dgrant@pollardllc.com>; Mackenzie Baughn <mbaughn@kaglawfirm.com>; Kia Johnson <kjohnson@kaglawfirm.com>; Elena Lawniczak <elawniczak@kaglawfirm.com>
**Subject:** RE: ASI v. Abreu et. al.

Fantastic, thanks.

Any movement on the other depos or our proposed agreed order regarding the Motion to Compel Responses to Requests for Admissions?

**From:** Darian Zamora [mailto:dzamora@kaglawfirm.com]
**Sent:** Thursday, August 25, 2016 1:37 PM
**To:** Deaken Shuler <dshuler@pollardllc.com>
**Cc:** Denise Grant <dgrant@pollardllc.com>; Mackenzie Baughn <mbaughn@kaglawfirm.com>; Kia Johnson <kjohnson@kaglawfirm.com>; Elena Lawniczak <elawniczak@kaglawfirm.com>
**Subject:** ASI v. Abreu et. al.

Deaken:

I have confirmed with Mr. Blanton, Mr. Craul, and Ms. McGaughy that they will be available for their depositions at our offices on the days and times you have requested (September 6, 7, and 12 respectively).

Thank you,

Darian Zamora
dzamora@kaglawfirm.com

 Keefe, Anchors & Gordon

Keefe, Anchors and Gordon, P.A.

2113 Lewis Turner Boulevard, Suite 100
Fort Walton Beach, FL 32547
Phone: (850) 863-1974 (direct number)
Fax: (850) 863-1591
www.kaglawfirm.com

The information contained in this e-mail is confidential and may be subject
to the attorney client privilege or may constitute privileged work product.
The information is intended only for the use of the individual or entity to
whom it is addressed. If you are not the intended recipient, or the agent or
employee responsible to deliver it to the intended recipient, you are
hereby notified that any use, dissemination, distribution or copying of this
communication is strictly prohibited. If you receive this e-mail in error,
please notify us by telephone or return e-mail immediately. Thank you.

Filing # 44535660 E-Filed 07/28/2016 11:21:57 AM

IN THE CIRCUIT COURT IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a Amenity Services, Inc.
a Florida corporation,

       Plaintiff,

vs.                             CASE NO.: 13 CA 4103

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation,

       Defendants.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR EMERGENCY ORDER TO STAY
NON-FINAL ORDER   ALLOWING THIRD PARTY REQUESTS
FOR PRODUCTION FROM DEFENDANTS' CUSTOMERS**

       This cause having come before the Court at the July 26, 2016, hearing on Defendants'

Motion for Emergency Order to Stay Non-Final Order Allowing Third Party Requests for

Production from Defendants' Customers, the Court having heard from counsel, reviewed the file

and being otherwise fully advised, it is hereby

       ORDERED that Defendant's Motion for Emergency Order to Stay Non-Final Order

Allowing Third Party Requests for Production from Defendants' Customers is hereby GRANTED

and will be further reviewed at the Case Management Conference in this matter, currently

scheduled for September 12, 2016 at 9:00 a.m. (CST).

       DONE AND ORDERED in Okaloosa County, Florida.

eSigned by CIRCUIT COURT JUDGE JOHN T BROWN  in 01 JUDGE BROWN 07/27/2016 17:27:10 LYIJY4Jr

**EXHIBIT "B"**


**Keefe, Anchors & Gordon**

August 9, 2016

<u>**VIA ELECTRONIC MAIL**</u>

Mr. Joseph M. Scheyd                Mr. Jonathan E. Pollard
1221 Airport Road, Suite 209        Pollard, PLLC
Destin, FL 32541                    401 E. Las Olas Blvd., Suite 1400
                                    Fort Lauderdale, Florida 33301

Re:    *ASI Holding Company, Inc. v. Don Abreu and Andrew Manios, et al.*
       Case No. 2013 CA 004103

Dear Counsel:

You previously agreed to make your clients available for deposition by the end of this month. In our correspondence to you on Friday, August 5, we asked you to provide us with available dates for deposition by Monday, August 8.  You did not respond to this request.  Please provide us with available dates for the depositions of your clients by Wednesday, August 10, at noon.  If we do not receive a response from you, we will proceed to schedule your clients for deposition as follows:

- Andrew Manios – August 30, 2016
- Don Abreu – September 1, 2016
- Chris Manios – September 13, 2016
- Corporate Representative for Global Amenities, LLC – September 7, 2016

We also previously requested available dates to schedule the depositions of non-parties Louis Manios, Sarah Black and Amanda Ranson. We did not receive a response from you.  If we do not receive a response from you by Wednesday, August 10, at noon, we will proceed to subpoena Amanda Ranson and Louise Manios for deposition as follows:

- Louis Manios – September 14, 2016
- Sarah Black – September 14, 2016
- Amanda Ranson – September 15, 2016

I look forward to your response by Wednesday, August 10, 2016.  Please feel free to call if you would like to discuss.

Sincerely,

KEEFE, ANCHORS & GORDON, P.A.

Darian Zamora
dzamora@kaglawfirm.com

kaglawfirm.com
850.863.1974
850.863.1591 fax
2113 Lewis Turner Blvd, Ste 100
Fort Walton Beach, FL 32547

**EXHIBIT "C"**

| | |
|---|---|
| **From:** | Darian Zamora |
| **To:** | Elena Lawniczak |
| **Subject:** | Fwd: ASI v. Abreu et. al. |
| **Date:** | Thursday, September 01, 2016 3:50:28 PM |
| **Attachments:** | image002.png |

Sent from my iPhone

Begin forwarded message:

> **From:** Darian Zamora <dzamora@kaglawfirm.com>
> **Date:** August 4, 2016 at 1:55:59 PM CDT
> **To:** Jonathan Pollard <jpollard@pollardllc.com>, Nathan Saunders <nsaunders@pollardllc.com>
> **Cc:** Brooke Bach <bbach@pollardllc.com>, Mackenzie Baughn <mbaughn@kaglawfirm.com>
> **Subject: RE: ASI v. Abreu et. al.**
>
> Jonathan:
>
> I wanted to schedule a call because we were not aware that you had not been given adequate notice of Chris Manios' deposition tomorrow. It was not our intention to catch you off guard, and we would be willing to reschedule the deposition, so long as it would not further delay the case. If all three of your clients would be able to produce the outstanding documents and make themselves available for deposition in Florida by the end of this month, rescheduling tomorrow's deposition would not be a problem for us.
>
> Let me know if you'd like to discuss at 4pm.  Thank you.
>
> Darian Zamora
> dzamora@kaglawfirm.com
>
>  Keefe, Anchors & Gordon
>
> Keefe, Anchors and Gordon, P.A.
> 2113 Lewis Turner Boulevard, Suite 100
> Fort Walton Beach, FL 32547
> Phone: (850) 863-1974 (direct number)
> Fax: (850) 863-1591
> www.kaglawfirm.com
>
> The information contained in this e-mail is confidential and may be subject

**EXHIBIT "D"**

to the attorney client privilege or may constitute privileged work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the agent or employee responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this e-mail in error, please notify us by telephone or return e-mail immediately. Thank you.

---

**From:** Jonathan Pollard [mailto:jpollard@pollardllc.com]
**Sent:** Thursday, August 04, 2016 1:47 PM
**To:** Nathan Saunders <nsaunders@pollardllc.com>
**Cc:** Darian Zamora <dzamora@kaglawfirm.com>; Brooke Bach <bbach@pollardllc.com>; Mackenzie Baughn <mbaughn@kaglawfirm.com>
**Subject:** Re: ASI v. Abreu et. al.

My plane is taking off now. I could talk around 4pm, otherwise please call Nathan in my office. 954-332-2380. Thanks.

Sent from my iPhone

On Aug 4, 2016, at 2:43 PM, Nathan Saunders <nsaunders@pollardllc.com> wrote:

> Darian,
>
> I'm sorry, but Mr. Pollard will be on a plane at that time.
>
> Nathan M. Saunders



401 E. Las Olas Blvd. #1400
Fort Lauderdale, FL 33301
Office: 954-332-2380
Fax: 866- 594-5731
www.pollardllc.com

---

---

IRS Circular 230 disclosure:

To ensure compliance with requirements imposed by the IRS, unless we expressly state otherwise, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer.

**From:** Darian Zamora [mailto:dzamora@kaglawfirm.com]
**Sent:** Thursday, August 4, 2016 2:41 PM
**To:** Jonathan Pollard <jpollard@pollardllc.com>
**Cc:** Brooke Bach <bbach@pollardllc.com>; Nathan Saunders <nsaunders@pollardllc.com>; Mackenzie Baughn <mbaughn@kaglawfirm.com>
**Subject:** ASI v. Abreu et. al.

Mr. Pollard:

Are you available for a telephone call with Mr. Gordon and I at 2:30 CST/3:30 EST?

Thank you,

Darian Zamora
dzamora@kaglawfirm.com

<image003.jpg>

Keefe, Anchors and Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Fort Walton Beach, FL 32547
Phone: (850) 863-1974 (direct number)
Fax: (850) 863-1591
www.kaglawfirm.com

The information contained in this e-mail is confidential and may be subject to the attorney client privilege or may constitute privileged work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the agent or employee

responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this e-mail in error, please notify us by telephone or return e-mail immediately. Thank you.

Filing # 45829483 E-Filed 08/29/2016 06:58:09 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR OKALOOSA COUNTY, FLORIDA**

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

        Plaintiff,                                CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation.

        Defendants.
_____/

## MOTION FOR PROTECTIVE ORDER

NOW COMES the Plaintiff, ASI Holding Company, Inc. ("ASI"), by and through its undersigned counsel, and files this Motion for Protective Order pursuant to Rule 1.280(c)(4), *Florida Rules of Civil Procedure*, and in support states as follows:

## INTRODUCTION

Plaintiff, ASI Holding Company, Inc., ("ASI") filed this action for theft of trade secrets and breach of Non-Disclosure Agreements based on the Defendants' use of Plaintiff's confidential information for their own benefit and disclosure of Plaintiff's confidential information to third parties. This Motion seeks the entry of a Protective Order prohibiting Defendants from seeking additional discovery until the Court rules on Plaintiff's Motion for Order to Show Cause and to Strike Defendants' Pleadings, or in the alternative, until Defendants have fully complied with all pending discovery, including discovery that the Defendants have been ordered by this Court to produce. This Motion further seeks protection from Defendants' untimely and improper requests for discovery.

1

**EXHIBIT "E"**

Plaintiff is entitled to this relief because: (A) Defendants are in contempt of this Court's Order Granting Plaintiff's Motions for Civil Contempt and Plaintiff has filed a Motion seeking to strike Defendants' pleadings for repeated civil contempt; (B) Plaintiff should not be required to respond to any additional discovery until Defendants have fully complied with all of Plaintiff's outstanding discovery requests; (C) Defendants have sought untimely written discovery, in violation of Florida law and this Court's Scheduling Order; (D) Defendants have unilaterally set depositions of ten witnesses within the last two weeks of the discovery period, with less than three days-notice to the Plaintiff; and (E) due to Defendants' failure to timely produce discovery, Plaintiff must postpone the depositions of Defendants, which are scheduled to occur in the next few days.  As such, Plaintiff respectfully requests that this Court enter an appropriate Protective Order, prohibiting Defendants from seeking further discovery of Plaintiff or any other non-party.

## BACKGROUND

Throughout the course of this litigation, Defendants have continuously failed to respond to discovery and comply with critical deadlines in this case, necessitating the filing of multiple Motions to Compel and Motions for Contempt. To date, Plaintiff has filed four Motions to Compel, three Motions for Contempt, and a Motion for Order to Show Cause and to Strike pleadings for Repeated Civil Contempt. Plaintiff has been and continues to be prejudiced by the Defendants willful failure to comply with discovery and this Court's Orders.  To date, Defendants have failed to produce documents in response to several of the Plaintiff's discovery requests, despite being under Court Orders to do so, and having been found in contempt for their repeated failure to do so. Contemporaneously herewith, Plaintiff files a Motion for Order to Show Cause and To Strike Pleadings for

2

Repeated Civil Contempt, which addresses the extent of Defendants' contemptuous conduct in greater detail.

Even in light of the Defendants own failure to properly respond to discovery, Defendants have attempted to seek discovery from Plaintiff without adequate notice. On August 19, 2016, less than 30 days prior to the discovery cut-off, Defendants' counsel sent a letter to Plaintiff purporting to seek supplemental responses to Defendants' First and Second Requests for Production, and First and Second Sets of Interrogatories. A true and correct copy of this letter is attached hereto as Exhibit "A." This letter is merely an attempt to seek additional discovery without complying with the 30 day period proscribed by Florida's Rules of Civil Procedure.  Moreover, Plaintiff previously timely responded to each of the Defendants' requests, some of which date back to 2014, and Defendants have failed to raise any concerns regarding this discovery until the final moments of the discovery period.

Moreover, on August 23, 2016, approximately three weeks prior to the discovery cut-off deadline, Defendants filed their Third Requests for Production and Third Set of Interrogatories to Plaintiff.  The response deadline for such discovery falls after the close of discovery.  So, Defendants then filed a Motion to Shorten Plaintiff's Time to Respond to Defendants' Third Request for Production and Third Set of Interrogatories.  Defendants have had years to seek this discovery.  Having only themselves to blame for not timely seeking discovery, Defendants cannot now seek to prejudice Plaintiff by serving untimely discovery and denying Plaintiff adequate time to respond, as provided for in the Rules of Civil Procedure and this Court's Scheduling Order.

On August 24, 2016, Defendants counsel sent a letter seeking to take the

depositions of ten individuals in the following three weeks. Plaintiff's counsel informed Defendants' counsel that there were only five (5) business days between August 24 and the discovery cut-off date on which the parties were not already scheduled to take depositions or attend hearings in this matter. In response, Defendants' counsel proposed that the parties take depositions (many of whom are nonparties and employees of ASI) on weekends, and even suggested that the parties forego attending the Case Management Conference, which is currently scheduled to take place on September 12, 2016. Plaintiff's counsel responded that it would work in good faith to schedule all of the requested depositions prior to the discovery cut-off, and that it had reached out to the witnesses to determine their availability. Two days later, on August 26, 2016, Defendants' counsel purported to unilaterally set these witnesses for deposition, without subpoenas, and requested that those individuals produce documents at their depositions, many of which were scheduled to occur less than 15 days later.

## ARGUMENT

### A. Defendants are in Contempt of this Court's Order Granting Plaintiff's Motions for Civil Contempt.

Defendants are currently in contempt of this Court's Order Granting Plaintiffs Motion for Civil Contempt and Order to Show Cause and Plaintiff's Amended Motion for Civil Contempt and Order to Show Cause.  That Order found the Defendants in contempt of two of this Court's prior Orders and ordered Defendants to produce documents that have been outstanding since as early as November 2015, by no later than Friday, August 26, 2016.  According to the Order, if compliance is not obtained by August 29, 2016, upon Plaintiff's request, the Court will conduct a hearing to evaluate additional coercive sanctions, *including but not limited to the striking of Defendants' pleadings.*  A true and

4

correct copy of this Order is attached hereto as Exhibit "B."

To date, Defendants have not produced any documents responsive to the outstanding discovery requests or the Court's Contempt Order. As such, Plaintiff has filed a Motion for Order to Show Cause and to Strike Pleadings for Repeated Civil Contempt. Given the Defendants' repeated contemptuous conduct, this Court is entitled to sanction Defendants by striking their pleadings and allowing this matter to proceed to trial solely on the issue of damages. Therefore, Plaintiff should not be required to respond to any of Defendants' untimely discovery requests until this Court decides whether to strike Defendants' pleadings.

**B. Plaintiff Should Not Be Required to Respond to Any Additional Discovery Until Defendants Have Fully Complied With All of Plaintiff's Outstanding Discovery and Deposition Requests.**

Due to the Defendants' contemptuous conduct, Plaintiff is without critical documents that the Defendants have been ordered to produce no later than Friday, August 26, 2016.  Until such documents are produced, Plaintiff is prejudiced in being able to conduct depositions, which Plaintiff previously sought of Defendants and their witnesses.  Therefore, with the discovery deadline less than 30 days away, Plaintiff should not be required to respond to any further discovery requests or produce witnesses for deposition, until the Defendants are in full compliance with this Court's orders compelling Defendants to produce documents and until previously requested depositions of Defendants are completed.

**C. Defendants Have Sought Untimely Written Discovery.**

On August 19, 2016, less than 30 days prior to the discovery cut-off, Defendants' counsel sent a letter to Plaintiff purporting to seek supplemental responses to Defendants'

First and Second Requests for Production, and First and Second Sets of Interrogatories. This letter is merely an attempt to seek additional discovery without complying with the 30 day period proscribed by Florida's Rules of Civil Procedure.

Given the fact that Plaintiff provided detailed timely responses to each of these requests, it is Plaintiff's position that any so-called objections to these responses have been waived. In addition, Defendants' letter actually attempts to modify prior discovery requests to seek *additional* information, not sought at the time the requests were originally provided to Plaintiff. Plaintiff should not be required to provide supplemental responses to Defendants, as the Defendants' requests are untimely and not in compliance with the Rules of Civil procedure.

Further, on August 23, 2016, approximately three weeks prior to the discovery cut-off deadline, Defendants filed their Third Requests for Production and Third Set of Interrogatories to Plaintiff. This discovery is untimely, and Plaintiff should not be required to respond at this late date, much less in the abbreviated period sought by Defendants.

Ironically, with less than 30 days notice, this discovery from Defendants seeks the very same type of information that is outstanding from Defendants, for which the Defendants are currently in contempt.  Notably, Defendants' attorney argued to this Court that *several months* had been an inadequate amount of time for Defendants to comply with those requests seeking documents over a 5-year period.   (Hr'g Tr., Aug. 16, 2016, 7:16-8:24).  Now, Defendants demand that Plaintiff produce those same documents over an *8-year period, in less than 30 days*.

It is clear that, in addition to the untimely nature of these requests, the Defendants' requests have not been made in good faith, and Plaintiff should not be required to comply

6

with these requests until Defendants have produced all outstanding discovery.

### D. Defendants Have Unilaterally Set the Depositions of Ten Witnesses With Less Than Three Days-Notice to the Plaintiff.

On August 24, 2016, Defendants counsel sent a letter seeking to take the depositions of ten individuals over only 5 available days before the discovery deadline. Defendants' counsel proposed that the parties take depositions on weekends, and even suggested that the parties forego attending the Case Management Conference, which is currently scheduled to take place on September 12, 2016. Plaintiff's counsel responded that Plaintiff would work in good faith to schedule all of the requested depositions prior to the discovery cut-off, and that undersigned counsel had reached out to the witnesses to determine their availability. Two days later, on August 26, 2016, Defendants' counsel purported to unilaterally set these witnesses for deposition, without subpoenas. Defendants' counsel, in violation of Florida law, also requested that those individuals produce documents at their depositions, many of which were scheduled to occur less than 15 days later.

Plaintiff should not be required to produce these witnesses for deposition, due to the untimely nature of Defendants' requests and Defendants' failure to make a good faith attempt to coordinate these depositions with Plaintiff's counsel. In addition, many of the potential deponents are non-party employees of ASI, for whom subpoenas have not been issued. Although Defendants have taken the position that they are not required to subpoena Plaintiff's employees, it is well-settled in Florida that it is necessary to subpoena a non-party witness unless such witness is an officer, director, or managing agent of the corporation that is a party to the case. *See Zeus, LLC v. The Cadle Co.*, 929 So.2d 1108 (Fla. 4th DCA 2006) (where respondent did not demonstrate that witness was an officer,

7

director, or managing agent of the corporation, she could not simply be noticed for deposition without a subpoena). Therefore, Plaintiff and its non-party witnesses should not be required to participate in the unilaterally set depositions, as currently scheduled, due to the Defendants failure to make any good faith effort to coordinate these depositions with the Plaintiff.

In addition, Defendants have not given sufficient notice for any of the depositions it seeks. Under Rule 1.310, *Florida Rules of Civil Procedure*, "[a] party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action." Under the circumstances, providing the Plaintiff with only two weeks-notice of ten depositions, to occur in the last two weeks of the discovery period, is unreasonable. Moreover, subsection 5 of this rule also states that "[t]he notice to a party deponent may be accompanied by a request made in compliance with Rule 1.350 for the production of documents at the taking of the deposition.  The procedure of Rule 1.350 shall apply to the request." Fla. R. Civ. P. 1.310(5). Rule 1.350 clearly states that the party to whom a request for documents is served shall serve a written response "within 30 days after service of a request." Fla. R. Civ. P. 1.350(b). Therefore, by unilaterally setting these depositions and seeking documents from the witnesses with approximately two weeks-notice, Defendants are attempting to circumvent the Rules of Civil Procedure.  Plaintiff and its non-party witnesses should not be required to attend these depositions and/or produce the requested documents at the depositions.

Moreover, Defendants' continued failure to produce outstanding discovery, leaves Plaintiff unable to adequately prepare its own witnesses for their depositions. Therefore, Plaintiff should not be required to proceed with these depositions without first receiving

the documents which have been outstanding from Defendants since 2015.

### E. Due to Defendants' Failure to Produce Discovery, Plaintiff Must Postpone the Depositions of Defendants.

Finally, due to the Defendants' failure to timely produce discovery, Plaintiff must postpone the depositions of the Defendants, which are scheduled to take place within the next three days. Plaintiff has gone above and beyond to attempt to obtain outstanding discovery from Defendants in advance of these depositions by filing multiple Motions to Compel and Motions for Contempt. However, Defendants remain in contempt of this Court's Orders compelling production of those documents, and Defendant is still awaiting what the Defendants have represented will be "tens of thousands of documents" only 48 hours prior to the deposition of one of the Defendants. *See* Aug. 16, 2016, Hr. Tr. 7:16-20. Without these critical documents, Plaintiff will not be able to adequately prepare for the depositions of the Defendants. Given that Plaintiff will be forced to postpone the depositions of the Defendants, Defendants should not be permitted to take the depositions of Plaintiff and other non-party witnesses, while Plaintiff remains unable to depose the Defendants themselves.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an appropriate Protective Order as requested herein, protecting Plaintiff from any obligation to respond to the Defendants' Third Request for Production and Third Set of Interrogatories, protecting Plaintiff and its non-party witnesses from any obligation to participate in improperly noticed depositions, and protecting Plaintiff from all further discovery, until the Defendants produce all outstanding discovery and/or this Court rules on Plaintiff's Motion for Order to Show Cause and to Strike Pleadings for Repeated Civil Contempt, and any other relief as the Court deems just and proper, including attorney's

fees incurred bringing this motion.

/s/ Darian Zamora
A. Benjamin Gordon
Florida Bar No.: 528617
Darian Zamora
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:   (850) 863-1974
Facsimile:   (850) 863-1591
Email:        bgordon@kaglawfirm.com
              dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original hereof has been filed with the Clerk of this Court, and a true and correct copy of hereof has been furnished by electronic mail to Joseph M. Scheyd, Jay@jscheyd.com and matt@jscheyd.com and Jonathan E. Pollard, Pollard, PLLC, jpollard@pollardllc.com on this 29th day of August, 2016.

/s/ Darian Zamora
A. Benjamin Gordon
Florida Bar No.: 528617
Darian Zamora
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:   (850) 863-1974
Facsimile:   (850) 863-1591
Email:        bgordon@kaglawfirm.com
              dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*



## POLLARD
PLLC

Jonathan E. Pollard     401 E. Las Olas Blvd. #1400    Fort Lauderdale, FL 33301      954-332-2380
www.pollardllc.com

August 19, 2016

Darian Zamora
Keefe, Anchors & Gordon
2113 Lewis Turner Blvd. #100
Fort Walton Beach, FL 32547

### *Re: ASI v. Global Amenities; Defendants' Outstanding Discovery Requests*

Darian,

There are several outstanding responses to Defendants' discovery.  This email is an attempt to iron out discovery responses owed to Defendants prior to filing a motion to compel.

Due to the pendency of the discovery cut-off (9/15/16), we need all responses by no later than Friday, August 26, 2016.  We do not believe this to be an issue as many of the outstanding requests date back to spring 2014.

At the onset, Defendants note that the "general objections" found throughout Plaintiff's responses are improper. *See* Fla. R. Civ. P. 1.350 ("For each item or category the response shall state that inspection and related activities will be permitted as requested unless the request is objected to, in which event the reasons for the objection shall be stated. If an objection is made to part of an item or category, the part shall be specified.").

#### Plaintiff's Responses to Defendants' First RP (dated 2-4-14) Nos. 1-5 and Responses to Defendants' First Set of Interrogatories (dated 5-6-14) Nos. 4-7

These responses stated that responsive materials/answers would be provided following the entry of a confidentiality order. As we know, such an order was issued on 6-3-14.  To our knowledge, no responsive materials have been filed in light of the order. Please provide us with supplemental responses that reflect both the passage of time and the Court's 6-3-14 order by August 26, 2016.

#### Materials Listed on the 5-7-14 Privilege Log

This privilege log listed 11 documents claimed to fall under the umbrella of "Proprietary, Confidential Information and/or Trade Secret" privileges.  These materials should have been produced following the grant of the 6-3-14 order. To the best of our knowledge, only two of the items listed (1/19/11 emails sent from Abreu's work email to his personal email) have been subsequently provided.  Please provide us with all materials listed on the log, excepting the aforementioned emails, by August 26, 2016.

**Plaintiff's Responses to Defendants' Second Request for Production (dated 7-8-16)**

Defendants request a privilege log for Nos. 2, 3, and 8, by August 26, 2016.

*Plaintiff's Response to No. 1,* seeking "an executed copy of the 2008 Non-Disclosure agreement b/w Abreu and ASI," was objected to "on the basis that this information is within the custody and control of Don Abreu." This objection is improper. Defendant requests that if Plaintiff does not possess the requested material to so state. Otherwise, please provide responsive materials by August 26, 2016.

*Plaintiff's Response to No. 2,* seeking "documents in ASI's possession . . . which ASI intends to use as evidence that Don Abreu either removed or in any way tampered with the alleged 2008 Non-Disclosure Agreement between Don Abreu and ASI" objected on privilege grounds (addressed above) and stated that "[a]ll non-privileged documents, if any, will be produced." If all responsive non-privileged documents have been produced, please so state.  If not, please provide responsive materials by August 26, 2016.

*Plaintiff's Responses to Nos. 4-7* state that "[a]ll responsive documents will be produced." If all responsive documents have been produced, please so state. If not, please provide responsive materials by August 26, 2016.

*Plaintiff's Response to No. 8* seeking "any evidence in ASI's possession that supports the allegation that Don Abreu, Andrew Manios, and Chris Manios secretly intended to use ASI's resources and ASI's trade secrets to compete with ASI" claimed "work-product and other privilege[]" (again, addressed above) and that "[a]ll non-privileged responsive documents will be produced." If all non-privileged responsive documents have been produced, please so state. If not, please provide responsive materials by August 26, 2016.

*Plaintiff's Responses to Nos. 9-12* provided boilerplate objections that the requests are "overly broad, and unduly burdensome  . . . does not specify the time period during which the information is being sought . . . [and] on the basis that it is irrelevant."  Below, please see revised versions of Nos. 9-12. Red font indicates further tailoring by Defendants, a strike through (~~example~~) indicates a change in term.

> *Request No. 9*: "Please provide all final signed and countersigned agreements between ASI and all of its service/amenity providers from January 1, 2010 through the present."

> *Request No. 10*: "Please provide all materials provided by ASI to clients that are designed to be used by clients' guests, including forms, brochures, reservations, physical tickets, and marketing materials. ~~samples of the form or brochure (reservation or physical ticket, etc) ho who the guest receives their FREE ticket,~~ from January 1, 2010 through the present."

> *Request No. 11*: "Please provide all marketing materials distributed by ASI to clients and prospective clients ~~lodging/resort/hotel prospects and clients.~~ from January 1, 2010 through the present."

~~Request No. 12:  "Provide exact samples of all ASI's marketing materials that contracted lodging/resort/hotels issue to guests during the check in process at said lodging hotel resort/hotel."~~

## **Plaintiff's Responses to Defendants' Second Set of Interrogatories**

Defendants request better responses to the below listed Interrogatories by August 26, 2016.

1. *Seeking a detailed list of the ASI customers which you believe Don Abreu obtained from ASI subsequent to his departure from ASI.*
    a. Please detail whether ASI's clients, former clients, and prospective clients "included" in Plaintiff's response comprise the totality of "ASI customers which you believe Don Abreu obtained subsequent to his departure from ASI."

2. *Seeking detailed description of how GALLC has competed with ASI.*
    a. Please set forth, in detail, \ ASI's "confidential information and business concepts" used by Don Abreu to create his "competing amenity program."
    b. Please set forth, in detail, how Don Abreu used ASI's confidential information to "run his own amenity program."
    c. Please list the page and line of Don Abreu's depo referenced in this response.

3. *Seeking a list of customers of ASI which ASI has lost to GALLC*
    a. Plaintiff's answer instructs Defendants to "[p]lease refer to ASI's response to Interrogatory #1." Defendants seek clarification.  This answer suggests that each entity listed in Plaintiff's response to Interrogatory No. 1 have left ASI in favor of GALLC or opted to enter into a relationship with GALLC rather than ASI. If this is Plaintiff's position, please so state. Otherwise, please list customers, both current, former, and prospective, which ASI believes it has "lost" to GALLC.

4. *Seeking a "list of trade secrets ASI believes to be stolen or compromised by each of the Defendants"*
    a. Please set forth a detailed list of the "intellectual property, concept data, client list and contact, pricing models, marketing materials, contracts and pricing forms" that Defendant Abreu "stole."
    b. Please provide a **complete** list the trade secrets Defendants Andrew and Chris Manios "gained from meetings and negotiations with ASI" and, to the best of your ability, "information disclosed by Abreu to replicate the ASI concepts and portions thereof."

5. *Seeking a list of all lodging, resort, and hotel clients contracted by ASI, including the complete primary contact info for each client and physical address.*
    a. Plaintiff objects as the Interrogatory allegedly seeks:
        i. "[P]roprietary information" that is "not relevant." Defendants believe that this contact info, reflective of ASI's business practices, market placement, and company structure, are highly relevant to this action seeking damages for violations of non-disclosure agreements and use of trade secrets.

    ii.  "[O]verly broad and unduly burdensome because it is not narrowly tailored to the specific issues of this case." This Interrogatory is plainly within the broad ambit of discovery under Fla. R. Civ. P. 1.280, as the discovery sought is not privileged and is highly relevant to Defendants' contention that, even assuming an NDA or trade secret was infringed upon, Plaintiff has incurred no damage.

    iii.  "[V]ague and ambiguous . . . because [it] does not specify the time period during which the information is being requested." To that end, Plaintiffs objection is well-taken. Please confine this Interrogatory as seeking information spanning from January 1, 2010 through the present.

6. *Seeking a list of any and all lodging, resort and hotel clients that ASI believes GALLC "stole" from ASI, including the complete contact info and primary contact for each client.*

    a.  Plaintiff's response again instructs Defendants to "[p]lease refer to ASI's response to Interrogatory #1." Defendants seek clarification. This answer suggests that each entity listed in Plaintiff's response to Interrogatory No. 1 have been "stolen" from ASI by GALLC. If this is Plaintiff's position, please so state. Otherwise, please list lodging, resort and hotel clients, both current, former, and prospective, which ASI believes GALLC "stole" from ASI.

7. *Seeking a list off all service providers contracted with ASI, including contact information.*

    a.  Plaintiff proffers the same response seen in its response to Interrogatory No. 5. Please refer to Defendants' above response to these objections.

8. *Seeking a list of any and all service/amenity providers ASI believes GALLC "stole" form ASI.*

    a.  Plaintiff's response again instructs Defendants to "[p]lease refer to ASI's response to Interrogatory #1." Defendants seek clarification. This answer suggests that each entity listed in Plaintiff's response to Interrogatory No. 1 have left ASI in favor of GALLC or opted to enter into a relationship with GALLC rather than ASI. If this is Plaintiff's position, please so state. Otherwise, please list service/amenity providers, both current, former, and prospective, which ASI believes GALLC "stole" from ASI.

9. *Seeking a detailed description of how many complimentary or "free" admission to each contracted service/amenity provider the lodging/resort/hotel guests receive each day for their reservation stay from ASI.*

    a.  Plaintiffs object stating this Interrogatory is:

        i.  "[O]verly broad and unduly burdensome to the extent that it would require a catalogue of individual relationships with every single lodging/resort/hotel guest, which vary and many of which are not relevant to this action." Regardless of its voluminous nature, this Interrogatory is highly relevant. The mechanisms by which Plaintiff's clients are provided with amenity services are plainly relevant to a determination of whether Plaintiff has an actionable case. Please provide a complete list, beginning on January 1, 2010 and continuing through the present day.

10. *Seeking a detailed description of the process which ASI utilizes for lodging/resort/hotel guests to redeem their admission into the contracted service/amenity provider.*
    a. Plaintiffs object stating the Interrogatory:
        i. "[Is] overly broad and unduly burdensome."
        ii. "[S]eeks information that is not relevant . . .because [it] does not specify the time period during which the information is being requested."  Defendant agrees to limit the time of this Interrogatory to January 1, 2010 through the present.
    b. As to Plaintiff's post-objection response that "some services require activation through ASI's call center. Others just have to show a card or a text from ASI's mobile platform" please set forth a detailed description of how the process works for each instance, including a description of guest interactions with the call center,  ASI's mobile platform, and the process of "show[ing] a card[.]"

11. *Seeking a mathematical/financial formula ASI utilizes to determine how much to charge a lodging/resort/hotel client for an ASI amenity program.*
    a. Plaintiff objects, stating this Interrogatory is:
        i. "[O]verly broad and ambiguous because it does not specify the time period during which the information is being requested." Again, please limit the time period to January 1, 2010 through the present.
    b. Plaintiff's response describes the process using vague lay-terms. As initially requested, Defendant seeks a **price formula**.  If no formula exists, please so state.

12. *Seeking a description of how the contracted lodging/resort/hotel charges their guests for the ASI amenity program.*
    a. Plaintiff objects to the lack of a time period on this request. January 1, 2010 through the present is sufficient.
    b. Please elaborate on **all** of the "different ways" the fee may be added to the bill.
    c. Please elaborate on the difference between incorporating ASI's fee into a "resort fee"; an "administration fee"; "other 'fees'"; and "the nightly room rate[.]"
    d. Please describe the relationship between fees and "occupancy[.]"

13. *Seeking a detailed description of the mathematical formula and/or process that is utilized by the contracted lodging/resort/hotel client to pay ASI for their amenity program.*
    a. Plaintiff objects to the lack of a time period on this request. January 1, 2010 through the present is sufficient.
    b. Please set forth, as requested, formulas and/or processes utilized by the contracted lodging/resort/hotel client to pay ASI, including a description of the "multiple variables"
    c. Please describe the process "Lodging providers select[ion of] services" and the "fee [paid] based on the services selected."

14. *Seeking a mathematical/financial formula utilized by ASI to determine how much to pay a service/amenity provider for their complimentary or "free" admission.*
    a. Plaintiff objects to the lack of a time period on this request. January 1, 2010 through the present is sufficient.
    b. Plaintiff fails to properly answer this Interrogatory as no formula is provided.

15. *Seeking a description of the formula and/or process that is utilized by ASI for paying their contracted service/amenity provider for their admission tickets.*
    a. Plaintiff objects to the lack of a time period on this request. January 1, 2010 through the present is sufficient.
    b. Plaintiff fails to properly answer this Interrogatory as no formula is provided.
    c. Please describe the variations "based on the service or amenity being utilized."

16. *Seeking a detailed description of the process of how the guest of the contracted lodging/resort/hotel redeems their FREE ticket at each contracted service/amenity provider.*
    a. Again, objections to lack of time frame are well-taken. This Interrogatory is limited to January 1, 2010 through the present.
    b. Absent explanation, Defendant cannot weight on Plaintiff's boilerplate objections that this Interrogatory is "overly broad and unduly burdensome".
    c. Please provide context and greater explanation for the statement that "some services require activation through ASI's call centers. Others just have to show a card or a text form ASI's mobile platform." For further clarification sought by Defendant, please refer to Defendants response to Plaintiff's Response to Interrogatory No. 10.


Regards,



Jonathan Pollard, Esq.
Counsel for Defendants

Filing # 45519591 E-Filed 08/22/2016 03:29:36 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA**

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

       Plaintiff,                               CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation.

       Defendants.

_____/

**ORER GRANTING PLAINTIFF'S MOTION FOR CIVIL CONTEMPT AND ORDER TO
SHOW CAUSE AND PLAINTIFF'S AMENDED MOTION FOR CIVIL
CONTEMPT AND ORDER TO SHOW CAUSE**

       THIS MATTER came before the Court on Plaintiff's Motion for Civil Contempt

and Order to Show Cause[1]  and Plaintiff's Amended Motion for Civil Contempt and

Order to Show Cause.[2] The Court, having reviewed the Motions and being otherwise

fully advised in the premises, ORDERS as follows:

       1.     Plaintiff's Motion for Civil Contempt and Order to Show Cause is

GRANTED.

       2.     Plaintiff's Amended Motion for Civil Contempt and Order to Show Cause is

GRANTED.

---

[1] Plaintiff's Motion for Civil Contempt and Order to Show Cause was electronically filed with this Court on
7/27/2016. Filing # 44499048.
[2] Plaintiff's Amended Motion for Civil Contempt and Order to Show Cause was electronically filed with this
Court on 7/28/2016. Filing # 44574845.

EXHIBIT "B"

3.     Defendant Don Abreu has failed to comply with this Court's Order Granting Motion to Compel Responses to Discovery, which was entered on February 18, 2016.

4.     The Order Granting Plaintiff's Motion to Compel Responses to Discovery ordered Defendant Don Abreu to fully respond to Plaintiff's Second Request for Production to Don Abreu.

5.     The deadline for Defendant Don Abreu to fully respond to Plaintiff's Second Request for Production to Don Abreu, pursuant to the Court's Order, was February 28, 2016.

6.     To date, Defendant Don Abreu has failed to provide a complete response to Plaintiff's Second Request for Production to Don Abreu.

7.     Defendant Abreu's conduct constitutes contempt.

8.     The Defendants, Don Abreu, Andrew Manios, and Chris Manios, have failed to comply with this Court's Order Granting Plaintiff's Motion to Compel Responses to Discovery, which was entered on June 21, 2016.

9.     The Order Granting Plaintiff's Motion to Compel Responses to Discovery ordered Defendants to fully respond to the following discovery requests:

    a.  Plaintiff's First Request for Production to Defendant, Chris Manios;

    b.  Plaintiff's Third Request for Production to Defendant, Andrew Manios;

    c.  Plaintiff's Fourth Request for Production to Defendant, Don Abreu (collectively, the "Plaintiff's Discovery Requests").

10.    The deadline for the Defendants to fully respond to Plaintiff's Discovery Requests, pursuant to the Order, was July 1, 2016.

11.    To date, the Defendants have failed to provide a complete response to Plaintiff's Discovery Requests.

12.    The conduct of Defendant Don Abreu, Defendant Andrew Manios, and Defendant Chris Manios constitutes contempt of the Court's Order.

13.    Defendants shall have until August 26, 2016, to produce all documents responsive to Plaintiff's Discovery Requests. A complete response must include, but shall not be limited to:

    a.   Every tax return filed on behalf of Global Amenities, LLC, from the date of its inception to the present, including all schedules and worksheets.

    b.   All documents that evidence, describe, refer and/or relate to any communications between the Defendants, Don Abreu, Chris Manios, and Andrew Manios, related to:

        i.   ASI

        ii.   Global Amenities, LLC

        iii.   This lawsuit

        iv.   An Amenity Program

        v.   DVD Now

    c.   Any and all monthly balance sheets and income statements for Global Amenities, LLC.

14.    Plaintiff is awarded its attorneys' fees and costs associated with bringing its Motion for Civil Contempt and Show cause and its Amended Motion for Civil Contempt and Order to Show Cause and Motions to Compel Responses to Discovery. This Court reserved jurisdiction to determine the reasonable amount of said fees and costs upon proper notice and hearing

15.    Failure to produce discovery subject to this Order within ten days will result in coercive sanctions against Defendants totaling $100 per day, beginning on August 30, 2016. If compliance is not obtained by August 29, 2016, upon Plaintiff's request, the Court will conduct a hearing to evaluate additional coercive sanctions, including but not limited to the striking of Defendants' pleadings.

16.    In cases where in one party is unrepresented (*pro se*), it is the responsibility of the sole attorney in the case to serve within five business days this Order upon any *pro se* party who does not have access to nor is a registered user of the Florida Courts e-Filing Portal.

DONE AND ORDERED in Okaloosa County, Florida

eSigned by CIRCUIT COURT JUDGE JOHN T BROWN  in 01 JUDGE BROWN 08/22/2016 14:23:57 VuVLU3xZ

Filing # 46030193 E-Filed 09/02/2016 02:46:04 PM

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
## IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

      Plaintiff,                                 CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation.

      Defendants.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO SHORTEN TIME
## FOR PLAINTIFF TO RESPOND TO DISCOVERY

      NOW COMES the Plaintiff, ASI Holding Company, Inc. ("ASI"), by and through its

undersigned counsel, and files this Opposition to Defendant's Motion to Shorten Plaintiff's

Time to Respond to Defendant's Third Request for Production and Third Set of

Interrogatories, and states as follows:

      ASI filed this action against Defendants for theft of trade secrets and breach of

non-disclosure agreements. In the instant Motion, Defendants ask the Court to deprive

ASI of its right under the Rules of Civil Procedure to 30 days to respond to discovery.

Defendants seek such relief, not because of any conduct or dilatory acts of ASI, but solely

because Defendants did not timely issue the discovery under the Court's Pre-Trial Order.

While the discovery at issue should be governed by ASI's pending Motion to Strike

Defendants' Pleadings and Motion for Protective Order, for the reasons set forth herein,

1

Plaintiff respectfully requests that the Court deny this Motion, and award Plaintiff its attorney's fees and costs.

Defendant's Motion to limit ASI to only three weeks for discovery responses is particularly ironic in that Defendants have not responded to discovery after over 8 months, multiple Court orders, and now left to show cause as to why Defendants' pleadings should not be stricken.  Defendants' discovery in and of itself, but particularly combined with the extraordinary relief of shortening the response time, is inappropriate under the circumstances.  Defendants cannot seek the benefits of litigation, such as expedited discovery, while in contempt of this Court's orders.  When a party willfully fails to comply with a Court order, that party should not be permitted to continue to litigate the matter until full compliance is reached. *See Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1291 (11th Cir. 1991) (holding it proper to prohibit party from defending its action until it complied with court orders); *see also* R. 1.380(b)(2)(B), *Fla. R. Civ. P.* (empowering court to refuse "to allow the disobedient party to support or oppose designated claims or defenses," when that party fails to obey an order to provide discovery).  Moreover, Defendants have not shown any good cause as to why Plaintiff should be unfairly burdened with expediting its discovery responses.

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendants' Motion to Shorten Plaintiff's Time to Respond to Defendant's Third Request for Production and Third Set of Interrogatories and any other relief as the Court deems just and proper, including an award of Plaintiff's attorney's fees and costs incurred in responding to this motion.

/s/ Darian Zamora
**A. Benjamin Gordon**

2

Florida Bar No.: 528617
**Darian Zamora**
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:    (850) 863-1974
Facsimile:     (850) 863-1591
Email: bgordon@kaglawfirm.com
          dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original hereof has been filed with the Clerk of this

Court, and a true and correct copy of hereof has been furnished by electronic mail to

Joseph M. Scheyd, Jay@jscheyd.com and matt@jscheyd.com and Jonathan E. Pollard,

Pollard, PLLC, jpollard@pollardllc.com on this 2nd day of September, 2016.

/s/ Darian Zamora
**A. Benjamin Gordon**
Florida Bar No.: 528617
**Darian Zamora**
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:    (850) 863-1974
Facsimile:     (850) 863-1591
Email: bgordon@kaglawfirm.com
          dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

Filing # 46030193 E-Filed 09/02/2016 02:46:04 PM

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
## IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

        Plaintiff,                                 CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation.

        Defendants.

_____/

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
### COMPEL DISCOVERY RESPONSES FROM PLAINTIFF

        NOW COMES the Plaintiff, ASI Holding Company, Inc. ("ASI"), by and through its

undersigned counsel, and files this Opposition to Defendant's Motion to Compel

Discovery Responses from Plaintiff, and in support states as follows:

### INTRODUCTION

        ASI filed this action against Defendants for theft of trade secrets and breach of

non-disclosure agreements. In the instant Motion, Defendants ostensibly seek (for the

first time) to compel additional responses to discovery, which ASI previously responded

to, in some cases over two and a half years ago.  In reality, Defendants are seeking new

discovery under the veil of "seeking more detailed responses," because Defendants did

not timely serve such new discovery as ordered by the Court.  Nonetheless, ASI was

agreeable to providing supplemental discovery responses, until Defendants continued to

violate this Court's orders as to Defendants' own discovery obligations.  Yet again, this

Motion is nothing more than a thinly-veiled attempt by Defendants to skirt this Court's orders and rules of civil procedure, due to Defendants' own procrastination, lack of diligence and contemptuous conduct.

This Motion should be denied because: (1) Plaintiff provided timely responses to all of the outstanding discovery requests addressed in Defendants' Motion; and (2) Defendants cannot seek the benefits of litigation, such as additional discovery, while in contempt of this Court's orders. As such, Plaintiff respectfully requests that the Court deny Defendants' Motion to Compel and award Plaintiff its attorney's fees and costs in having to respond to this Motion.

## BACKGROUND

On August 19, 2016, Defendants sent a letter to Plaintiff requesting supplemental information related to each and every one of the Defendants' discovery requests from 2014 to the present. A true and correct copy of this letter is attached hereto as Exhibit "A." Defendants concede that Plaintiff already provided timely responses to these discovery requests.  Yet, the Defendants now seek additional information from Plaintiff. Defendants raised these issues for the first time only three weeks before the discovery cut-off.

By the date requested in Defendants' letter, on August 26, Plaintiff's counsel sent a detailed letter responding to each of the issues raised by Defendants.  Although not required to do so, Plaintiff informed Defendants that Plaintiff would serve supplemental responses to discovery on or before the discovery cut-off deadline, which was less than 30 days away. A true and correct copy of this letter is attached hereto as Exhibit "B."

At the time of Plaintiff's willingness to serve supplemental responses, Plaintiff's

counsel was under the impression that Defendants would comply with this Court's Contempt Order directing Defendants to serve all of their outstanding discovery responses and documents on Plaintiff by that same day – Friday, August 26.  Defendants chose to simply ignore this Court's orders and remained in contempt.  Plaintiff then waited until the close of business, Monday, August 29, to see if Defendants would cure Defendants' continuing contempt. Defendants did nothing.   Defendants' remained in contempt of the Court's Contempt Order.

At the end of the day on August 29, when Defendants continued to thwart this Court's Contempt Order, Plaintiff filed a Motion for Order to Show Cause and to Strike Pleadings for Repeated Civil Contempt and a Motion for Protective Order, to protect Plaintiff from engaging in further discovery while Defendants were in contempt of court orders and pending a ruling on the Motion to Strike Pleadings.  On August 29, Plaintiff's counsel served Defendants with the above motions and a letter stating that Plaintiff would not be responding to any further discovery requests "until the Court rules on the pending Motions." A true and correct copy of this letter is attached hereto as Exhibit "C."

## ARGUMENT

### I. This Motion is Moot because Plaintiff Timely Responded to Discovery and Offered Supplemental Responses, even though Not Required.

As Defendants' motion acknowledges, Plaintiff provided timely responses to each of the allegedly "outstanding" discovery requests. In a review of those responses, it is clear that Plaintiff has more than adequately responded to discovery, particularly when compared to the Defendants' sporadic responses or complete refusals to respond to discovery. Plaintiff also informed Defendants that supplemental information, if any exists, would be produced to Defendants on or before the discovery cut-off.  Such production of

3

supplemental information would have been months and months faster than Defendants' continuing failure to produce documents as ordered by this Court multiple times.   Of course, at the time, Plaintiff reasonably assumed that Defendants would comply with the Contempt Order entered against Defendants and respond to discovery as directed by this Court.  Defendants did not do so.

If the Court does not strike Defendants' pleadings, as Plaintiff has always maintained, ASI is willing to provide supplemental discovery responses, in a reasonable amount of time, once the Defendants have fully responded to prior discovery, as ordered by the Court.  Therefore, the Defendants' Motion is moot and should be denied.

## II. Defendants Cannot Seek to Compel Discovery While Defendants Are in Contempt of Court Orders.

A party cannot seek the benefits of litigation, such as discovery, while refusing to comply with the obligations of litigation, including compliance with Court orders and the Rules of Civil Procedure.  When a party willfully fails to comply with a Court order, that party should not be permitted to continue to litigate the matter until full compliance is reached. *See Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1291 (11th Cir. 1991) (holding it proper to prohibit party from defending its action until it complied with court orders); *see also* R. 1.380(b)(2)(B), *Fla. R. Civ. P.* (empowering court to refuse "to allow the disobedient party to support or oppose designated claims or defenses," when that party fails to obey an order to provide discovery).

Defendants should not be heard to demand discovery from Plaintiff, while Defendants themselves are in contempt of Court orders.   Defendants' are currently in contempt of this Court's Orders Granting Plaintiff's Motion to Compel Discovery, entered on February 18, 2016, and Order Granting Plaintiff's Motion to Compel Responses to

4

Discovery, entered on June 21, 2016. On August 22, 2016, this Court entered an Order Granting Plaintiff's Motion for Civil Contempt and Order to Show Cause and Plaintiff's amended Motion for Civil Contempt and Order to Show Cause. The Court ordered Defendants to produce all outstanding documents by August 26, 2016. Defendants are also in violation of that Contempt Order. Thus, Defendants should not be permitted to compel Plaintiff to provide supplemental discovery responses (for which timely responses have already been provided), until Defendants themselves have achieved compliance with this Court's Orders.

WHEREFORE, and for the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Compel Responses to Discovery and any other relief as the Court deems just and proper, including an award of Plaintiff's attorney's fees and costs incurred in defending this motion.

/s/ Darian Zamora
**A. Benjamin Gordon**
Florida Bar No.: 528617
**Darian Zamora**
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL  32547
Telephone:   (850) 863-1974
Facsimile:    (850) 863-1591
Email: bgordon@kaglawfirm.com
        dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original hereof has been filed with the Clerk of this Court, and a true and correct copy of hereof has been furnished by electronic mail to

5

Joseph M. Scheyd, Jay@jscheyd.com and matt@jscheyd.com and Jonathan E. Pollard,

Pollard, PLLC, jpollard@pollardllc.com on this 2nd day of September, 2016.

/s/ Darian Zamora
**A. Benjamin Gordon**
Florida Bar No.: 528617
**Darian Zamora**
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:   (850) 863-1974
Facsimile:    (850) 863-1591
Email: bgordon@kaglawfirm.com
         dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*



# POLLARD
## PLLC

Jonathan E. Pollard     401 E. Las Olas Blvd. #1400     Fort Lauderdale, FL 33301     954-332-2380
www.pollardllc.com

August 19, 2016

Darian Zamora
Keefe, Anchors & Gordon
2113 Lewis Turner Blvd. #100
Fort Walton Beach, FL 32547

### *Re: ASI v. Global Amenities; Defendants' Outstanding Discovery Requests*

Darian,

There are several outstanding responses to Defendants' discovery. This email is an attempt to iron out discovery responses owed to Defendants prior to filing a motion to compel.

Due to the pendency of the discovery cut-off (9/15/16), we need all responses by no later than Friday, August 26, 2016. We do not believe this to be an issue as many of the outstanding requests date back to spring 2014.

At the onset, Defendants note that the "general objections" found throughout Plaintiff's responses are improper. *See* Fla. R. Civ. P. 1.350 ("For each item or category the response shall state that inspection and related activities will be permitted as requested unless the request is objected to, in which event the reasons for the objection shall be stated. If an objection is made to part of an item or category, the part shall be specified.").

### Plaintiff's Responses to Defendants' First RP (dated 2-4-14) Nos. 1-5 and Responses to Defendants' First Set of Interrogatories (dated 5-6-14) Nos. 4-7

These responses stated that responsive materials/answers would be provided following the entry of a confidentiality order. As we know, such an order was issued on 6-3-14. To our knowledge, no responsive materials have been filed in light of the order. Please provide us with supplemental responses that reflect both the passage of time and the Court's 6-3-14 order by August 26, 2016.

### Materials Listed on the 5-7-14 Privilege Log

This privilege log listed 11 documents claimed to fall under the umbrella of "Proprietary, Confidential Information and/or Trade Secret" privileges. These materials should have been produced following the grant of the 6-3-14 order. To the best of our knowledge, only two of the items listed (1/19/11 emails sent from Abreu's work email to his personal email) have been subsequently provided. Please provide us with all materials listed on the log, excepting the aforementioned emails, by August 26, 2016.

**EXHIBIT "A"**

**Plaintiff's Responses to Defendants' Second Request for Production (dated 7-8-16)**

Defendants request a privilege log for Nos. 2, 3, and 8, by August 26, 2016.

*Plaintiff's Response to No. 1*, seeking "an executed copy of the 2008 Non-Disclosure agreement b/w Abreu and ASI," was objected to "on the basis that this information is within the custody and control of Don Abreu." This objection is improper. Defendant requests that if Plaintiff does not possess the requested material to so state. Otherwise, please provide responsive materials by August 26, 2016.

*Plaintiff's Response to No. 2*, seeking "documents in ASI's possession . . . which ASI intends to use as evidence that Don Abreu either removed or in any way tampered with the alleged 2008 Non-Disclosure Agreement between Don Abreu and ASI" objected on privilege grounds (addressed above) and stated that "[a]ll non-privileged documents, if any, will be produced." If all responsive non-privileged documents have been produced, please so state. If not, please provide responsive materials by August 26, 2016.

*Plaintiff's Responses to Nos. 4-7* state that "[a]ll responsive documents will be produced." If all responsive documents have been produced, please so state. If not, please provide responsive materials by August 26, 2016.

*Plaintiff's Response to No. 8* seeking "any evidence in ASI's possession that supports the allegation that Don Abreu, Andrew Manios, and Chris Manios secretly intended to use ASI's resources and ASI's trade secrets to compete with ASI" claimed "work-product and other privilege[]" (again, addressed above) and that "[a]ll non-privileged responsive documents will be produced." If all non-privileged responsive documents have been produced, please so state. If not, please provide responsive materials by August 26, 2016.

*Plaintiff's Responses to Nos. 9-12* provided boilerplate objections that the requests are "overly broad, and unduly burdensome . . . does not specify the time period during which the information is being sought . . . [and] on the basis that it is irrelevant." Below, please see revised versions of Nos. 9-12. Red font indicates further tailoring by Defendants, a strike through (~~example~~) indicates a change in term.

> *Request No. 9*: "Please provide all final signed and countersigned agreements between ASI and all of its service/amenity providers from January 1, 2010 through the present."

> *Request No. 10*: "Please provide all materials provided by ASI to clients that are designed to be used by clients' guests, including forms, brochures, reservations, physical tickets, and marketing materials, ~~samples of the form or brochure (reservation or physical ticket, etc) ho who the guest receives their FREE ticket,~~ from January 1, 2010 through the present."

> *Request No. 11*: "Please provide all marketing materials distributed by ASI to clients and prospective clients ~~lodging/resort/hotel prospects and clients,~~ from January 1, 2010 through the present."

~~Request No. 12: "Provide exact samples of all ASI's marketing materials that contracted lodging/resort/hotels issue to guests during the check in process at said lodging hotel resort/hotel."~~

### Plaintiff's Responses to Defendants' Second Set of Interrogatories

Defendants request better responses to the below listed Interrogatories by August 26, 2016.

1.  *Seeking a detailed list of the ASI customers which you believe Don Abreu obtained from ASI subsequent to his departure from ASI.*
    a.  Please detail whether ASI's clients, former clients, and prospective clients "included" in Plaintiff's response comprise the totality of "ASI customers which you believe Don Abreu obtained subsequent to his departure from ASI."

2.  *Seeking detailed description of how GALLC has competed with ASI.*
    a.  Please set forth, in detail, \ ASI's "confidential information and business concepts" used by Don Abreu to create his "competing amenity program."
    b.  Please set forth, in detail, how Don Abreu used ASI's confidential information to "run his own amenity program."
    c.  Please list the page and line of Don Abreu's depo referenced in this response.

3.  *Seeking a list of customers of ASI which ASI has lost to GALLC*
    a.  Plaintiff's answer instructs Defendants to "[p]lease refer to ASI's response to Interrogatory #1." Defendants seek clarification. This answer suggests that each entity listed in Plaintiff's response to Interrogatory No. 1 have left ASI in favor of GALLC or opted to enter into a relationship with GALLC rather than ASI. If this is Plaintiff's position, please so state. Otherwise, please list customers, both current, former, and prospective, which ASI believes it has "lost" to GALLC.

4.  *Seeking a "list of trade secrets ASI believes to be stolen or compromised by each of the Defendants"*
    a.  Please set forth a detailed list of the "intellectual property, concept data, client list and contact, pricing models, marketing materials, contracts and pricing forms" that Defendant Abreu "stole."
    b.  Please provide a **complete** list the trade secrets Defendants Andrew and Chris Manios "gained from meetings and negotiations with ASI" and, to the best of your ability, "information disclosed by Abreu to replicate the ASI concepts and portions thereof."

5.  *Seeking a list of all lodging, resort, and hotel clients contracted by ASI, including the complete primary contact info for each client and physical address.*
    a.  Plaintiff objects as the Interrogatory allegedly seeks:
        i.  "[P]roprietary information" that is "not relevant." Defendants believe that this contact info, reflective of ASI's business practices, market placement, and company structure, are highly relevant to this action seeking damages for violations of non-disclosure agreements and use of trade secrets.

    ii.  "[O]verly broad and unduly burdensome because it is not narrowly tailored to the specific issues of this case." This Interrogatory is plainly within the broad ambit of discovery under Fla. R. Civ. P. 1.280, as the discovery sought is not privileged and is highly relevant to Defendants' contention that, even assuming an NDA or trade secret was infringed upon, Plaintiff has incurred no damage.

    iii.  "[V]ague and ambiguous . . . because [it] does not specify the time period during which the information is being requested." To that end, Plaintiffs objection is well-taken. Please confine this Interrogatory as seeking information spanning from January 1, 2010 through the present.

6.  *Seeking a list of any and all lodging, resort and hotel clients that ASI believes GALLC "stole" from ASI, including the complete contact info and primary contact for each client.*

    a.  Plaintiff's response again instructs Defendants to "[p]lease refer to ASI's response to Interrogatory #1." Defendants seek clarification. This answer suggests that each entity listed in Plaintiff's response to Interrogatory No. 1 have been "stolen" from ASI by GALLC. If this is Plaintiff's position, please so state. Otherwise, please list lodging, resort and hotel clients, both current, former, and prospective, which ASI believes GALLC "stole" from ASI.

7.  *Seeking a list off all service providers contracted with ASI, including contact information.*

    a.  Plaintiff proffers the same response seen in its response to Interrogatory No. 5. Please refer to Defendants' above response to these objections.

8.  *Seeking a list of any and all service/amenity providers ASI believes GALLC "stole" form ASI.*

    a.  Plaintiff's response again instructs Defendants to "[p]lease refer to ASI's response to Interrogatory #1." Defendants seek clarification. This answer suggests that each entity listed in Plaintiff's response to Interrogatory No. 1 have left ASI in favor of GALLC or opted to enter into a relationship with GALLC rather than ASI. If this is Plaintiff's position, please so state. Otherwise, please list service/amenity providers, both current, former, and prospective, which ASI believes GALLC "stole" from ASI.

9.  *Seeking a detailed description of how many complimentary or "free" admission to each contracted service/amenity provider the lodging/resort/hotel guests receive each day for their reservation stay from ASI.*

    a.  Plaintiffs object stating this Interrogatory is:

      i.  "[O]verly broad and unduly burdensome to the extent that it would require a catalogue of individual relationships with every single lodging/resort/hotel guest, which vary and many of which are not relevant to this action." Regardless of its voluminous nature, this Interrogatory is highly relevant. The mechanisms by which Plaintiff's clients are provided with amenity services are plainly relevant to a determination of whether Plaintiff has an actionable case. Please provide a complete list, beginning on January 1, 2010 and continuing through the present day.

10. *Seeking a detailed description of the process which ASI utilizes for lodging/resort/hotel guests to redeem their admission into the contracted service/amenity provider.*
    a. Plaintiffs object stating the Interrogatory:
        i. "[Is] overly broad and unduly burdensome."
        ii. "[S]eeks information that is not relevant . . .because [it] does not specify the time period during which the information is being requested."   Defendant agrees to limit the time of this Interrogatory to January 1, 2010 through the present.
    b. As to Plaintiff's post-objection response that "some services require activation through ASI's call center. Others just have to show a card or a text from ASI's mobile platform" please set forth a detailed description of how the process works for each instance, including a description of guest interactions with the call center, ASI's mobile platform, and the process of "show[ing] a card[.]"

11. *Seeking a mathematical/financial formula ASI utilizes to determine how much to charge a lodging/resort/hotel client for an ASI amenity program.*
    a. Plaintiff objects, stating this Interrogatory is:
        i. "[O]verly broad and ambiguous because it does not specify the time period during which the information is being requested." Again, please limit the time period to January 1, 2010 through the present.
    b. Plaintiff's response describes the process using vague lay-terms. As initially requested, Defendant seeks a **price formula**.  If no formula exists, please so state.

12. *Seeking a description of how the contracted lodging/resort/hotel charges their guests for the ASI amenity program.*
    a. Plaintiff objects to the lack of a time period on this request. January 1, 2010 through the present is sufficient.
    b. Please elaborate on **all** of the "different ways" the fee may be added to the bill.
    c. Please elaborate on the difference between incorporating ASI's fee into a "resort fee"; an "administration fee"; "other 'fees'"; and "the nightly room rate[.]"
    d. Please describe the relationship between fees and "occupancy[.]"

13. *Seeking a detailed description of the mathematical formula and/or process that is utilized by the contracted lodging/resort/hotel client to pay ASI for their amenity program.*
    a. Plaintiff objects to the lack of a time period on this request. January 1, 2010 through the present is sufficient.
    b. Please set forth, as requested, formulas and/or processes utilized by the contracted lodging/resort/hotel client to pay ASI, including a description of the "multiple variables"
    c. Please describe the process "Lodging providers select[ion of] services" and the "fee [paid] based on the services selected."

14. *Seeking a mathematical/financial formula utilized by ASI to determine how much to pay a service/amenity provider for their complimentary or "free" admission.*
    a. Plaintiff objects to the lack of a time period on this request. January 1, 2010 through the present is sufficient.
    b. Plaintiff fails to properly answer this Interrogatory as no formula is provided.

15. *Seeking a description of the formula and/or process that is utilized by ASI for paying their contracted service/amenity provider for their admission tickets.*
    a. Plaintiff objects to the lack of a time period on this request. January 1, 2010 through the present is sufficient.
    b. Plaintiff fails to properly answer this Interrogatory as no formula is provided.
    c. Please describe the variations "based on the service or amenity being utilized."

16. *Seeking a detailed description of the process of how the guest of the contracted lodging/resort/hotel redeems their FREE ticket at each contracted service/amenity provider.*
    a. Again, objections to lack of time frame are well-taken. This Interrogatory is limited to January 1, 2010 through the present.
    b. Absent explanation, Defendant cannot weight on Plaintiff's boilerplate objections that this Interrogatory is "overly broad and unduly burdensome".
    c. Please provide context and greater explanation for the statement that "some services require activation through ASI's call centers. Others just have to show a card or a text form ASI's mobile platform." For further clarification sought by Defendant, please refer to Defendants response to Plaintiff's Response to Interrogatory No. 10.


Regards,



Jonathan Pollard, Esq.
Counsel for Defendants

 Keefe, Anchors
& Gordon

August 26, 2016

**VIA ELECTRONIC MAIL**

Mr. Jonathan Pollard
401 E. Olas Blvd. #1400
Fort Lauderdale, FL 33301

    Re:   *ASI Holding Company, Inc. v. Don Abreu and Andrew Manios*
          Case No. 2013 CA 004103

Dear Jonathan:

I am writing this letter in response to your letter dated August 19, 2016, in which you raised (for the first time) concerns about discovery responses that ASI served on your clients, in some cases, over two and a half years ago.

Given your clients failure to properly serve discovery in a timely fashion in compliance with the Court's Pre-Trial Order, it is evident that this "good faith" letter is merely an attempt to seek additional discovery, without complying with the 30 days allowed by the Rules of Civil Procedure. Without waiving my client's right to assert that this attempt violates the Court's Pre-Trial Order and Rules of Procedure, as well as ASI's position that any concerns with ASI's discovery responses have been waived, I provide this response in an attempt to move this forward to resolution.

**Plaintiff's Responses to Defendants' First Request for Production and Responses to Defendants' First Set of Interrogatories**

As to the First Request for Production, your letter incorrectly states that Plaintiff did not provide documents responsive to Defendants' First Request for Production. That is not accurate. Plaintiff provided documents bates labeled ASI's Resp. to 1st RFP 000001-000033. My client also has produced significant additional documentation throughout this case, since that initial production. Nonetheless, I've asked my client to continue to look for additional documentation that could be responsive to this request, which we will produce.

As to the First Set of Interrogatories, again, your letter incorrectly states that Plaintiff did not provide answers to Defendants First Set of Interrogatories. This is not accurate. Plaintiff provided a detailed response to each and every request, based on the information available to Plaintiff at the time. If you believe Plaintiff's responses are insufficient, please explain your position.



kaglawfirm.com

850.863.1974
850.863.1591 fax

2113 Lewis Turner Blvd, Ste 100
Fort Walton Beach, FL 32547

**EXHIBIT "B"**

Mr. Jonathan Pollard
August 26, 2016
Page 2 of 3

## Materials Listed on the 5-7-14 Privilege Log

ASI has provided most, if not all, of these documents, over the last two years of litigation. Please review your file. Nonetheless, to the extent that any of these documents have not been produced over the last two years, we will produce the documents.

## Plaintiff's Responses to Defendants' Second Request for Production

With respect to this Second Request for Production, your letter merely attempts to seek additional discovery, without complying with the Court's Pre-Trial Order or Rules of Procedure. Nonetheless, I offer the following response.

*Plaintiff's Response to No. 1*: The purpose of Plaintiff's objection to this interrogatory is to make clear, yet again, that Plaintiff does not possess an executed copy of the 2008 Non-Disclosure agreement between ASI and Abreu, because it is or was in the custody and control of Defendant Abreu. This issue has been repeatedly addressed with your co-counsel, your clients, and the Court.

*Plaintiff's Response to Nos. 2-8*: Plaintiff timely produced responsive, non-privileged documents to Defendants. Specifically, Plaintiff produced documents bates labeled ASI 0000140-000409. Nonetheless, I've asked my client to continue to look for additional documentation that could be responsive to this request, which we will produce.

*Plaintiff's Response to No. 9*: Thank you for amending this request to more clearly identify the documents being sought and the relevant time frame. ASI will re-evaluate this request, and non-privileged, responsive documents will be produced.

*Plaintiff's Response to No. 10*: Thank you for amending this request to more clearly identify the documents being sought and the relevant time frame. ASI will re-evaluate this request, and non-privileged, responsive documents will be produced.

Plaintiff's Response to No. 11: Thank you for amending this request to more clearly identify the documents being sought and the relevant time frame. ASI will re-evaluate this request, and non-privileged, responsive documents will be produced.

As to the privilege log you have sought with respect to requests numbered 2, 3, and 8, we objected to those requests on the basis of the work product privilege to the extent that they seek the mental impressions of counsel. Assuming that you are not seeking the mental impressions of counsel, we are unaware of any responsive documents that have not previously been provided or will be provided.

## Plaintiff's Responses to Defendants' Second Set of Interrogatories

ASI provided detailed responses or objections to each of these interrogatories. ASI has properly responded to these interrogatories and stands by its responses and objections. Nonetheless, to the extent that you have requested additional information, attempted to cure any deficiencies, and/or have simply replaced interrogatories with new interrogatories, ASI will provide supplemental responses and/or objections as appropriate.

Mr. Jonathan Pollard
August 26, 2016
Page 3 of 3

Finally, your suggestion that additional documentation and/or interrogatory responses be provided by today, with less than 7 days notice, is unreasonable and does not comport with the law.  It is also quizzical, given that your clients remain in contempt of court orders for having not provided documents requested over six months ago.  Notwithstanding your clients' refusal to timely provide discovery responses, even under court order, to the extent that my client identifies additional responsive documents or seeks to supplement its responses to interrogatories, we will provide you with such information in a timely and reasonable fashion, no later than the deadline for completion of discovery.

Please let me know if you have any questions or concerns.

Thank you,

KEEFE, ANCHORS & GORDON, P.A.

Darian Zamora
dzamora@kaglawfirm.com

 Keefe, Anchors
& Gordon

August 29, 2016

**<u>VIA ELECTRONIC MAIL</u>**

Jonathan Pollard
401 E. Olas Blvd. #1400
Fort Lauderdale, FL 33301

Dear Jonathan:

The purpose of this letter is to inform you that we object to any further discovery in this matter, given your clients' repeated and continual contempt of Court orders and refusal to respond to discovery.  We have filed a Motion for Order to Show Cause and to Strike Defendants' Pleadings, which we will seek to set for hearing as soon as possible.

We are filing and serving Notices of Postponement of the depositions of both Don Abreu and Andrew Manios, as we will be unable to adequately prepare for these depositions due to your clients' failure to timely respond to discovery and comply with the Court's Orders. We will re-schedule those depositions, as necessary, upon the Court's ruling on the pending motions.  Please be sure to timely notify your clients that their depositions will not be proceeding this week.

Moreover, we have filed a Motion for Protective Order addressing the ten depositions that your office attempted to unilaterally set, as well as the other improper discovery that you have served.  Please be advised that we will not be proceeding with those depositions or responding to such discovery, until the Court rules on the pending motions.

Thank you,

KEEFE, ANCHORS & GORDON, P.A.

Darian Zamora
dzamora@kaglawfirm.com

kaglawfirm.com
850.863.1974
850.863.1591 fax
2113 Lewis Turner Blvd, Ste 100
Fort Walton Beach, FL 32547

**EXHIBIT "C"**

Filing # 46104556 E-Filed 09/06/2016 05:21:12 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA**

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

      Plaintiff,                               CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation.

      Defendants.

_____/

**<ins>PLAINTIFF'S NOTICE OF CONTINUATION OF HEARING ON THE COURT'S
DETERMINATION OF REASONABLE AMOUNT OF ATTORNEYS' FEES AND
COSTS PURSUANT TO THE ORDER GRANTING PLAINTIFF'S MOTION FOR CIVIL
CONTEMPT AND ORDER TO SHOW CAUSE AND PLAINTIFF'S AMENDED
MOTION FOR CIVIL CONTEMPT AND ORDER TO SHOW CAUSE[1]</ins>**

      **PLEASE TAKE NOTICE** that a hearing regarding the Court's determination of

reasonable amount of attorneys' fees and costs pursuant to the Order Granting Plaintiff's

Motion for Civil Contempt and Order to Show Cause and Plaintiff's Amended Motion for

Civil Contempt and Order to Show Cause entered on August 22, 2016, originally set to

occur on September 7, 2016 at 1:30 p.m. has been continued to occur as follows:

      Judge:        Honorable John T. Brown

      Place:        Judge Brown's Chambers
                     Okaloosa County Courthouse, Fort Walton Beach, Annex

      Time:        9:00 a.m. CT

---

[1] The Order Granting Plaintiff's Motion for Civil Contempt and Order to Show Cause and Plaintiff's Amended Motion for Civil Contempt and Order to Show Cause was electronically filed with the Clerk of Court on August 22, 2016. Filing # 45519591.

Date:        September 8, 2016

**\*\*If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you to the provision of certain assistance. Please contact:**

**Court Administration, ADA Liaison**
**Okaloosa County**
**1940 Lewis Turner Blvd.**
**Fort Walton Beach, FL 32547**
**Phone (850) 609-4700 Fax (850) 652-7725**
ADA.Okaloosa@flcourts1.gov

**at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.\*\***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original hereof has been filed with the Clerk of this Court, and a true and correct copy of hereof has been furnished by electronic mail to Joseph M. Scheyd, Jay@jscheyd.com and matt@jscheyd.com and Jonathan E. Pollard, Pollard, PLLC, jpollard@pollardllc.com on this 6th day of September, 2016.

/s/ Darian Zamora
A. Benjamin Gordon
Florida Bar No.: 528617
Darian Zamora
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:    (850) 863-1974
Facsimile:     (850) 863-1591
Email:          bgordon@kaglawfirm.com
                 dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

2

  
Filing # 46238491 E-Filed 09/09/2016 10:42:30 AM

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
## IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a Amenity Services, Inc.
a Florida corporation,

      Plaintiff,                        CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,

      Defendants.
_____/

## PLAINTIFF'S MOTION TO FILE EVIDENCE UNDER SEAL

COMES NOW, Plaintiff, ASI Holding Company, Inc. ("ASI"), by and through its undersigned counsel, and files this Motion to File Evidence Under Seal pursuant to the Stipulated Order of Confidentiality entered by this Court on February 18, 2016, and in support states as follows:

1. A hearing was held on the ASI's Motion for Order to Show Cause and to Strike Pleadings for Repeated Civil Contempt on September 8, 2016.

2. ASI entered into evidence a June 1, 2016, good faith letter to Attorney Jay Scheyd with attached Confidential Information as Exhibit 9.

WHEREFORE, ASI respectfully requests that the Court enter an order filing Exhibit 9 under seal.

                                       /s/ Darian Zamora
                                       A. Benjamin Gordon
                                       Florida Bar No.: 528617
                                       Darian Zamora
                                         Florida Bar No.: 114951
                                       Keefe, Anchors & Gordon, P.A.

2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:   (850) 863-1974
Facsimile:    (850) 863-1591
Email:         bgordon@kaglawfirm.com
                  dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original hereof has been filed with the Clerk of this Court, and a true and correct copy of hereof has been furnished by electronic mail to Joseph M. Scheyd, Jay@jscheyd.com and matt@jscheyd.com and Jonathan E. Pollard, Pollard, PLLC, jpollard@pollardllc.com on this 9th day of September, 2016.

*/s/ Darian Zamora*
A. Benjamin Gordon
Florida Bar No.: 528617
Darian Zamora
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:   (850) 863-1974
Facsimile:    (850) 863-1591
Email:         bgordon@kaglawfirm.com
                  dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

Filing # 46247832 E-Filed 09/09/2016 12:20:40 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA**

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

       Plaintiff,                            CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation.

       Defendants.
_____/

<u>**ORDER GRANTING PLAINTIFF'S MOTION TO FILING EVIDENCE UNDER SEAL**</u>

       THIS MATTER came before the Court on Plaintiff's Motion to File Evidence Under Seal.  The Court, having reviewed the Motion and being otherwise fully advised in the premises, ORDERS as follows:

       1.     Plaintiff's Motion to File Evidence Under Seal is GRANTED.

       2.     The attached Exhibit 9 shall be filed by the Clerk of Court UNDER SEAL and that the contents of the exhibit not be disclosed to any person or party, except to the Court and its in-chambers staff.

       3.     In cases where in one party is unrepresented (*pro se*), it is the responsibility of the sole attorney in the case to serve within five business days this Order upon any *pro se* party who does not have access to nor is a registered user of the Florida Courts e-Filing Portal.

       DONE AND ORDERED in Okaloosa County, Florida.

eSigned by CIRCUIT COURT JUDGE JOHN T BROWN  in 01 JUDGE BROWN 09/09/2016 10 54 08 -kspPR-1

Filing # 46272981 E-Filed 09/09/2016 04:17:31 PM

### IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
### IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

       Plaintiff,                               CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation.

       Defendants.

_____/

### NOTICE POSTPONEMENT OF VIDEOTAPED DEPOSITION OF SARAH BLACK

To:   Joseph M. Scheyd               Jonathan E. Pollard
       1221 Airport Road, Suite 209   Pollard, PLLC
       Destin, FL 32541                401 E. Las Olas Blvd., Suite 1400
                                      Fort Lauderdale, Florida 33301

      YOU ARE HEREBY NOTIFIED that the deposition of Sarah Black, scheduled to

occur on Thursday, September 15, 2016 starting at 9:00 a.m. CT / 10:00 a.m. ET, has

been postponed. The deposition will be rescheduled for a later date.

### CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that the original hereof has been filed with the Clerk of this
Court, and a true and correct copy of hereof has been furnished by electronic mail to
Joseph M. Scheyd, Jay@jscheyd.com and matt@jscheyd.com and Jonathan E. Pollard,
Pollard, PLLC, jpollard@pollardllc.com on this 9th day of September, 2016.

                                /s/ Darian Zamora
                                A. Benjamin Gordon
                                Florida Bar No.: 528617
                                Darian Zamora
                                Florida Bar No.: 114951
                                Keefe, Anchors & Gordon, P.A.

2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:   (850) 863-1974
Facsimile:   (850) 863-1591
Email:          bgordon@kaglawfirm.com
                   dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

Filing # 46272981 E-Filed 09/09/2016 04:17:31 PM

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
## IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

      Plaintiff,                             CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation.

      Defendants.

_____/

### NOTICE POSTPONEMENT OF VIDEOTAPED DEPOSITION OF AMANDA RANSON

To:    Joseph M. Scheyd              Jonathan E. Pollard
        1221 Airport Road, Suite 209    Pollard, PLLC
        Destin, FL  32541              401 E. Las Olas Blvd., Suite 1400
                                       Fort Lauderdale, Florida 33301

      YOU ARE HEREBY NOTIFIED that the deposition of Amanda Ranson, scheduled

to occur on Wednesday, September 14, 2016 starting at 1:00 p.m. CT / 2:00 p.m. ET, has

been postponed. The deposition will be rescheduled for a later date.

### CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that the original hereof has been filed with the Clerk of this
Court, and a true and correct copy of hereof has been furnished by electronic mail to
Joseph M. Scheyd, Jay@jscheyd.com and matt@jscheyd.com and Jonathan E. Pollard,
Pollard, PLLC, jpollard@pollardllc.com on this 9th day of September, 2016.

                        /s/ Darian Zamora_____
                        A. Benjamin Gordon
                        Florida Bar No.: 528617
                        Darian Zamora
                        Florida Bar No.: 114951
                        Keefe, Anchors & Gordon, P.A.

2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:   (850) 863-1974
Facsimile:   (850) 863-1591
Email:       bgordon@kaglawfirm.com
             dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

2

Filing # 46272981 E-Filed 09/09/2016 04:17:31 PM

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
## IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

      Plaintiff,
                                     CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation.

      Defendants.
_____/

### NOTICE POSTPONEMENT OF VIDEOTAPED DEPOSITION OF LOUIS MANIOS

To:    Joseph M. Scheyd                  Jonathan E. Pollard
        1221 Airport Road, Suite 209     Pollard, PLLC
        Destin, FL  32541               401 E. Las Olas Blvd., Suite 1400
                                            Fort Lauderdale, Florida 33301

      YOU ARE HEREBY NOTIFIED that the deposition of Louis Manios, scheduled to

occur on Wednesday, September 14, 2016 starting at 9:00 a.m. CT / 10:00 a.m. ET, has

been postponed. The deposition will be rescheduled for a later date.

### CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that the original hereof has been filed with the Clerk of this
Court, and a true and correct copy of hereof has been furnished by electronic mail to
Joseph M. Scheyd, Jay@jscheyd.com and matt@jscheyd.com and Jonathan E. Pollard,
Pollard, PLLC, jpollard@pollardllc.com on this 9th day of September, 2016.

                                  /s/ Darian Zamora
                                  A. Benjamin Gordon
                                  Florida Bar No.: 528617
                                  Darian Zamora
                                  Florida Bar No.: 114951
                                  Keefe, Anchors & Gordon, P.A.

2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:   (850) 863-1974
Facsimile:   (850) 863-1591
Email:       bgordon@kaglawfirm.com
             dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

2

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

       Plaintiff,                              CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,

       Defendants.

_____/

## AFFIDAVIT OF ATTORNEY'S FEES

STATE OF FLORIDA

COUNTY OF OKALOOSA

     **BEFORE ME**, the undersigned authority, personally appeared, Darian Zamora, who, upon oath deposes and says:

     1.     My name is Darian Zamora.  I am currently an attorney with the law firm of Keefe, Anchors & Gordon, P.A.

     2.     I represent ASI Holding Company, Inc., in the above styled matter.

     3.     I have personal knowledge regarding the costs incurred in filing the Amended Motion for Civil Contempt, which was filed with the Court on July 28, 2016.

     4.     As of this date, the attorney fees in regards to the Amended Motion for Civil Contempt are **$1,872.00.**

     FURTHER AFFIANT SAYETH NAUGHT.

                             _____
                             Darian Zamora

Page **1** of **2**

SWORN TO AND SUBSCRIBED BEFORE ME, this 8th day of September 2016,

by Darian Zamora, who is personally known to me.



ELENA LAWNICZAK
Commission # FF 056654
Expires October 27, 2017
Bonded Thru Troy Fain Insurance 800-385-7019

Notary Public

My Commission Expires: 10|27|17

Page **2** of **2**

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

       Plaintiff,                           CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,

       Defendants.

_____/

**AFFIDAVIT OF ATTORNEY'S FEES**

STATE OF FLORIDA

COUNTY OF OKALOOSA

     **BEFORE ME**, the undersigned authority, personally appeared, Darian Zamora, who, upon oath deposes and says:

     1.     My name is Darian Zamora.  I am currently an attorney with the law firm of Keefe, Anchors & Gordon, P.A.

     2.     I represent ASI Holding Company, Inc., in the above styled matter.

     3.     I have personal knowledge regarding the costs incurred in filing the Motion for Civil Contempt, which was filed with the Court on July 27, 2016.

     4.     As of this date, the attorney fees in regards to the Motion for Civil Contempt are **$1,209.00**.

     FURTHER AFFIANT SAYETH NAUGHT.

                                          Darian Zamora

SWORN TO AND SUBSCRIBED BEFORE ME, this 8th day of September 2016, by Darian Zamora, who is personally known to me.

ELENA LAWNICZAK
Commission # FF 056654
Expires October 27, 2017
Bonded Thru Troy Fain Insurance 800-385-7019

Notary Public

My Commission Expires: 10/27/17

Page **2** of **2**

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA**

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

       Plaintiff,                            CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,

       Defendants.

_____/

## AFFIDAVIT OF ATTORNEY'S FEES

STATE OF FLORIDA

COUNTY OF OKALOOSA

      **BEFORE ME**, the undersigned authority, personally appeared, Darian Zamora, who, upon oath deposes and says:

      1.     My name is Darian Zamora.  I am currently an attorney with the law firm of Keefe, Anchors & Gordon, P.A.

      2.     I represent ASI Holding Company, Inc., in the above styled matter.

      3.     I have personal knowledge regarding the costs incurred in filing the Motion for Civil Contempt, which was filed with the Court on July 27, 2016.

      4.     As of this date, the attorney fees in regards to the Motion for Civil Contempt are **$1,209.00**.

      FURTHER AFFIANT SAYETH NAUGHT.

                                        _____
                                        Darian Zamora

Filing # 34173575 E-Filed 11/06/2015 02:35:30 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA**

ASI HOLDING COMPANY, INC.,
d/b/a Amenity Services, Inc.
a Florida corporation,

       Plaintiff,                    CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,

       Defendants.
_____/

**PLAINTIFF'S SECOND REQUEST FOR PRODUCTION TO
DEFENDANT DON ABREU**

    Plaintiff, Keefe, Anchors & Gordon, P.A. ("KAG"), by and through undersigned counsel and pursuant to Rule 1.350, Florida Rules of Civil Procedure, hereby request Defendant, Don Abreu, to produce the following designated documents for inspection and copying at the law offices of Keefe, Anchors & Gordon, P.A., 2113 Lewis Turner Boulevard, Suite 100, Fort Walton Beach, Florida 32547, or such other place as counsel may agree, within thirty (30) days from the date of service hereof.

**DEFINITIONS**

    A.    The term "COMMUNICATION" shall be construed in its broadest sense and shall mean directly or indirectly describing, setting forth, discussing, mentioning, commenting upon, supporting or referring to the subject or topic in question, either in whole or in part, whether by correspondence, telephone, computer, meeting, or any occasion of joint or mutual presence as well as the transfer of any document from one person to another.

Page 1 of 7

B.     The terms "DEFENDANT," "YOU," "YOUR," "ABREU,"  refer to Defendant, Don Abreu and include his successors or predecessors in interest and all officers, attorneys, brokers, directors, employees, agents, servants and other persons acting or purporting to act on behalf of Abreu.  When a document request is relevant to less than all Defendants and/or you, the singular form of the word should be substituted as may be necessary to bring within the scope hereof any documents which might otherwise be construed to be outside the scope hereof.

C.     The terms "DOCUMENT" or "DOCUMENTS" mean the original and all copies thereof which are different in any way from the original (whether by interpretation, receipt stamps notation, indication of copies sent or received or otherwise) and all attached or annexed materials to any typewritten, handwritten, printed, graphic, photographic or recorded material as well as all computer data files, tapes, disks, input or outputs, and other computer-readable records or programs, transcripts, and copies, and reproductions thereof, however produced or reproduced, now or at any time in your actual or constructive possession, custody or control.  The terms "DOCUMENT" or "DOCUMENTS" shall specifically include, but not be limited to, correspondence, emails, instant messages, cellular telephone text messages, PDA messages, telegrams, facsimiles, telexes, memoranda or records of meetings, conferences, telephone or other communications, pamphlets, books, notes, reports, studies, transcripts, indices, accounting records of any kind, including bank examination reports whether state or federal, filings, records, charts, tabulations, lists, analyses, graphs, diagrams, estimates, minutes, (including board and loan committee meetings), tapes, photographs and photographic films, sound recording tapes, phonograph records, video tapes, data

Page 2 of 7

compilations from which information can be obtained or can be translated into a form reasonably usable, as well as any method or electronic data processing equipment or magnetically stored information.   The terms "DOCUMENT" or "DOCUMENTS" shall include all materials discoverable under the Florida Rules of Civil Procedure, including Rule 1.351.

D.     The term "ELECTRONICALLY STORED INFORMATION" shall mean writings, drawings, graphs, charts, photographs, sound recordings, images, and any other data or data compilations stored in any medium from which information can be obtained; translated into a reasonably usable form or in the form in which the information is ordinarily maintained.

E.     The "PERSON" means any natural person, firm, partnership, association, proprietorship, joint venture, corporation, company, governmental agency, or other organization or business entity.

F.     The term "PERIOD" means the time period from January 1, 1995 to the present, unless otherwise indicated.

G.     "RELATING TO" and "RELATES TO" shall be construed in their broadest sense and shall mean directly or indirectly describing, setting forth, discussing, mentioning, commenting upon, supporting, contradicting, or referring to the subject or topic in question, either in whole or in part.

H.     The term "Defendants" shall mean Don Abreu and Andrew Manios, and include their successors or predecessors in interest and all officers, attorneys, brokers, directors, employees, agents, servants and other persons acting or purporting to act on behalf of Don Abreu and Andrew Manios.

Page 3 of 7

I.     The term "PLAINTIFF" shall mean ASI Holding Company, Inc. d/b/a Amenity Services, Inc., a Florida corporation.

J.     When appropriate, the singular form of a word should be interpreted in the plural as may be necessary to bring within the scope hereof any documents which might otherwise be construed outside the scope hereof.

K.     The words "and" and "or" shall be construed either disjunctively or conjunctive as necessary to bring within the scope hereof any documents which might otherwise be construed to be outside the scope hereof.

L.     The term "Lodging Provider" shall include any and all hotels, motels, resorts, bed & breakfasts, inns, and all other places of public or private accommodation.

M.     The term "Service Provider" shall include all entities, individuals and organizations providing services of any kind, including but not limited to, equipment rentals, DVD/movie rentals, attractions, and recreational activities.

## INSTRUCTIONS

A.     If, in answering any request for documents, you claim that the information requested is privileged or subject to protection, please expressly state the applicable privilege or protection and describe the nature of the information, communications, or information not produced in a manner that will enable Defendants to assess the applicability of the claimed privilege or protection and please provide the following identifying information:

       (1)     Date;

       (2)     Author;

       (3)     Addressee;

(4)     Brief description of the subject matter and form of the document and attachments, including the number of pages;

(5)     Statement of the basis upon which the privilege is claimed; and

(6)     The numbers of each specific request to which the document or thing would be responsive.

B.     If there is any document or other item described by this request which is no longer in your possession, custody or control, or is no longer in existence or assessable to you, please indicate:

(1)     The date and nature of the disposition of such document or other tangible item, including, but not limited to, whether such: (a) is missing or lost, (b) has been destroyed, or (c) has been transferred to another person;

(2)     The circumstances surrounding such disposition, including any authorization therefore; and

(3)     Where applicable, the person currently in possession, custody or control of such document or item.

C.      Unless the context of any request for documents requires otherwise, references to the conjunctive include the disjunctive, and vice versa.

D.     Absent any order from the court, you shall serve a copy of your answers and objection, if any, within thirty (30) days of the date of service of these requests for documents.

E.     For each producing document(s) relevant to your responses to these requests for production, please segregate your document production by providing such produced document(s).

## DOCUMENTS TO PRODUCE

1.     Please produce any and all marketing materials used by you in connection with any amenity program, including but not limited to print materials, advertising, presentations, brochures, and images from websites.

2.     Please produce any and all contracts used to secure agreements with Lodging Providers in connection with any amenity program.

3.     Please produce any and all contracts used to secure Service Providers in connection with any amenity program.

4.     Please produce a list of current and past clients that have utilized your amenity program.

5.     Please produce a list of all Lodging Providers you have given information to regarding your amenity program or presented the concept of your amenity program to in any way, irrespective of whether or not those Lodging Providers became involved with your amenity program.

6.     Please produce a list of all Service Providers you have given information to regarding your amenity program or presented the concept of your amenity program to in any way, irrespective of whether or not those Service Providers became involved with your amenity program.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original hereof has been filed with the Clerk of this Court, and a true and correct copy of hereof has been furnished by electronic mail to Joseph M. Scheyd, Jay@jscheyd.com and Tiffany@jscheyd.com on this 6th day of November, 2015.

/s/ A. Benjamin Gordon
A. Benjamin Gordon

Page 6 of 7

Florida Bar No.: 528617
Darian Zamora
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:   (850) 863-1974
Facsimile:   (850) 863-1591
Email:        bgordon@kaglawfirm.com
              dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

 Keefe, Anchors
& Gordon

December 15, 2016

**VIA ELECTRONIC MAIL**

Mr. Joseph M. Scheyd
1221 Airport Road, Suite 209
Destin, FL 32541

      Re:   *ASI Holding Company, Inc. v. Don Abreu and Andrew Manios*
             *Case No. 2013 CA 004103*

Dear Jay:

I intend for this letter to suffice as my good faith attempt, as required under Florida Rule of Civil Procedure 1.380(a)(4), to resolve the issue of your client, Andrew Manios' failure to respond to the following discovery requests in this matter:

      Plaintiff's Second Request for Production to Defendant, Andrew Manios

As you know, these requests were served the Court's E-Portal on November 6, 2015 and the responses were due by December 11, 2015.

I am requesting that I receive these responses from your client by no later than Friday, December 18, 2015. If I have not received the responses by then, I will proceed with a motion to compel.

Please feel free to give me a call if you would like to discuss.

Sincerely,

KEEFE, ANCHORS & GORDON, P.A.

A. Benjamin Gordon
bgordon@kaglawfirm.com



kaglawfirm.com
850.863.1974
850.863.1591 fax
2113 Lewis Turner Blvd, Ste 100
Fort Walton Beach, FL 32547

*IN THE CIRCUIT COURT IN AND FOR OKALOOSA COUNTY, FLORIDA*

ASI HOLDING COMPANY, INC.,
d/b/a Amenity Services, Inc.
a Florida corporation,

     *Plaintiff,*

vs.                          *CASE NO.: 13 CA 4103*

DON ABREU, an individual, and
ANDREW MANIOS, an individual,

     *Defendants.*
_____/

## ANSWER TO REQUEST FOR PRODUCTION

     Defendants, DON ABREU and ANDREW MANIOS, through their undersigned attorney,

answers the Request for Production of Documents filed by Plaintiff as follows:

     1.       Website can be found at www.vacationamenities.com.  Enclosed is a brochure

                 designed for resort/hotel clients to distribute to guests at check-in.

     2.       Sample of template agreement used for lodging provides is enclosed.

     3.       Enclosed is the executed contract with Hollywood Wax Museum.

     4.       Objection, irrelevant.

     5.       Objection, irrelevant.

     6.       Objection, irrelevant.

## CERTIFICATE OF SERVICE

     *I HEREBY CERTIFY* that a true and correct copy of the foregoing instrument has been

electronically filed using the E-Portal Filing System this 28th day of January, 2016 and a copy

furnished via electronic mail to *bgordon@kaglaw.com; cbrown@kaglawfirm.com* and

*mbaughn@kaglawfirm.com* .

JOSEPH M. SCHEYD, JR., ESQUIRE
1221 Airport Road, Suite 209
Destin, Florida 32541
(850) 837-1171
Fla. Bar No.: 995304
*Attorney for Defendants*
Emeraldcoastlaw@cox.net
Tiffany@jscheyd.com

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

      Plaintiff,

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,

      Defendants.

_____/

CASE NO. 2013 CA 4103

## ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL
## RESPONSES TO DISCOVERY

This cause having come before the Court at the February 4, 2016, hearing on

Plaintiff's Motion to Compel Responses to Discovery[1], the Court having heard from

counsel, reviewed the file, and been otherwise fully advised, it is hereby ORDERED:

    1.    Plaintiff's Motion to Compel Responses to Discovery is hereby GRANTED.

    2.    Defendant Abreu shall have ten (10) days from the date of this Order to

produce all responsive documents.

    3.    The Parties have agreed to a Stipulated Order of Confidentiality.

    4.    Plaintiff is awarded Attorneys' Fees in the amount of $941.00, for bringing

forth the Motion to Compel Responses to Discovery.

    5.    Defendant Abreu is ordered to pay $941.00, to counsel for Plaintiff. The

payment of the $941.00 shall be paid in certified funds made payable to the Trust Account

of Keefe, Anchors & Gordon, P.A. and delivered to Keefe, Anchors & Gordon, P.A.'s office

---

[1] Plaintiff's Motion to Compel Responses to Discovery was electronically filed with the clerk on January
13, 2016. Filing # 36541705.

located at 2113 Lewis Turner Blvd., Suite 100, Fort Walton Beach, FL 32547, no later

than 4:00 p.m. CST, within ten (10) days of the date of this Order.

DONE AND ORDERED in Okaloosa County, Florida this 18ᵗʰ day of

Feb. , 2016.

John T. Brown
Circuit Court Judge

### CLERK'S CERTIFICATE OF MAILING

I HEREBY CERTIFY that a truce and correct copy of the foregoing has been
furnished to all counsel of record and/or parties via regular U.S. Mail on this 23 day
of February, 2016 as follows:

Darian L. Zamora
A. Benjamin Gordon
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Blvd., Suite 100
Fort Walton Beach, FL 32547

Jay Scheyd
Joseph M. Scheyd, Esq.
1221 Airport Rd, Ste. 209
Destin, FL 32541

JD Peacock, II
CLERK OF COURT

By: _____
Deputy Clerk

 Keefe, Anchors & Gordon

March 31, 2016

**VIA ELECTRONIC MAIL**

Mr. Joseph M. Scheyd
1221 Airport Road, Suite 209
Destin, FL 32541

Re:     *ASI Holding Company, Inc. v. Don Abreu and Andrew Manios*
         Case No. 2013 CA 004103

Dear Jay:

Please allow this letter to serve as my good faith attempt, as required under Florida Rule of Civil Procedure 1.380(a)(4), to resolve the issue of your client's failure to adequately respond to discovery. We received Mr. Abreu's responses to our Second Request for Production. However, this response is inadequate, as it does not fully comply with the requirements of the Request for Production. Your client did not produce any contracts used to secure agreements with lodging providers, as requested in request #2. Also, your client only produced one contract in response to request #3. Please instruct your client to produce all documents responsive to these requests by no later than Friday, April 8th, or we will proceed with filing a Motion to Compel.

In addition, the documents produced by your client in response to Plaintiff's Second Request for Production were not produced in native format. Please produce all responsive documents in native format by no later than Friday, April 8th.

As always, feel free to give me a call anytime.

Sincerely,

KEEFE, ANCHORS & GORDON, P.A.

Darian Zamora
dzamora@kaglawfirm.com


kaglawfirm.com
850.863.1974
850.863.1591 fax
2113 Lewis Turner Blvd, Ste 100
Fort Walton Beach, FL 32547

 Keefe, Anchors & Gordon

April 8, 2016

**<u>VIA ELECTRONIC MAIL</u>**

Mr. Joseph M. Scheyd
1221 Airport Road, Suite 209
Destin, FL 32541

Re:   *ASI Holding Company, Inc. v. Don Abreu and Andrew Manios*
       Case No. 2013 CA 004103

Dear Jay:

Please allow this letter to serve as my good faith attempt, as required under Florida Rule of Civil Procedure 1.380(a)(4), to resolve the issue of your client's failure to adequately respond to discovery. Mr. Abreu has failed to adequately respond to Plaintiff's Second Request for Production. Specifically, Mr. Abreu has failed to produce the actual contracts and agreements responsive to requests numbers 2 and 3. Your client previously failed to produce responses to Plaintiff's Second Request for Production, which necessitated our filing of a Motion to Compel and request for sanctions. The court granted both requests and clearly ordered your client to produce the requested documents. We intend to file a Motion for Contempt and request for sanctions as a result of your client's knowing and intentional refusal to comply with the Court's order compelling production of these documents. If your client does intend to produce these documents, please let me know immediately.

Also, pursuant to our recent telephone conversation, Mr. Abreu was to produce the requested documents in native format. You also advised that Mr. Manios would provide responses to Plaintiff's First Request for Production and First Set of Interrogatories by the end of this week. If these documents have not been provided by April 15th, we will take the appropriate action.

As always, feel free to give me a call anytime with any questions or concerns.

Sincerely,

KEEFE, ANCHORS & GORDON, P.A.

Darian Zamora
dzamora@kaglawfirm.com

kaglawfirm.com
850.863.1974
850.863.1591 fax

2113 Lewis Turner Blvd, Ste 100
Fort Walton Beach, FL 32547

 Keefe, Anchors
& Gordon

April 14, 2016

**VIA ELECTRONIC MAIL**

Mr. Joseph M. Scheyd
1221 Airport Road, Suite 209
Destin, FL 32541

      Re:   *ASI Holding Company, Inc. v. Don Abreu and Andrew Manios*
             Case No. 2013 CA 004103

Dear Jay:

Please allow this letter to serve as my good faith attempt, as required under Florida Rule of Civil Procedure 1.380(a)(4), to resolve the issue of your client's failure to adequately respond to discovery.

Per our recent telephone conversations, you were to provide all of the fully executed contracts and the production from Mr. Abreu in native format. You also advised that Mr. Manios would provide responses to Plaintiff's First Request for Production and First Set of Interrogatories.

As of this letter we have not received the above referenced documents. If we do not have all of the documents in hand by the close of business, tomorrow April 15, 2016, we will take the appropriate action.

As always, feel free to give me a call anytime with any questions or concerns.

Sincerely,

KEEFE, ANCHORS & GORDON, P.A.

Darian Zamora
dzamora@kaglawfirm.com



kaglawfirm.com
850.863.1974
850.863.1591 fax
2113 Lewis Turner Blvd, Ste 100
Fort Walton Beach, FL 32547

 Keefe, Anchors & Gordon

May 31, 2016

**VIA ELECTRONIC MAIL**

Mr. Joseph M. Scheyd
1221 Airport Road, Suite 209
Destin, FL 32541

> Re: *ASI Holding Company, Inc. v. Don Abreu and Andrew Manios*
> Case No. 2013 CA 004103

Dear Jay:

Please allow this letter to serve as my good faith attempt, as required under Florida Rule of Civil Procedure 1.380(a)(4), to resolve the issue of your client's failure to adequately respond to discovery.

On November 6, 2015, we served Don Abreu with a Second Request for Production (the "Discovery"). Specifically, this Discovery requested, *inter alia*, "any and all contracts used to secure" Service Providers and Lodging Providers, "in connection with any amenity program." Your client produced only four contracts in response to this request. This response is inadequate, because your client admits to having contracted with at least 13 Lodging and Service Providers in connection with its amenity program.

Please produce the documents responsive to this request, no later than Friday, June 3. As always, feel free to give me a call anytime with any questions or concerns.

Sincerely,

KEEFE, ANCHORS & GORDON, P.A.

Darian Zamora
dzamora@kaglawfirm.com

kaglawfirm.com
850.863.1974
850.863.1591 fax
2113 Lewis Turner Blvd, Ste 100
Fort Walton Beach, FL 32547

 Keefe, Anchors & Gordon

July 18, 2016

**VIA ELECTRONIC MAIL**

Mr. Joseph M. Scheyd
1221 Airport Road, Suite 209
Destin, FL 32541

   Re: *ASI Holding Company, Inc. v. Don Abreu and Andrew Manios*
     Case No. 2013 CA 004103

Dear Jay:

Please allow this letter to serve as my final good faith attempt, as required under Florida Rule of Civil Procedure 1.380(a)(4), to resolve the issue of your client's failure to adequately respond to discovery.

Your clients have also failed to adequately respond to the 2nd Request for Production to Don Abreu which requested all contracts used to secure agreements with Service Providers. Specifically, your clients have failed to produce all agreements entered into with DVDNow.

Your clients have also failed to respond to the 4th Request for Production to Abreu, 3rd Request for Production to Andrew Manios and 1st Request for Production to Chris Manios. Specifically, your clients have failed to produce all tax returns filed on behalf of Global Amenities and all monthly balance sheets and income statements for Global Amenities.

Please produce the remaining documents responsive to this request, no later than noon tomorrow July 27th.

As always, feel free to give me a call anytime with any questions or concerns.

Sincerely,

KEEFE, ANCHORS & GORDON, P.A.

Darian Zamora
dzamora@kaglawfirm.com



kaglawfirm.com
850.863.1974
850.863.1591 fax
1113 Lewis Turner Blvd. Ste 100
Fort Walton Beach, FL 32547

**Darian Zamora**

| | |
|---|---|
| **From:** | Darian Zamora |
| **Sent:** | Friday, July 22, 2016 10:05 PM |
| **To:** | Joseph Scheyd |
| **Subject:** | Re: Agreements with Service Providers |

Jay:

Thank you, but I noticed this is missing the contract(s) with DVDnow. That is a rather significant contract that I know we will need to see.

Sent from my iPhone

On Jul 22, 2016, at 5:40 PM, Joseph Scheyd <emeraldcoastlaw@cox.net> wrote:

1

**Darian Zamora**

| | |
|---|---|
| **From:** | Darian Zamora |
| **Sent:** | Tuesday, July 26, 2016 5:10 PM |
| **To:** | 'Jay Scheyd'; Mackenzie Baughn |
| **Cc:** | matt@jscheyd.com |
| **Subject:** | ASI v. Abreu |
| **Attachments:** | 06-26-16 LETTER TO JAY SCHEYD.docx |

Jay:

I am following up on the documents requested in the good faith letter I sent to you on July 18th, 2016.  Please see the attached good faith letter requesting outstanding discovery.

Thank you,

Darian Zamora
dzamora@kaglawfirm.com

 Keefe, Anchors
Gordon

Keefe, Anchors and Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Fort Walton Beach, FL 32547
Phone: (850) 863-1974 (direct number)
Fax: (850) 863-1591
www.kaglawfirm.com

The information contained in this e-mail is confidential and may be subject to the attorney client privilege or may constitute privileged work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the agent or employee responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this e-mail in error, please notify us by telephone or return e-mail immediately. Thank you.

**K A** Keefe, Anchors
**K&G** & Gordon

July 18, 2016

**VIA ELECTRONIC MAIL**

Mr. Joseph M. Scheyd
1221 Airport Road, Suite 209
Destin, FL 32541

      Re:    *ASI Holding Company, Inc. v. Don Abreu and Andrew Manios*
                Case No. 2013 CA 004103

Dear Jay:

Please allow this letter to serve as my final good faith attempt, as required under Florida Rule of Civil Procedure 1.380(a)(4), to resolve the issue of your client's failure to adequately respond to discovery.

Your clients have also failed to adequately respond to the 2nd Request for Production to Don Abreu which requested all contracts used to secure agreements with Service Providers. Specifically, your clients have failed to produce all agreements entered into with DVDNow.

Your clients have also failed to respond to the 4th Request for Production to Abreu, 3rd Request for Production to Andrew Manios and 1st Request for Production to Chris Manios. Specifically, your clients have failed to produce all tax returns filed on behalf of Global Amenities and all monthly balance sheets and income statements for Global Amenities.

Please produce the remaining documents responsive to this request, no later than noon tomorrow July 27th.

As always, feel free to give me a call anytime with any questions or concerns.

Sincerely,

KEEFE, ANCHORS & GORDON, P.A.

Darian Zamora
dzamora@kaglawfirm.com



kaglawfirm.com
850.863.1974
850.863.1591 fax
2113 Lewis Turner Blvd, Ste 100
Fort Walton Beach, FL 32547

Filing # 45519591 E-Filed 08/22/2016 03:29:36 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA**

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

      Plaintiff,                        CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation.

      Defendants.

_____/

**ORER GRANTING PLAINTIFF'S MOTION FOR CIVIL CONTEMPT AND ORDER TO
SHOW CAUSE AND PLAINTIFF'S AMENDED MOTION FOR CIVIL
CONTEMPT AND ORDER TO SHOW CAUSE**

THIS MATTER came before the Court on Plaintiff's Motion for Civil Contempt

and Order to Show Cause[1]  and Plaintiff's Amended Motion for Civil Contempt and

Order to Show Cause.[2] The Court, having reviewed the Motions and being otherwise

fully advised in the premises, ORDERS as follows:

      1.      Plaintiff's Motion for Civil Contempt and Order to Show Cause is

GRANTED.

      2.      Plaintiff's Amended Motion for Civil Contempt and Order to Show Cause is

GRANTED.

---

[1] Plaintiff's Motion for Civil Contempt and Order to Show Cause was electronically filed with this Court on
7/27/2016. Filing # 44499048.
[2] Plaintiff's Amended Motion for Civil Contempt and Order to Show Cause was electronically filed with this
Court on 7/28/2016. Filing # 44574845.

3.    Defendant Don Abreu has failed to comply with this Court's Order Granting Motion to Compel Responses to Discovery, which was entered on February 18, 2016.

4.    The Order Granting Plaintiff's Motion to Compel Responses to Discovery ordered Defendant Don Abreu to fully respond to Plaintiff's Second Request for Production to Don Abreu.

5.    The deadline for Defendant Don Abreu to fully respond to Plaintiff's Second Request for Production to Don Abreu, pursuant to the Court's Order, was February 28, 2016.

6.    To date, Defendant Don Abreu has failed to provide a complete response to Plaintiff's Second Request for Production to Don Abreu.

7.    Defendant Abreu's conduct constitutes contempt.

8.    The Defendants, Don Abreu, Andrew Manios, and Chris Manios, have failed to comply with this Court's Order Granting Plaintiff's Motion to Compel Responses to Discovery, which was entered on June 21, 2016.

9.    The Order Granting Plaintiff's Motion to Compel Responses to Discovery ordered Defendants to fully respond to the following discovery requests:

   a.  Plaintiff's First Request for Production to Defendant, Chris Manios;

   b.  Plaintiff's Third Request for Production to Defendant, Andrew Manios;

   c.  Plaintiff's Fourth Request for Production to Defendant, Don Abreu (collectively, the "Plaintiff's Discovery Requests").

10.    The deadline for the Defendants to fully respond to Plaintiff's Discovery Requests, pursuant to the Order, was July 1, 2016.

11.     To date, the Defendants have failed to provide a complete response to Plaintiff's Discovery Requests.

12.     The conduct of Defendant Don Abreu, Defendant Andrew Manios, and Defendant Chris Manios constitutes contempt of the Court's Order.

13.     Defendants shall have until August 26, 2016, to produce all documents responsive to Plaintiff's Discovery Requests. A complete response must include, but shall not be limited to:

a.   Every tax return filed on behalf of Global Amenities, LLC, from the date of its inception to the present, including all schedules and worksheets.

b.   All documents that evidence, describe, refer and/or relate to any communications between the Defendants, Don Abreu, Chris Manios, and Andrew Manios, related to:

    i.   ASI

    ii.   Global Amenities, LLC

    iii.   This lawsuit

    iv.   An Amenity Program

    v.   DVD Now

c.   Any and all monthly balance sheets and income statements for Global Amenities, LLC.

14.     Plaintiff is awarded its attorneys' fees and costs associated with bringing its Motion for Civil Contempt and Show cause and its Amended Motion for Civil Contempt and Order to Show Cause and Motions to Compel Responses to Discovery. This Court reserved jurisdiction to determine the reasonable amount of said fees and costs upon proper notice and hearing

15.     Failure to produce discovery subject to this Order within ten days will result in coercive sanctions against Defendants totaling $100 per day, beginning on August 30, 2016. If compliance is not obtained by August 29, 2016, upon Plaintiff's request, the Court will conduct a hearing to evaluate additional coercive sanctions, including but not limited to the striking of Defendants' pleadings.

16.     In cases where in one party is unrepresented (*pro se*), it is the responsibility of the sole attorney in the case to serve within five business days this Order upon any *pro se* party who does not have access to nor is a registered user of the Florida Courts e-Filing Portal.

DONE AND ORDERED in Okaloosa County, Florida

eSigned by CIRCUIT COURT JUDGE JOHN T BROWN  in 01 JUDGE BROWN 08/22/2016 14:23 57 VuVLU3xZ

Filing # 42147139 E-Filed 05/31/2016 04:16:16 PM

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
## IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a Amenity Services, Inc.
a Florida corporation,

       Plaintiff,

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,

       Defendants.

_____/

CASE NO. 2013 CA 4103

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO
## DEFENDANT CHRIS MANIOS

Plaintiff, Keefe, Anchors & Gordon, P.A. ("KAG"), by and through undersigned

counsel and pursuant to Rule 1.350, Florida Rules of Civil Procedure, hereby request

Defendant, Chris Manios, to produce the following designated documents for inspection

and copying at the law offices of Keefe, Anchors & Gordon, P.A., 2113 Lewis Turner

Boulevard, Suite 100, Fort Walton Beach, Florida 32547, or such other place as counsel

may agree, within thirty (30) days from the date of service hereof.

### DEFINITIONS

A.    The term "COMMUNICATION" shall be construed in its broadest sense and

shall mean directly or indirectly describing, setting forth, discussing, mentioning,

commenting upon, supporting or referring to the subject or topic in question, either in

whole or in part, whether by correspondence, telephone, computer, meeting, or any

occasion of joint or mutual presence as well as the transfer of any document from one

person to another.

Page **1** of **8**

B.     The terms "DEFENDANT," "YOU," "YOUR," "MANIOS," refer to Defendant, Chris Manios and include his successors or predecessors in interest and all officers, attorneys, brokers, directors, employees, agents, servants and other persons acting or purporting to act on behalf of Manios.  When a document request is relevant to less than all Defendants and/or you, the singular form of the word should be substituted as may be necessary to bring within the scope hereof any documents which might otherwise be construed to be outside the scope hereof.

C.     The terms "DOCUMENT" or "DOCUMENTS" mean the original and all copies thereof which are different in any way from the original (whether by interpretation, receipt stamps notation, indication of copies sent or received or otherwise) and all attached or annexed materials to any typewritten, handwritten, printed, graphic, photographic or recorded material as well as all computer data files, tapes, disks, input or outputs, and other computer-readable records or programs, transcripts, and copies, and reproductions thereof, however produced or reproduced, now or at any time in your actual or constructive possession, custody or control.  The terms "DOCUMENT" or "DOCUMENTS" shall specifically include, but not be limited to, correspondence, emails, instant messages, cellular telephone text messages, PDA messages, telegrams, facsimiles, telexes, memoranda or records of meetings, conferences, telephone or other communications, pamphlets, books, notes, reports, studies, transcripts, indices, accounting records of any kind, including bank examination reports whether state or federal, filings, records, charts, tabulations, lists, analyses, graphs, diagrams, estimates, minutes, (including board and loan committee meetings), tapes, photographs and photographic films, sound recording tapes, phonograph records, video tapes, data

Page 2 of 8

compilations from which information can be obtained or can be translated into a form reasonably usable, as well as any method or electronic data processing equipment or magnetically stored information.  The terms "DOCUMENT" or "DOCUMENTS" shall include all materials discoverable under the Florida Rules of Civil Procedure, including Rule 1.351.

D.     The term "ELECTRONICALLY STORED INFORMATION" shall mean writings, drawings, graphs, charts, photographs, sound recordings, images, and any other data or data compilations stored in any medium from which information can be obtained; translated into a reasonably usable form or in the form in which the information is ordinarily maintained.

E.     The "PERSON" means any natural person, firm, partnership, association, proprietorship, joint venture, corporation, company, governmental agency, or other organization or business entity.

F.     The term "PERIOD" means the time period from June 1, 2011 to the present, unless otherwise indicated.

G.     "RELATING TO" and "RELATES TO" shall be construed in their broadest sense and shall mean directly or indirectly describing, setting forth, discussing, mentioning, commenting upon, supporting, contradicting, or referring to the subject or topic in question, either in whole or in part.

H.     The term "Defendants" shall mean Don Abreu and Andrew Manios, and include their successors or predecessors in interest and all officers, attorneys, brokers, directors, employees, agents, servants and other persons acting or purporting to act on behalf of Don Abreu and Andrew Manios. The term "Company" or "your Company" shall

Page **3** of **8**

refer to any amenity services companies owned or operated by you, or any amenity services companies for whom you act as an employee, contractor, or consultant.

      I.      The term "PLAINTIFF" shall mean ASI Holding Company, Inc. d/b/a Amenity Services, Inc., a Florida corporation.

      J.      When appropriate, the singular form of a word should be interpreted in the plural as may be necessary to bring within the scope hereof any documents which might otherwise be construed outside the scope hereof.

      K.      The words "and" and "or" shall be construed either disjunctively or conjunctive as necessary to bring within the scope hereof any documents which might otherwise be construed to be outside the scope hereof.

      L.      The term "Lodging Provider" shall include any and all hotels, motels, resorts, bed & breakfasts, inns, and all other places of public or private accommodation.

      M.      The term "Service Provider" shall include all entities, individuals and organizations providing services of any kind, including but not limited to, equipment rentals, DVD/movie rentals, attractions, and recreational activities.

## INSTRUCTIONS

      A.      If, in answering any request for documents, you claim that the information requested is privileged or subject to protection, please expressly state the applicable privilege or protection and describe the nature of the information, communications, or information not produced in a manner that will enable Defendants to assess the applicability of the claimed privilege or protection and please provide the following identifying information:

           (1)     Date;

(2)     Author;

(3)     Addressee;

(4)     Brief description of the subject matter and form of the document and attachments, including the number of pages;

(5)     Statement of the basis upon which the privilege is claimed; and

(6)     The numbers of each specific request to which the document or thing would be responsive.

B.     If there is any document or other item described by this request which is no longer in your possession, custody or control, or is no longer in existence or assessable to you, please indicate:

(1)     The date and nature of the disposition of such document or other tangible item, including, but not limited to, whether such: (a) is missing or lost, (b) has been destroyed, or (c) has been transferred to another person;

(2)     The circumstances surrounding such disposition, including any authorization therefore; and

(3)     Where applicable, the person currently in possession, custody or control of such document or item.

C.     Unless the context of any request for documents requires otherwise, references to the conjunctive include the disjunctive, and vice versa.

D.     Absent any order from the court, you shall serve a copy of your answers and objection, if any, within thirty (30) days of the date of service of these requests for documents.

Page 5 of 8

E.     For each producing document(s) relevant to your responses to these requests for production, please segregate your document production by providing such produced document(s).

## DOCUMENTS TO PRODUCE

1.     Please produce all documents that evidence, describe, refer, or relate to the sale of admission tickets to any service or attraction by Global Amenities, LLC.

2.     Please provide any and all documents, including electronically stored information, that evidence, describe, refer and/or relate to any communications between yourself and Don Abreu, relating to any of the following:

    a.     ASI

    b.     Global Amenities, LLC

    c.     This lawsuit

    d.     An Amenity Program

    e.     DVD Now

3.     Please provide any and all documents, including electronically stored information, that evidence, describe, refer and/or relate to any communications between yourself and Andrew Manios, relating to any of the following:

    a.     ASI

    b.     Global Amenities, LLC

    c.     This lawsuit

    d.     An Amenity Program

    e.     DVD Now

4.      Please produce all documents that evidence, describe, refer or relate to Global Amenities, LLC's partnership with the following entities, as described in Exhibit "A."

        a.      Mariott

        b.      Hilton

        c.      Wyndham

        d.      Hyatt

        e.      Resort Quest

        f.      Brittain Resort Management

5.      Please produce any and all tax returns filed on behalf of Global Amenities, LLC from 2011 to the present.

6.      Please produce any and all monthly balance sheets and income statements for Global Amenities, LLC.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original hereof has been filed with the Clerk of this Court, and a true and correct copy of hereof has been furnished by electronic mail and facsimile to Joseph M. Scheyd, Jay@jscheyd.com and matt@jscheyd.com on this 31 day of May, 2016.

/s/ A. Benjamin Gordon
A. Benjamin Gordon
Florida Bar No.: 528617
Darian Zamora
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:   (850) 863-1974
Facsimile:   (850) 863-1591
Email:       bgordon@kaglawfirm.com
             dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*



Our Key Partners include some of the world's largest hotel and resorts as well as property management companies. Global Amenities has and continues to forge solid relationships to aid in providing their guests the ultimate entertainment experience.



# Marriott
rent a car



# Hilton



# Wyndham
site analysis

# Hyatt

EXHIBIT "A"

RESORTQUEST.

# Resort Quest

BRITTAIN
RESORT MANAGEMENT

# Brittain Resort Management

Address Global Amenities, LLC 3185 Grand avenue #304 Pinellas Park, FL 33782

Filing # 42147139 E-Filed 05/31/2016 04:16:16 PM

### IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
### IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a Amenity Services, Inc.
a Florida corporation,

       Plaintiff,                      CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,

       Defendants.

_____/

### PLAINTIFF'S THIRD REQUEST FOR PRODUCTION TO
### DEFENDANT ANDREW MANIOS

Plaintiff, Keefe, Anchors & Gordon, P.A. ("KAG"), by and through undersigned counsel and pursuant to Rule 1.350, Florida Rules of Civil Procedure, hereby request Defendant, Andrew Manios, to produce the following designated documents for inspection and copying at the law offices of Keefe, Anchors & Gordon, P.A., 2113 Lewis Turner Boulevard, Suite 100, Fort Walton Beach, Florida 32547, or such other place as counsel may agree, within thirty (30) days from the date of service hereof.

### DEFINITIONS

A.      The term "COMMUNICATION" shall be construed in its broadest sense and shall mean directly or indirectly describing, setting forth, discussing, mentioning, commenting upon, supporting or referring to the subject or topic in question, either in whole or in part, whether by correspondence, telephone, computer, meeting, or any occasion of joint or mutual presence as well as the transfer of any document from one person to another.

B.     The terms "DEFENDANT," "YOU," "YOUR," "MANIOS,"  refer to Defendant, Andrew Manios and include his successors or predecessors in interest and all officers, attorneys, brokers, directors, employees, agents, servants and other persons acting or purporting to act on behalf of Manios.  When a document request is relevant to less than all Defendants and/or you, the singular form of the word should be substituted as may be necessary to bring within the scope hereof any documents which might otherwise be construed to be outside the scope hereof.

C.     The terms "DOCUMENT" or "DOCUMENTS" mean the original and all copies thereof which are different in any way from the original (whether by interpretation, receipt stamps notation, indication of copies sent or received or otherwise) and all attached or annexed materials to any typewritten, handwritten, printed, graphic, photographic or recorded material as well as all computer data files, tapes, disks, input or outputs, and other computer-readable records or programs, transcripts, and copies, and reproductions thereof, however produced or reproduced, now or at any time in your actual or constructive possession, custody or control.  The terms "DOCUMENT" or "DOCUMENTS" shall specifically include, but not be limited to, correspondence, emails, instant messages, cellular telephone text messages, PDA messages, telegrams, facsimiles, telexes, memoranda or records of meetings, conferences, telephone or other communications, pamphlets, books, notes, reports, studies, transcripts, indices, accounting records of any kind, including bank examination reports whether state or federal, filings, records, charts, tabulations, lists, analyses, graphs, diagrams, estimates, minutes, (including board and loan committee meetings), tapes, photographs and photographic films, sound recording tapes, phonograph records, video tapes, data

compilations from which information can be obtained or can be translated into a form reasonably usable, as well as any method or electronic data processing equipment or magnetically stored information.  The terms "DOCUMENT" or "DOCUMENTS" shall include all materials discoverable under the Florida Rules of Civil Procedure, including Rule 1.351.

D.    The term "ELECTRONICALLY STORED INFORMATION" shall mean writings, drawings, graphs, charts, photographs, sound recordings, images, and any other data or data compilations stored in any medium from which information can be obtained; translated into a reasonably usable form or in the form in which the information is ordinarily maintained.

E.    The "PERSON" means any natural person, firm, partnership, association, proprietorship, joint venture, corporation, company, governmental agency, or other organization or business entity.

F.    The term "PERIOD" means the time period from June 1, 2011 to the present, unless otherwise indicated.

G.    "RELATING TO" and "RELATES TO" shall be construed in their broadest sense and shall mean directly or indirectly describing, setting forth, discussing, mentioning, commenting upon, supporting, contradicting, or referring to the subject or topic in question, either in whole or in part.

H.    The term "Defendants" shall mean Don Abreu and Andrew Manios, and include their successors or predecessors in interest and all officers, attorneys, brokers, directors, employees, agents, servants and other persons acting or purporting to act on behalf of Don Abreu and Andrew Manios. The term "Company" or "your Company" shall

refer to any amenity services companies owned or operated by you, or any amenity services companies for whom you act as an employee, contractor, or consultant.

I.      The term "PLAINTIFF" shall mean ASI Holding Company, Inc. d/b/a Amenity Services, Inc., a Florida corporation.

J.      When appropriate, the singular form of a word should be interpreted in the plural as may be necessary to bring within the scope hereof any documents which might otherwise be construed outside the scope hereof.

K.      The words "and" and "or" shall be construed either disjunctively or conjunctive as necessary to bring within the scope hereof any documents which might otherwise be construed to be outside the scope hereof.

L.      The term "Lodging Provider" shall include any and all hotels, motels, resorts, bed & breakfasts, inns, and all other places of public or private accommodation.

M.      The term "Service Provider" shall include all entities, individuals and organizations providing services of any kind, including but not limited to, equipment rentals, DVD/movie rentals, attractions, and recreational activities.

## INSTRUCTIONS

A.      If, in answering any request for documents, you claim that the information requested is privileged or subject to protection, please expressly state the applicable privilege or protection and describe the nature of the information, communications, or information not produced in a manner that will enable Defendants to assess the applicability of the claimed privilege or protection and please provide the following identifying information:

(1)     Date;

(2)    Author;

(3)    Addressee;

(4)    Brief description of the subject matter and form of the document and attachments, including the number of pages;

(5)    Statement of the basis upon which the privilege is claimed; and

(6)    The numbers of each specific request to which the document or thing would be responsive.

B.    If there is any document or other item described by this request which is no longer in your possession, custody or control, or is no longer in existence or assessable to you, please indicate:

(1)    The date and nature of the disposition of such document or other tangible item, including, but not limited to, whether such: (a) is missing or lost, (b) has been destroyed, or (c) has been transferred to another person;

(2)    The circumstances surrounding such disposition, including any authorization therefore; and

(3)    Where applicable, the person currently in possession, custody or control of such document or item.

C.    Unless the context of any request for documents requires otherwise, references to the conjunctive include the disjunctive, and vice versa.

D.    Absent any order from the court, you shall serve a copy of your answers and objection, if any, within thirty (30) days of the date of service of these requests for documents.

E.     For each producing document(s) relevant to your responses to these requests for production, please segregate your document production by providing such produced document(s).

## DOCUMENTS TO PRODUCE

1.     Please produce all documents that evidence, describe, refer, or relate to the sale of admission tickets to any service or attraction by Global Amenities, LLC.

2.     Please provide any and all documents, including electronically stored information, that evidence, describe, refer and/or relate to any communications between yourself and Don Abreu, relating to any of the following:

      a.     ASI

      b.     Global Amenities, LLC

      c.     This lawsuit

      d.     An Amenity Program

      e.     DVD Now

3.     Please provide any and all documents, including electronically stored information, that evidence, describe, refer and/or relate to any communications between yourself and Chris Manios, relating to any of the following:

      a.     ASI

      b.     Global Amenities, LLC

      c.     This lawsuit

      d.     An Amenity Program

      e.     DVD Now

4.   Please produce all documents that evidence, describe, refer or relate to Global Amenities, LLC's partnership with the following entities, as described in Exhibit "A."

 a.   Mariott

 b.   Hilton

 c.   Wyndham

 d.   Hyatt

 e.   Resort Quest

 f.   Brittain Resort Management

5.   Please produce any and all tax returns filed on behalf of Global Amenities, LLC for 2011 to the present.

6.   Please produce any and all monthly balance sheets and income statements for Global Amenities, LLC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original hereof has been filed with the Clerk of this Court, and a true and correct copy of hereof has been furnished by electronic mail and facsimile to Joseph M. Scheyd, Jay@jscheyd.com and matt@jscheyd.com on this 31 day of May, 2016.

/s/ A. Benjamin Gordon
A. Benjamin Gordon
Florida Bar No.: 528617
Darian Zamora
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL   32547
Telephone:   (850) 863-1974
Facsimile:   (850) 863-1591
Email:        bgordon@kaglawfirm.com
              dzamora@kaglawfirm.com

Page 7 of 8

*Attorneys for ASI Holding Company, Inc.*



Our Key Partners include some of the world's largest hotel and resorts as well as property management companies. Global Amenities has and continues to forge solid relationships to aid in providing their guests the ultimate entertainment experience



# Marriott

rent a car



# Hilton



# Wyndham

site analysis

HYATT

# Hyatt

EXHIBIT "A"

RESORT QUEST.

# Resort Quest

BRITTAIN
RESORT MANAGEMENT

# Brittain Resort Management

Address Global Amenities, LLC 3185 Grand avenue #304 Pinellas Park, FL 33782

Filing # 46405319 E-Filed 09/13/2016 06:23:29 PM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA**

ASI HOLDING COMPANY, INC.,
d/b/a/ Amenity Services, Inc.
a Florida corporation,

       Plaintiff,                              CASE NO. 2013 CA 4103

v.

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation.

       Defendants.
_____/

**<u>NOTICE OF FILING TRANSCRIPT FROM SEPTEMBER 8, 2016 HEARING</u>**

      Plaintiff, ASI Holding Company, Inc., by and through undersigned counsel, files the

attached Transcript from the September 8, 2016, hearing held before Honorable John T.

Brown.

                                    */s/ Darian Zamora*_____
                                      **A. Benjamin Gordon**
                                      Florida Bar No.: 528617
                                      **Darian Zamora**
                                      Florida Bar No.: 114951
                                      Keefe, Anchors & Gordon, P.A.
                                      2113 Lewis Turner Boulevard, Suite 100
                                      Fort Walton Beach, Florida   32547
                                      Telephone:   (850) 863-1974
                                      Facsimile:     (850) 863-1591
                                      Email: bgordon@kaglawfirm.com
                                               dzamora@kaglawfirm.com

                                      *Attorneys for ASI Holding Company, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original hereof has been filed with the Clerk of this Court, and a true and correct copy of hereof has been furnished by electronic mail to Joseph M. Scheyd, Jay@jscheyd.com and matt@jscheyd.com and Jonathan E. Pollard, Pollard, PLLC, jpollard@pollardllc.com on this 13ᵗʰ day of September, 2016.

/s/ Darian Zamora
**A. Benjamin Gordon**
Florida Bar No.: 528617
**Darian Zamora**
Florida Bar No.: 114951
Keefe, Anchors & Gordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Fort Walton Beach, Florida   32547
Telephone:   (850) 863-1974
Facsimile:     (850) 863-1591
Email: bgordon@kaglawfirm.com
           dzamora@kaglawfirm.com

*Attorneys for ASI Holding Company, Inc.*

2

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA

ASI HOLDING COMPANY, INC.,
d/b/a Amenity Services, Inc.,
a Florida corporation,

  Plaintiff,

vs.                       Case No. 2013 CA 4103

DON ABREU, an individual, and
ANDREW MANIOS, an individual,
CHRIS MANIOS, an individual, and
GLOBAL AMENITIES, LLC, a South
Carolina corporation,

  Defendants.

_____/

TRANSCRIPT OF PROCEEDINGS

DATE TAKEN:      September 8, 2016

TIME:           9:00 a.m. - 11:10 a.m. Central

PLACE:         Okaloosa County Courthouse Annex Extension
                 1940 Lewis Turner Boulevard
                 Fort Walton Beach, Florida  32547

BEFORE:       Honorable John Brown

    This cause came on to be heard at the time and place
aforesaid, when and where the following proceedings were
reported by:

REBECCA DANIELS, RPR
DANIELS & RACKARD REPORTING
1817 Lewis Turner Boulevard, Suite F
Fort Walton Beach, Florida  32547
(850) 864-DEPO     E-MAIL: depos@cox.net

2

APPEARANCES

On behalf of the Plaintiffs:

A. BENJAMIN GORDON
Attorney at Law
Keefe, Anchors & Gordon
2113 Lewis Turner Boulevard
Suite 100
Fort Walton Beach, Florida  32547
bgordon@kaglawfirm.com


DARIAN ZAMORA
Attorney at Law
Keefe, Anchors & Gordon
2113 Lewis Turner Boulevard
Suite 100
Fort Walton Beach, Florida  32547
dzamora@kaglawfirm.com


On behalf of the Defendants:

JONATHAN POLLARD
Attorney at Law
Pollard, PLLC
401 E. Las Olas Boulevard #1400
Fort Lauderdale, Florida  33301
jpollard@pollardllc.com


JOSEPH M. SCHEYD
Attorney at Law
1221 Airport Road, Suite 209
Destin, Florida  32541
jay@scheyd.com


ALSO PRESENT:

Darrell Blanton

3

```
1                     INDEX OF EXAMINATIONS
                                             PAGE  LINE
2    PLAINTIFF'S WITNESSES:

3    JOSEPH M. SCHEYD:

4    DIRECT EXAMINATION BY MR. GORDON..................  44    25

5    CROSS-EXAMINATION BY MR. POLLARD..................  55    16

6    REDIRECT EXAMINATION BY MR. GORDON...............  66    22

7    DARIAN ZAMORA:

8    DIRECT EXAMINATION BY MR. GORDON..................  70    25

9
     DEFENDANTS' WITNESSES:
10
     JONATHAN POLLARD:
11
     STATEMENT BY MR. POLLARD.........................  76    24
12
     CROSS-EXAMINATION BY MR. GORDON..................  77    10
13

14
     THE COURT'S RULING...............................  86     2
15
     CERTIFICATE OF REPORTER.......................... 101     4
16

17

18

19

20

21

22

23

24

25
```

8fd9dd4f-333d-459d-9148-17a6c0339674

4

1        MR. POLLARD:  Your Honor, we have a binder for

2  you, if you would like?

3        THE COURT:  Yes, sir, thank you.  Okay.  Which --

4  which motion do we want to start with?

5        MR. GORDON:  Your Honor, we had filed a motion to

6  strike pleadings for a continuing contempt of court,

7  and we propose that that motion be taken up first

8  because it will address several of the other motions

9  that will be heard later.

10        THE COURT:  Okay, one second.  The motion for

11  which one?

12        MR. GORDON:  It should be the first motion.

13        THE COURT:  Okay.

14        MR. GORDON:  It's a plaintiff's motion for order

15  to show cause and to strike pleadings for repeated

16  civil contempt.

17        THE COURT:  Yes, sir.  Okay.

18        MR. GORDON:  May I proceed?

19        THE COURT:  Yes, sir, please.

20        MR. GORDON:  Your Honor, as you're aware, this is

21  an action at its core that's about theft of trade

22  secrets and breach of a nondisclosure agreement related

23  to my client's amenity program and business.  My

24  client, Darrell Blanton, is with me here today.

25        THE COURT:  Nice to meet you, sir.

5

1     MR. BLANTON:  Nice to meet you.

2     MR. GORDON:  The motion we're here on today is a

3  motion that is seeking the following:  striking the

4  defendants' pleadings for continuing contempt; a

5  default judgment as to liability in favor of my client,

6  the plaintiff; that the trial proceed solely as to the

7  amount of damages because they're not liquidated in the

8  complaint so there would have to be a trial on that;

9  and an award of our fees and costs for having to

10  prepare for and attend this hearing in the amount of

11  five thousand seven hundred and one dollars and fifty

12  cents.  What I would like to do, if I could briefly, is

13  this is an evidentiary hearing and I have the evidence

14  to present to the Court.  But I would like to, before I

15  do so, to provide the Court with the legal framework

16  that the Court needs to use in analyzing this type of

17  motion and then I'll briefly summarize the evidence

18  that I would present to the Court; and at the Court's

19  direction, I'm ready to present the evidence.

20     THE COURT:  Is it Kozel?

21     MR. GORDON:  It is Kozel and a -- there's another

22  case, the Mercer case, which I'll talk about, Your

23  Honor.

24     THE COURT:  Okay.

25     MR. GORDON:  But those two cases go together and

6

1    really address the situation.  And I will acknowledge

2    this is a severe sanction we're seeking.  And it is a

3    sanction that's only to be employed when the Court is

4    without any other meaningful options.  And the evidence

5    we're going to present, Your Honor, we believe that

6    we're at that point in this case.

7              There are two parts to this analysis as we

8    just mentioned.  One is the rubric set forth in Mercer

9    v. Raine and I have a copy of the Supreme Court case if

10   the Court would like to see it.

11             THE COURT:  Yes, sir, thank you.

12             MR. GORDON:  This was 434 So.2d 944, a 1983

13   Supreme Court case.  This addresses the standard when

14   you look at a party's misconduct.

15             And the other case is the Kozel case that the

16   Court is aware of.  The Kozel factors really go to a

17   sanction that is based on the attorney's misconduct, if

18   you understand there is a distinction there.  In this

19   case the defendants have asserted that their

20   justification -- or part of their justification is that

21   it's their lawyer's fault that they have not complied

22   with these orders.  So I think that this hearing is to

23   address both the Mercer analysis and then the Kozel

24   analysis as well.

25             Under Mercer this requires that the Court

8fd9dd4f-333d-459d-9148-17a6c0339674

7

1    make -- have an evidentiary hearing and make specific

2    written findings of fact from which a reasonable person

3    could conclude that the defendants acted in willful or

4    deliberate disregard of the Court's authority.  The

5    finding you have to make is that it was willful and

6    deliberate disregard of the Court's authority.

7            THE COURT:  Is it and or?

8            MR. GORDON:  It's or.

9            THE COURT:  Okay.

10           MR. GORDON:  Willful or.  And that would be

11   something more than mistake, neglect, or inadvertence.

12   The Supreme Court in the Mercer case affirmed a court

13   striking pleadings.  And I only say this because

14   willful or deliberate disregard of the Court's

15   authority and the question is, well, what does that

16   mean?  So I look at the Mercer case itself.  And in the

17   Mercer case, the Supreme Court affirms striking the

18   pleadings where the trial judge made the two --

19   following two factual findings.  One, that the

20   defendant, and I quote, knew what was going on, closed

21   quote.  And, two, the defendant, quote, had total

22   disregard for the consequences, closed quote.  So in

23   Mercer the Supreme Court said that with those two

24   findings, a defendant has acted in willful or

25   deliberate disregard of the Court's authority.  The

8

1    Mercer case, interestingly, had much less severe

2    misconduct by the defendants than in this case.   In

3    Mercer the defendant had been sued with the complaint

4    and discovery at the same time that was served at the

5    beginning.  The defendant filed a motion to dismiss and

6    a motion for protective order to not have to respond to

7    the discovery until the motion to dismiss was ruled on.

8    The trial court denied the motion to dismiss and

9    ordered the defendant to respond to the discovery

10   within twenty days.  Within that twenty days, the

11   defendant did not respond, did not request more time,

12   and did not communicate with the Court regarding its

13   mitigating circumstances during the period of

14   compliance.  The trial court struck the answer, entered

15   a default judgment for the plaintiff, and ordered the

16   defendants to pay fees and costs to the plaintiff.  The

17   defendant appealed that saying, well, the Court should

18   have given me more opportunity to cure.  The Supreme

19   Court, in affirming that sanction, noted at page nine

20   forty-six, and I quote, admittedly, the sanctions

21   imposed here are severe.  We cannot say that they are

22   inappropriate, however, in light of the evidence.  The

23   evidence being that the defendant knew what was going

24   on and had a complete disregard for the consequences.

25   The case and the evidence we're going to present, Your

8fd9dd4f-333d-459d-9148-17a6c0339674

9

1   Honor, will show that in that case the Supreme Court of
2   Florida upheld striking pleadings for failure to
3   respond to one set of interrogatories within only
4   twenty days after one order compelling responses.  The
5   evidence in this case is going to show the defendants
6   have failed to respond to multiple sets of discovery
7   over multiple months, after multiple orders to compel
8   and contempt.  As in Mercer, Your Honor, we're going to
9   show that the defendants knew what was going on and
10  they had a disregard for the consequences.
11          I'd also point the Court to another case, Leo
12  v. Seavie Resources, LLC.  In this case, Your Honor,
13  the appellate court affirmed striking the pleadings for
14  multiple failures to respond to discovery.  In that
15  case, the Court concluded that there had been a willful
16  and deliberate disregard of the Court's authority
17  because, one, the Court repeatedly ordered the party to
18  respond to discovery as has happened here; and, two,
19  the Court expressly informed the party that the failure
20  to respond could result in striking pleadings.  And
21  that's telling because here your order of contempt
22  specifically put the defendants on notice that failure
23  to comply with the order would result in them being
24  here today on a motion to strike their pleadings.  So
25  they were on notice of the consequences.  Notably, in

8fd9dd4f-333d-459d-9148-17a6c033967

10

1    that Leo case the litigant was pro se and had their

2    pleadings stricken.   Here, the defendants have had the

3    benefit of legal counsel to -- who have a duty to

4    advise them of these orders and their obligations under

5    those orders and to insure compliance as best the

6    lawyers can.   And ultimately it's not in the lawyer's

7    hands.

8         THE COURT:   Let me ask you a question.   On

9    Mercer, at the trial level was the defendant in that

10   case -- I presume it was the defendant -- was he or she

11   physically present at the time that the Court entered

12   those orders or entered the order?

13        MR. GORDON:   The order striking the pleadings?

14        THE COURT:   Yes, sir.

15        MR. GORDON:   You know, Your Honor --

16        THE COURT:   Just since you said they were pro se

17   in the Ledo case, I was just curious.

18        MR. GORDON:   I believe they were present -- the

19   way the Mercer case -- they were represented by

20   counsel.   I think the counsel got out when the motion

21   was set because their client quit responding to them.

22   So I'm assuming that the client showed up at court at

23   the time of the hearing because I think that the order

24   explains that the attorney had withdrawn.

25        THE COURT:   Thank you.

8fd9dd4f-333d-459d-9148-17a6c0339674

11

1          MR. GORDON:  And, Your Honor, that brings us now

2     to the Kozel aspect of this.  And the Kozel factors

3     really focus on when the Court has to consider, well,

4     what was the role of the attorney, as well as the

5     client.  The point of Kozel is to seek to avoid unduly

6     prejudicing a litigant based solely on the attorney's

7     conduct.  And here, Your Honor, we're not basing our

8     motion solely on the attorney's conduct.  In fact, our

9     motion is primarily focused on the defendants' conduct.

10    We'll briefly touch on attorney conduct just because

11    they've raised the issue but we are -- we are to

12    believe that the defendants have been directly

13    involved.

14          The Supreme Court of Florida explained the

15    interplay between Mercer and Kozel in the Ham v.

16    Dunmire case at 891 So.2d 492, in which the Supreme

17    Court noted that it's important to consider what was

18    the role of the defendant, the litigant himself,

19    separate and apart from his attorney.  But even then

20    Ham noted that it can still be proper to strike the

21    pleadings even if the client had no involvement if the

22    conduct gets to the point that it's so severe that it

23    interferes substantially with the administration of

24    justice.  But again, Your Honor, here we will address

25    the Kozel factors but we will point out that these

8fd9dd4f-333d-459d-9148-17a6c0339674

12

1    defendants are aware of their obligations and are in

2    willful and deliberate disregard of the Court's

3    authority.   Those sanctions -- I mean those factors,

4    the six Kozel factors are the following:   Whether the

5    attorney's disobedience was willful, deliberate, or

6    contumacious --

7             THE COURT:   Where do you have that in -- I think

8    you've got it in there.

9             MR. GORDON:   I do.   It's in there probably -- I

10   think I broke them out.

11            MS. ZAMORA:   It's on page twelve.

12            THE COURT:   I'm sorry?

13            MS. ZAMORA:   Page twelve of our first motion.

14            THE COURT:   Thank you.   Yes, sir, go ahead.

15            MR. GORDON:   So it's the attorney's disobedience

16   was willful, deliberate or contumacious; whether the

17   attorney was previously sanctioned; whether the client

18   was personally involved; whether there's prejudiced to

19   the opposing party through undue expense, loss of

20   evidence, or otherwise; whether there was a reasonable

21   justification for the noncompliance; and whether the

22   delay created significant problems of judicial

23   administration.   So, Your Honor, that's the standard

24   and that focuses a lot on the attorney because the

25   point of Kozel is to avoid unduly sanctioning the

13

1  litigant for the attorney's misconduct.  Here we intend

2  to show both.  And I would like to briefly explain to

3  you what the evidence is going to show when we proceed

4  and I will do this in the context of the Kozel factors

5  because it includes what was the defendants -- or the

6  litigant's misconduct.

7         The first factor goes into the conduct of the

8  attorney being willful and malicious -- or

9  contumacious.  And, Your Honor, again, we don't base

10 this motion on the attorney's conduct.  The attorneys

11 sometimes have very limited control over what happens

12 in their cases, though, they can do the best they can;

13 but because it's a factor the defendants have raised a

14 defense of blaming their attorney, I feel like I need

15 to address our view of that.  The evidence is going to

16 show that prior to Mr. Pollard appearing recently in

17 this case, that Mr. Scheyd, at least to us, had

18 acknowledged his clients' discovery obligations; that

19 he had confirmed to us that he communicated with his

20 clients concerning them.  There were multiple good

21 faith letters back and forth with Mr. Scheyd to work

22 through issues and ultimately when the documents became

23 so much that Mr. Scheyd didn't know how his clients

24 could further respond, he represented to us that his

25 clients had offered to simply provide us with their

14

1    computers and hard drives and let us search for the

2    documents kind of in the sense of which they're stored

3    in the ordinary course of business.

4              Right before the close of discovery in late

5    August with discovery only a matter of weeks away and a

6    trial at the end of October, Mr. Pollard appeared in

7    the case.  I know it's hard when a lawyer comes in to a

8    case but that's -- there is an obligation on the new

9    attorney to make sure before they agree to accept that

10   representation and before they file the notice of

11   appearance to become an officer of this court, that

12   they're fully apprised of what's happening, what's

13   going on and what their obligations are and what their

14   clients' obligations are.  That is particularly acute

15   when you arrive in a case as late as Mr. Pollard had.

16   So when Mr. Pollard arrived, he should have known, or

17   he did know, all of the discovery obligations that his

18   clients were under, including the pending motions and

19   the Court's orders mostly from a review of the docket

20   itself would have provided him with that information.

21   And one issue that we note is at the time that Mr.

22   Pollard appeared in this case, he knew that he was

23   under an order to appear for trial in another case in

24   Miami-Dade County on the same date that this trial was

25   set.  So when he appeared in the case, he knew he was

8fd9dd4f-333d-459d-9148-17a6c0339674

15

1    unavailable on the date that this Court had set for

2    trial.  Now we've been here -- and this is our third

3    motion that he's attended -- and Mr. Pollard has yet to

4    advise the Court of that.  The evidence will show that

5    Mr. Pollard told my office that we couldn't do this

6    trial on the date this Court had set it because of his

7    other trial.  And so we'll have the evidence to show

8    that he's under that court order at this time and was

9    at the time he appeared in the case.

10           Upon appearing in the case, the evidence will

11    show that Mr. Pollard made it very clear that he was

12    the attorney for the defendants; that he was fully

13    responsible for everything that was going to happen and

14    their compliance with everything.  He made it very

15    clear that Mr. Scheyd had no further authority to speak

16    for the defendants and that it was all on him.  So the

17    evidence will show that upon his appearance, Mr.

18    Pollard could no longer try to shift blame to Mr.

19    Scheyd.

20           The evidence will show that Mr. Pollard's

21    first act in appearing in the case was to unilaterally

22    cancel the deposition of Louis Manios that was set to

23    appear within a couple of days.  Louis Manios is the

24    father of two of the defendants and is the CPA for all

25    of the defendants and their business at issue in this

16

1    case.  Mr. Scheyd had previously agreed with the
2    authority from his clients that the father, Louis
3    Manios, would voluntarily appear for deposition.  It
4    was noticed, scheduled, and planned.  And Mr. Pollard's
5    first act was to cancel that deposition, declaring that
6    Mr. Scheyd had no authority to make that agreement.
7    Your Honor, Mr. Pollard was counsel for the defendants
8    at the hearing compelling the production of documents.
9    He was present at the hearing by telephone on the order
10   in which the Court found them in contempt and ordered
11   further production.  He was on direct notice of the
12   Court's orders and his clients' obligations.  He had
13   assumed the role and had not produced a single document
14   in response to the Court's contempt order.  Now, I will
15   note that yesterday afternoon, sometime after four
16   o'clock, we received an email that had some two hundred
17   and fifty some-odd documents in it.  We've not fully
18   reviewed it.  However, in having reviewed it, we've
19   determined that a hundred and eleven of those documents
20   were already produced in this case.  So those are not
21   the documents at issue.  Moreover, it doesn't include
22   several other documents that are still a part of the
23   order of contempt.  And the email from counsel's office
24   specifically says this isn't everything.  We're going
25   to produce more but we don't have it today, on the day

17

1    of the hearing.  So, Your Honor, that is the conduct of

2    counsel.

3              The second factor goes to whether there had

4    been previous sanctions, and under Kozel it's against

5    the attorney.  And, Your Honor, I'll concede there had

6    not been previous sanctions against counsel in this

7    case.  However, there have been previous sanctions

8    against the defendants themselves, which only lends

9    greater weight to striking of the pleadings because the

10   defendants have been directly involved in being

11   sanctioned.  Once a defendant is sanctioned, they

12   should be on heightened notice of their need to be

13   aware of Court orders and comply with them.  The Court

14   can take judicial notice of these on February 18, 2006,

15   the Court sanctioned the defendants and ordered them to

16   pay plaintiff the attorney's fees for having to pursue

17   the motion to compel responses to the second request

18   for production to Don Abreu.  And then most recently on

19   August 22nd, 2016, the Court again sanctioned the

20   defendants and ordered them to pay our fees for the

21   motion for contempt, and later today we'll address the

22   amount of those sanctions.  And in that same order the

23   Court imposed coercive sanctions of a hundred dollars

24   per day for the failure to respond.  And as of today,

25   the defendants have still failed to fully respond to

18

1    that order and we're at a thousand dollars in coercive

2    contempt sanctions that have been incurred to date

3    which we have to address when and how that's going to

4    be paid.

5         The third element, Your Honor, goes to

6    defendants were personally involved in the contempt.

7    We're going to submit evidence that the defendants

8    admitted in depositions to having not produced

9    documents; that defendants admitted in depositions to

10   knowing that they were under an obligation to produce

11   those documents and to knowing that they had not

12   produced them.  And we're going to introduce evidence

13   where the defendants falsely testified that they had

14   produced documents, only to require us to subsequently

15   find out that that was not true testimony and they had

16   not produced certain documents.  So, Your Honor, that

17   will be the evidence that the defendants are directly

18   aware of their disregard of the Court's orders.

19         The fourth element or factor, Your Honor,

20   goes to whether the plaintiff has been unfairly

21   prejudiced and we believe that it has.  My client, ASI,

22   has incurred significant fees and costs in repeatedly

23   raising these basic compliance issues.  The case has

24   been pending for nearly three years and most of this

25   discovery has been outstanding for nine months now.

19

1    The discovery deadline is in one week.  The trial is

2    less than sixty days away.  We still don't have the

3    necessary documents which are required as to re-take

4    depositions, to postpone depositions, and we've been

5    unfairly prejudiced in preparing our case for trial.

6    Further, Your Honor, the evidence will show that the

7    delay only enriches the defendants.  They want to move

8    this trial date.  They want to delay this.  Because the

9    evidence is going to show that they generate revenues

10   between fifty-eight thousand to eighty-two thousand

11   dollars per month on average, the longer that this goes

12   on and they can continue to operate.

13            The fifth factor, Your Honor, goes there's no

14   reasonable justification for the noncompliance.  The

15   defendants have often said, well, it's the mere size of

16   the production.  Your Honor, mere size of the

17   production ceases to be an excuse nine months later.

18            Second the defendants still have not produced

19   easily accessible documents, most namely the DVDNow

20   agreement that they have.  DVDNow is their primary

21   service provider.  It is the bread and butter of their

22   business, and they've yet to produce that document.  We

23   believe there are additional service provider

24   agreements they've still not produced.  In briefly

25   reviewing the documents they dumped on us last night,

20

1    it appears they have produced some of the tax returns.

2    But, again, there's no reason that that's taken any

3    time.  The tax returns should have been right at hand,

4    just like the DVDNow agreement which still hasn't been

5    produced.  And, Your Honor, they did not produce --

6    Andrew Manios came to his deposition and testified he

7    reviewed a bunch of documents for his deposition and

8    then admitted that he hadn't produced them to me.  And

9    as far as I know, I still have not been provided those

10   documents, unless they were a part of what was provided

11   last night.  But again, it should have been provided at

12   the moment.  The man read them right before his

13   deposition and yet they didn't turn them over.  And if

14   they have yet, it was only last night before they had

15   to come to this hearing.  So, Your Honor -- and they

16   concede now that even with whatever they produced last

17   night, they are still in contempt of the Court's order.

18         The final factor, Your Honor, is whether

19   noncompliance is creating problems with judicial

20   administration.  As Your Honor is aware, we've been to

21   multiple hearings on these discovery.  We have an

22   upcoming trial date.  There are pretrial deadlines that

23   maybe have to be adjusted.  So, Your Honor, we would

24   submit the Court can find there's been an impact on

25   judicial administration.

21

1            Your Honor, as far as how I present the

2       evidence, a lot of this are really just letters.  A lot

3       of it's -- the Court can take judicial notice of what's

4       in the file.  We have some letters back and forth of

5       counsel that I would hope we can admit by stipulation.

6       We have some deposition testimony of the defendants

7       that I would like to provide to the Court.  I have Ms.

8       Zamora here, who is responsible on my firm's behalf

9       dealing with discovery and can testify as needed.

10            And then, Your Honor, finally, because the

11      defendants have attempted to shift blame and their

12      cause is that they would like to blame Mr. Scheyd for

13      this, Your Honor, we believe under the Sword and Shield

14      Doctrine they've put the advice of counsel at issue and

15      that we should be entitled to make limited inquiry of

16      Mr. Scheyd as to what did he communicate to his clients

17      about their discovery obligations and what were their

18      responses to him in that regard.  So, Your Honor, with

19      that, I'm ready to present my evidence whenever the

20      Court desires.

21            THE COURT:  Any opening you would like to make?

22            MR. POLLARD:  If I may, in light of Mr. Gordon's

23      twenty-one minute opening statement, I will be

24      exceedingly brief.  Your Honor, Mr. Gordon points to

25      the Mercer case and suggests the Mercer case is

22

1    controlling.  And indeed if it is, at 496 on the

2    right-hand side, it's page three, right-hand column,

3    about midway through the Court holds there was no

4    showing that the defendant either attempted to comply

5    with the discovery order or communicated any

6    explanation or excuse to the Court by the time the

7    Court -- the motion was heard.  So at the time the

8    trial court entered the ultimate sanctions in the

9    Mercer case, it was clear in the record that the

10   defendant had made no attempt to comply and had offered

11   no explanation for his failure to comply.  So if

12   Mercer, which is a Supreme Court case and which Mr.

13   Gordon highlights as controlling, is indeed

14   controlling, then we have to inquire into those two

15   factors.  Did they make an attempt to comply, and if

16   not, either way did they offer an explanation as to why

17   they weren't able to comply.  And here I submit to you

18   that the proof is in the pudding, so to speak.  If the

19   defendants were willfully disregarding the Court's

20   order and the Court's authority and if they were acting

21   in bad faith, then why would they have sought out

22   replacement counsel to find out if this case was being

23   handled the right way, if there were things they needed

24   to do in terms of the case moving forward, if there

25   were obligations that weren't being met, et cetera.  If

8fd9dd4f-333d-459d-9148-17a6c0339674

23

1        the defendant took the position of, well, we don't care

2        what the Court says, we're just going to run roughshod

3        over the Court's orders, why would they have sought out

4        new counsel at tremendous expense, because I'm flying

5        up here from Fort Lauderdale and I will be handling

6        this case from Fort Lauderdale.  Simultaneously since

7        taking over this case, we have gone through an

8        incredibly dense record that spans several years.  We

9        have figured out what obligations we have, what

10       discovery is owing, what discovery they owe us, et

11       cetera.  We have brought in a third-party litigation

12       support company called RBM and we have collected all of

13       the relevant email accounts at issue.  So we have

14       collected at this point every single document in the

15       relevant email accounts for all of Global Amenities.

16       And we are in the process of going through those

17       documents simply to hold back attorney-client privilege

18       documents.  But we will literally be producing

19       everything else in those email accounts, with no

20       exceptions whatsoever.  So if the defendants truly were

21       acting in bad faith and in willful disregard of the

22       Court's order, it doesn't make sense that they would be

23       spending tens of thousands of dollars to bring me into

24       this case to have us collect these documents and get

25       these things produced.  And I stand by my word, Your

24

1      Honor.  At the prior hearing I said, respectfully, I

2      don't believe we'll be able to make this deadline.  I

3      explained we're going to have to bring in a vendor to

4      collect these email accounts.  We're going to have to

5      get them uploaded and produced and reviewed.  And we

6      will get those documents to the other side but I don't

7      believe we're going to be able to make that deadline.

8      I was very candid about that and it's held true.  We

9      weren't able to meet that deadline.  But what we have

10     done in the meantime is collect those documents.  We've

11     figured out certain documents that were owing.  We've

12     produced those documents.  We've produced responses to

13     request for admissions.  We have done our absolute best

14     to comply with our obligations.  I submit to the Court

15     that it is incumbent upon a lawyer in a complex

16     commercial matter that is document intensive to go to

17     his or her client and to say, you do this.  You give me

18     these documents.  You let me collect these email

19     accounts.  Because for my part, I'm getting the

20     documents that I need to get.  I'm collecting these

21     emails.  We will have produced the vast majority of

22     these documents within the next seven to ten days.  So

23     I don't see how on this record the Court can find

24     willful disregard or a lack of a reasonable explanation

25     for why things stand this way.  I agree.  There have

8fd9dd4f-333d-459d-9148-17a6c0339674

25

1    been problems up until this point.  I don't believe my
2    side has comported themselves appropriately, but I
3    don't believe the onus can be put on -- on my clients.
4    My clients are laypeople.  They are not lawyers.  They
5    are not highly educated.  They don't understand the
6    rules of the game.  They don't understand how this
7    stuff works.  If a client reviews documents in advance
8    of a deposition, you've got to tell that client, give
9    me those documents, we've got to turn them over to the
10   other side.  And I've never seen a situation where a
11   lawyer instructed a client, you reviewed those
12   documents before the deposition.  Give me those
13   documents and we'll turn them over to the other side.
14   I've never seen a situation where the client said, no.
15   I'm not giving you these documents.  You've told me to
16   give them to you.  I'm not giving them to you.  I'm
17   going to throw them away somewhere.  And I don't
18   believe that there is a record of evidence suggesting
19   that that's what happened here.  I can -- I can attest
20   as an officer of the court that since taking over this
21   case, we have done everything we can do and we will
22   continue to do everything we can do and in my humble
23   opinion, under the case law I believe that striking our
24   pleadings would be an abuse of discretion.  And I'm
25   willing to stipulate to admissibility of basically all

8fd9dd4f-333d-459d-9148-17a6c0339674

26

1   the evidence that they want to put in, in terms of

2   deposition transcripts and documents and everything

3   else.  And I say that even considering all of that

4   evidence, that the record is clear that the defendants

5   are trying to comply.  They might not have done a very

6   good job of it up until now but they're trying to

7   comply.  And I believe that right there is sufficient

8   to avoid the ultimate sanction.

9         THE COURT:  Let me ask you this question, Mr.

10  Pollard:  When you state replacement counsel, Mr.

11  Scheyd has never -- has never been removed as counsel

12  for the defendant, though, under the rules, correct?

13        MR. POLLARD:  Yes, sir, Your Honor.

14        THE COURT:  Okay.  So both of you -- as far as

15  the Rules of Judicial Administration go, you're

16  co-counsel, correct?

17        MR. POLLARD:  Technically.

18        THE COURT:  Okay.  Okay, thank you.  Mr. Gordon,

19  whatever you want to do as far as evidence?

20        MR. GORDON:  Your Honor, what may make sense is

21  if I could just kind of go through the documents to

22  provide them to the Court so we have the documents that

23  are out there.  And then I would like to ask Mr. Scheyd

24  some questions based on the Sword and Shield Doctrine.

25        THE COURT:  It's your case.

27

1           MR. GORDON:  Your Honor, the first set of

2     documents that I'm going to show you -- and keep my

3     exhibits, now that I've admitted into evidence -- these

4     go to the continuing contempt going back to discovery

5     that was served on November 6 of 2015.  And so I will

6     just provide the Court as Exhibit 1 a copy of that

7     request for production that was at issue.  As Exhibit 2

8     I would provide the Court with an email of December 15,

9     2006[sic], which was a good faith letter from my office

10    to Mr. Scheyd following up on why we had not received

11    timely responses.  Exhibit 3 are answers to those

12    requests for productions which included several

13    objections.  Exhibit 4 is the order granting the motion

14    -- overruling those objections and granting the motion

15    to compel, and that was dated the 18th of February.

16           We then are going to get into a series of

17    good faith letters that we provided to Mr. Scheyd

18    because they either had not responded to the motion to

19    compel, or even once they did, they had not fully

20    responded because they knew there were additional

21    documents and they were continuing attempts to provide

22    documents but they were always incomplete.  So exhibit

23    --

24           MS. ZAMORA:  Five.

25           MR. GORDON:  -- 5 would be a March 11, 2016, good

8fd9dd4f-333d-459d-9148-17a6c0339674

28

1      faith letter.  Exhibit 6 would be an April 8, 2016,

2      good faith letter, which we know that they still have

3      not provided the documents ordered.  Exhibit 7 is an

4      April 14, 2016, good faith letter.  May 31st, 2016, is

5      Exhibit --

6              MS. ZAMORA:  Eight.

7              MR. GORDON:  -- 8, is a May 31, 2016, good faith

8      letter.  Exhibit 9 is a June 1, 2016, good faith letter

9      in which we note that your client produced several

10     additional documents.  However, they still haven't

11     produced documents for all these people that were

12     ordered to be produced.  Exhibit 10 --

13             THE COURT:  Okay.  Wait a minute.  On the second

14     page of Plaintiff's Exhibit 9 for identification

15     purposes, it has confidential stamped on that page.  Is

16     this something that's going to be filed with the clerk

17     of court?

18             MR. GORDON:  Your Honor, it is but I'd be willing

19     to remove that from this exhibit, as long as counsel is

20     okay with it being admitted as an incomplete exhibit.

21             MR. POLLARD:  I have no objection.

22             THE COURT:  To removing the second page?

23             MR. POLLARD:  I have no objection to removing the

24     second page.

25             THE COURT:  Okay.

8fd9dd4f-333d-459d-9148-17a6c0339674

29

1          MR. POLLARD:  Or confidential or whatever you

2     want to do.

3          MR. GORDON:  Well, let's leave it on, then, to

4     keep a complete record, I guess.

5          THE COURT:  Okay.  So then are you going to file

6     with the clerk something that notifies them that that's

7     confidential and they're going to seal it?

8          MR. GORDON:  Are you still maintaining the

9     confidentiality designation on that document?

10         MR. POLLARD:  Well, if it's confidential, it

11    would have to be filed under seal.

12         MR. GORDON:  So you are going to maintain the

13    designation of that document?

14         MR. POLLARD:  I believe that would be the prudent

15    thing to do.

16         MR. GORDON:  We'll file the appropriate motion,

17    Your Honor.

18         THE COURT:  Okay, thank you.

19         MR. GORDON:  Exhibit --

20         MR. POLLARD:  If you want to rip the page off,

21    I'm fine with that.

22         MR. GORDON:  We'll file the motion.

23         THE COURT:  Okay.  And I don't know how familiar

24    you are with that, but I would -- unless you've had it

25    accepted in the past, you have by the clerk, Steve

8fd9dd4f-333d-459d-9148-17a6c0339674

30

1    Bauman, the attorney for the clerk, is very particular

2    about that.  And so I would say talk to -- talk to him

3    about that, where you know what the requirements are.

4         MR. GORDON:  We'll be sure to follow up with

5    Steve to make sure we do it right.

6         THE COURT:  Thank you.

7         MR. GORDON:  Your Honor, the next exhibit, which

8    will be Exhibit 10, is a July 18, 2016, email from my

9    office to opposing counsel again following up on

10   incomplete discovery responses.  Exhibit 11 is a July

11   22nd, 2016, email in which my office is following up

12   with Mr. Scheyd saying that we're still missing

13   documents, specifically the DVDNow contract.  Exhibit

14   12 is another good faith letter of July 26, 2016,

15   following up on the absence of discovery or failure to

16   fully respond to the discovery.  And then finally

17   Exhibit 13 is the order granting the motion for civil

18   contempt for the failure to respond to that discovery.

19   Your Honor, I next would like to go through the other

20   kind of primary piece of evidence that is the second

21   part of your contempt order and walk you through that

22   discovery, the orders to compel, the good faith letters

23   to respond, as well as the order of contempt.  So this

24   will be Exhibit 14 are the requests for production to

25   Chris Manios.  Exhibit 15 are the requests for

31

1    production to Andrew Manios.  Exhibit 16 is the fourth

2    request for production to Don Abreu.  Exhibit 17 is the

3    plaintiff's objection to that discovery.  Exhibit 18 is

4    the order granting the motion to compel that discovery.

5    Exhibit 19 is a July 6, 2016, email between my office

6    and Mr. Scheyd conferring about an extension on

7    responding to that discovery that Mr. Scheyd had

8    requested indicating -- in which Mr. Scheyd indicates

9    that he's been dealing with his clients back and forth

10   on how to obtain responses.  Exhibit 19 is a July 18,

11   2016, good faith letter to Mr. Scheyd following up on

12   why we have not yet received --

13            THE COURT:  Is that nineteen or twenty?

14            MS. ZAMORA:  I'm sorry.  That's twenty, Your

15   Honor.

16            MR. GORDON:  That's twenty, sorry.

17            THE COURT:  Thank you.

18            MS. ZAMORA:  My fault.

19            MR. GORDON:  And then finally, Your Honor, I

20   probably don't need to readmit it into evidence, but we

21   have the order granting civil contempt.

22            MS. ZAMORA:  Which would be Exhibit 14.

23            MR. GORDON:  I think it was Exhibit --

24            MS. ZAMORA:  Thirteen.

25            MR. GORDON:  13.  It's the same order applying to

32

1    both sets of discovery.

2           THE COURT:  Thank you.

3           MR. GORDON:  Your Honor, those are the kind of

4    primary discovery that the Court has already found the

5    defendants in contempt for and even today they're

6    continuing contempt and they admit they're in

7    continuing contempt of that order.

8           THE COURT:  Okay.  First, are you seeking to

9    admit these documents into evidence?

10          MR. GORDON:  I move to admit those into evidence,

11   Your Honor.

12          THE COURT:  Any objection?

13          MR. POLLARD:  No objection, Your Honor.

14          THE COURT:  They're all admitted into evidence.

15          MR. GORDON:  Your Honor, I'm now going to go

16   through some evidence that I think addresses the Kozel

17   factor specifically in light of this.  And what I'd

18   like to do is specifically point out, as I mentioned,

19   Mr. Scheyd's attempts to comply with the discovery

20   prior to Mr. Pollard's appearance.  And I'd offer into

21   evidence Exhibit 21, which is an email between Mr.

22   Scheyd and my office in which Mr. Scheyd notes that he

23   just got off the phone with his clients and that his

24   clients would like to offer the hard drives of the

25   company and their own personal hard drives to be sent

8fd9dd4f-333d-459d-9148-17a6c0339674

33

```
 1        to a third party in Fort Walton Beach to review all
 2        information related to the company in their individual
 3        communications.  If we need, there could be testimony
 4        that Mr. Scheyd and Ms. Zamora discussed after this
 5        that if they provided -- they might even provide those
 6        hard drives directly to my firm.  My firm would then
 7        retain somebody to search the documents in the ordinary
 8        course of business to pull it up and that was what he
 9        was authorized by his clients to propose to her.
10             THE COURT:  Well, if you're arguing that, it's
11        not in evidence.  If you want to put it in evidence,
12        then that's --
13             MR. GORDON:  We will put it into evidence, Your
14        Honor.
15             THE COURT:  Okay.
16             MR. GORDON:  So that was Exhibit 21.
17             MS. ZAMORA:  Twenty-one.
18             MR. GORDON:  Exhibit 22, Your Honor, is Mr.
19        Pollard's appearance in this case which was filed on
20        July 28, 2016, so prior to August he appeared.  Exhibit
21        --
22             MS. ZAMORA:  Twenty-three.
23             MR. GORDON:  -- 23, Your Honor, is a document
24        that was pulled off the docket of Martini v. Zelcer,
25        Case No. 15-22499, pending in the United States
```

34

1    District Court for the Southern District of Florida

2    which includes a letter and a substitution of counsel

3    for Mr. Pollard in that case.  Exhibit 24 is the order

4    setting a civil trial date and pretrial deadlines in

5    that case which sets Mr. Pollard to be in trial in the

6    Southern District of Florida on October 31, which was

7    the date of this trial but this was docketed October

8    26, 2015.  Therefore, Mr. Pollard was on notice when he

9    appeared in this case that he had a conflicting trial

10   date in the Southern District of Florida.  Exhibit 25

11   is a printout of the docket -- I apologize I only have

12   one copy of this -- for that Southern District of

13   Florida case, which in review of the docket, it appears

14   that that trial date is still set.

15        THE COURT:  Show it to Mr. Pollard first.

16        MR. POLLARD:  Uh-huh.

17        THE COURT:  Thank you.

18        MR. GORDON:  Exhibit 26 is an email that Mr.

19   Pollard sent to me, as well as your judicial assistant

20   and others, in which he makes it very clear that he is

21   attorney of record in this matter and will speak for

22   the defendants going forward and that was served on

23   July 29, 2016.  Exhibit 27 is the email from Mr.

24   Pollard in which he cancels Louis Manios' deposition,

25   in which he states that if Mr. Scheyd had agreed to it,

35

1    he did not have the authority to do so and said that he

2    is canceling that deposition a couple of days before it

3    was to occur.

4            Your Honor, the second factors to be

5    considered under Kozel go to the previous sanctionings

6    imposed in this case.  And I would provide the Court

7    with Exhibit 28 which is the February 22nd order

8    granting the motion to compel and awarding fees against

9    the defendants.  And then again, Your Honor, I'll refer

10   you back to Exhibit 13, which is the order of civil

11   contempt which imposed the other two sanctions against

12   the defendants.  Your Honor, my next exhibit, Exhibit

13   29, are going to be excerpts of the deposition of

14   Andrew Manios.  I have the complete deposition to

15   submit into evidence if the Court would prefer or we

16   can go with the excerpts.

17           MR. POLLARD:  The excerpts are fine.

18           MR. GORDON:  Okay.  Your Honor, I'm going to show

19   you as Exhibit 29 some excerpts to the deposition of

20   Andrew Manios in which Mr. Manios acknowledges that he

21   knew of his obligations to respond to discovery.  He

22   knew he had not complied, and this would then show the

23   defendants' responsibility for complying to it.  You'll

24   see -- I don't know if I'm missing the first page, if I

25   have to -- give me the complete of Mr. Manios.  I want

36

1    to make sure that we're not missing a page.  Your

2    Honor, there is -- we are missing a page forty-two of

3    this response.

4         THE COURT:  I've got it in here.

5         MR. GORDON:  Oh, you do?

6         THE COURT:  Yes, sir.

7         MR. GORDON:  Very good.

8         MS. ZAMORA:  It must have been a printing

9    problem.

10        MR. GORDON:  Mr. Pollard, do you have page

11   forty-two?

12        MR. POLLARD:  No, sir.  I have page forty-three.

13        MR. GORDON:  Here, I'll let you look at page

14   forty-two.  Your Honor, as you'll see on page

15   forty-two, I inquire of Mr. Manios if he is aware of

16   the Court's order.

17        THE COURT:  Hold on one second.  Mr. Pollard, on

18   the page that I have it's highlighted from line

19   fourteen through twenty-five.

20        MR. POLLARD:  Thank you, Your Honor.

21        MR. GORDON:  So, Your Honor, as you can tell, I'm

22   confirming with Mr. Manios that he's aware of the

23   Court's order to comply to discovery; that he has

24   documents that would be required that he hasn't

25   provided.  On page forty-three he goes on to say that

37

```
1    there's a lot of them.  And then Mr. Scheyd states
2    they're still working on it.  They're going through
3    tens of thousands.  Don Abreu told me that we would
4    have them within a week.  You got the financial.  I'm
5    only dealing with three guys.  Your Honor, we did not
6    get those documents within a week, which is what the
7    evidence will show.  But obviously Mr. Manios was aware
8    of it because the discussion took place right in front
9    of him in his deposition.
10            And then at page forty-three, line seventeen
11   to nineteen:  Your testimony today is based on you
12   having reviewed emails that you've not provided to me,
13   correct?  Answer:  That's correct.
14           THE COURT:  Just give me a moment.
15           MR. GORDON:  Yes.
16           THE COURT:  All right, thank you.
17           MR. GORDON:  And, Your Honor, on page forty-four
18   of his deposition at line three -- line nine, I
19   specifically asked him:  So there's a bunch of
20   documents out there that you've reviewed in preparation
21   for your deposition that I have not seen, right?  Mr.
22   Manios responds:  That's correct.  Question:  And you
23   understand that those had been requested as part of
24   this case?  Answer:  That is correct.  So, Your Honor,
25   on July 13 of 2016, Mr. Manios admitted under oath that
```

8fd9dd4f-333d-459d-9148-17a6c0339674

38

1    he knew that he was required to respond to this

2    discovery and that he had not done so, which is

3    contrary to some of the positions asserted by Mr.

4    Pollard in which he asserts that his clients were

5    unaware of their obligations until he appeared in the

6    case.  Your Honor, we'd also submit some evidence that

7    the defendants knew they had not produced or even

8    looked for certain emails and that they provided false

9    testimony about having produced documents which at that

10   time had not been produced.  And I'm going to show you

11   what I've marked as Exhibit 30 as excerpts from the

12   deposition of Don Abreu.  This occurred on May 26 of

13   2016.  And you'll see at page one ninety-four, line

14   seven to seventeen, I asked him if he had looked for

15   email -- for certain emails from 2012.  He answers no.

16   He testified they could be deleted and gone.  When I

17   asked if he has gone back to look, he says no.  On page

18   two-fourteen of his deposition I asked him at line

19   nineteen:  Do you have contracts with all of these

20   clients?  He responded:  We do.  I asked him why they

21   have not been produced in this lawsuit.  Mr. Abreu then

22   responds on line twenty-three:  They have.  My question

23   -- my following question was:  The only contracts that

24   have been produced in this lawsuit are the first one,

25   two, three, four contracts.  Mr. Abreu says that's not

39

1   true, on two-fifteen, page two-fifteen.  I then

2   question:  So are you telling me that others have been

3   produced?  Mr. Abreu testifies:  Yes, I am.  So on May

4   26, 2016, Mr. Abreu testified that he had produced

5   other documents, contracts, which we'll address in a

6   minute and those have not yet been produced.  The next

7   exhibit is Exhibit 31 which is another excerpt from his

8   deposition and I apologize, Counsel, I only have one

9   copy.

10          MS. ZAMORA:  I think that's just a fourth copy.

11          MR. GORDON:  Oh, is it?  Okay.  That's even

12   better.  The next exhibit, then, Your Honor, Exhibit

13   31, is an email from Mr. Scheyd dated July 22nd, 2016,

14   you know, more than two months after Mr. Abreu

15   testified under oath he had produced documents, in

16   which Mr. Scheyd is providing us -- and I haven't

17   reviewed all the attachments, but is providing us with

18   links of multiple other agreements that had not yet

19   been produced.  These would have been the documents

20   that Mr. Abreu testified had already been produced in

21   May, and this is the evidence to show that was a false

22   statement because two months later they actually

23   produced the documents.  Then, Your Honor, I've already

24   admitted this into evidence.  This would be exhibit --

25   I need to provide the Court with another copy of it.

40

1       MS. ZAMORA:  It is Exhibit 11.

2       MR. GORDON:  Exhibit 11, which is after we

3  received that email where -- and notably, Mr. Scheyd is

4  forwarding to us the information he received from his

5  clients and says, here are the agreements.  That same

6  afternoon on July 22nd in Exhibit 11, Ms. Zamora in my

7  office immediately writes back saying, you still

8  haven't produced the DVDNow contract, even in this

9  production.  We still don't have that contract.  And

10  this is -- Mr. Scheyd is just producing exactly what

11  his clients give to him.  So this is not a situation

12  where Mr. Scheyd is holding documents back, based on

13  that evidence.

14      Your Honor, I'd also show you Exhibit 32,

15  which is another excerpt from the deposition of Don

16  Abreu in which he testifies to producing another

17  document, an employee handbook, that had not been

18  produced.  And that's at page one sixty-two, line

19  twenty-four.  I asked him:  And did you produce to us

20  the employee handbook you have?  Mr. Abreu responds:  I

21  believe so.  Okay.  And it was not this one, which was

22  the one I was showing in his deposition.  His response

23  was, no, it was not.  But he believes that he had

24  produced that employee handbook to us.  If necessary,

25  Ms. Zamora is prepared to testify that the employee

41

1    handbook has not been produced to us in what we've seen

2    to date.  However, out of an abundance of caution, on

3    -- in Exhibit 33 on August 26, 2016, we wrote a letter

4    to Mr. Pollard in which we attempted to address this in

5    good faith, in which we note that we've not seen the

6    employee handbook and point them to the deposition

7    where he said he believed he had produced it and we

8    asked for a response.  In Exhibit 34 is Mr. Pollard's

9    response to us in which Mr. Pollard says that this is

10   his good faith response that he would confer with his

11   clients and get us an answer by the end of the day

12   Monday.  Now, that was on August 26 of 2016.  We still

13   have not received any response from Mr. Pollard, which

14   makes us somewhat skeptical of his statements that when

15   he will produce the documents in seven to ten days,

16   that he actually will.  We've yet to receive any

17   response to that request for that document.  So, Your

18   Honor, we believe that that evidence, which I would

19   move into evidence, demonstrates that the defendants

20   were aware of their discovery obligations and that they

21   provided testimony that they had produced documents

22   when, in fact, they had not and that ultimately they

23   were aware of their obligations and didn't fulfill

24   them.  So I would move that into evidence.

25            THE COURT:  Any objection?

42

1           MR. POLLARD:  No objection.

2           THE COURT:  They're admitted into evidence.

3           MR. GORDON:  Your Honor, I'm now going to brief

4     on the next factor which goes to the prejudice to the

5     defendants from the failure to respond.  I'm going to

6     show you as Exhibit 35 this is a letter dated August

7     29, 2016.  This would have been -- under the contempt

8     order, the defendants were ordered to produce the

9     documents to us on August 26, a Friday.  This is the

10    following Monday at the end of the day when we had

11    still not received the documents.  We sent this letter

12    to counsel, Exhibit 35, in which we notified them

13    because of their failure to comply with the Court's

14    contempt order, we're going to have to postpone the

15    depositions of Mr. Abreu and Andrew Manios that were to

16    occur on that Wednesday and Thursday immediately

17    thereafter.  So this goes to the prejudice of we've had

18    to delay depositions in the case.  We had depositions

19    set -- scheduled.  Exhibits 36 and 37 are the notices

20    of postponement of those depositions.  So Exhibit 36

21    will be postponement of Don Abreu's deposition and

22    Exhibit 37 will be the postponement of Andrew Manios'

23    deposition.

24           Your Honor, in addition, under the prejudiced

25    suffered and the unfairness to my client, part of the

43

1    damages that my client is seeking in this case are

2    actually disgorgement of the defendants' profits, that

3    is the element of my client's damages.  As Exhibit 38,

4    I'm submitting the profit and loss statements from the

5    defendants from 2014 through May of 2016.  And, Your

6    Honor, we submit this because in reviewing these,

7    you'll see that their average monthly revenue ranges

8    between fifty-eight thousand and eighty-two thousand

9    dollars a year.  And as long as this case proceeds and

10   is delayed, they continue to generate those revenues

11   which are damages to my client.

12          Your Honor, with respect to the remaining

13   factors, those get into the impact on the judicial

14   administration, which I think the Court can take

15   judicial notice of the hearings we've had, the upcoming

16   trial dates, and the pretrial deadlines that would be

17   impacted by this.  And so, Your Honor, those are the

18   documents we would submit.

19          I request at this time that I have an

20   opportunity to inquire of Mr. Scheyd of his

21   communications with his clients regarding these issues?

22       THE COURT:  Okay.  Before that, are you moving

23   Plaintiff's Exhibits 35 through 38 into evidence?

24       MR. GORDON:  Yes, Your Honor.  I'd move all the

25   exhibits into evidence.

8fd9dd4f-333d-459d-9148-17a6c0339674

44

```
 1              THE COURT:  Any objection?
 2              MR. POLLARD:  No, sir.
 3              THE COURT:  They're admitted into evidence.  Mr.
 4        Scheyd, if you will raise your right hand?
 5              MR. SCHEYD:  If I first may, I'm sincerely
 6        concerned about this.  If the Court orders me to
 7        testify, I will.  But I'm still record counsel for the
 8        defendants.  And I'm concerned that something that I
 9        may be asked might prejudiced my clients, and I just
10        wanted the Court and have the record noted that I'm
11        very concerned about that.
12              THE COURT:  I understand.  Let me just put you
13        under oath.  If there is an objection, then I'll --
14        I'll rule on that objection when it's raised.
15              MR. SCHEYD:  Okay.
16              THE COURT:  Raise your right hand.  Do you swear
17        to tell the truth, the whole truth, and nothing but the
18        truth, so help you God?
19              MR. SCHEYD:  I do.
20              THE COURT:  Thank you, sir.
21   WHEREUPON,
22                        JOSEPH M. SCHEYD
23   was called as a witness and after having been first duly
24   sworn by the Court, testified as follows:
25                        DIRECT EXAMINATION
```

45

1    BY MR. GORDON:

2        Q.    Mr. Scheyd, you've served as counsel of record

3    for the defendants throughout the history of this case,

4    correct?

5        A.    Yes, I have.

6        Q.    You've seen the evidence that's been submitted

7    here, various discovery requests that were sent to the

8    defendants, did you provide those discovery requests to your

9    clients?

10       A.    Yes, I did.

11       Q.    Did you advise them on their obligations to

12   respond to that discovery?

13       A.    Yes, I did.

14       Q.    We've also seen evidence of various good faith

15   letters exchanged with my office.  Did you provide those

16   good faith letters to your clients?

17       A.    I may have just told them about some, as opposed

18   to providing them the documents, to be completely candid.

19       Q.    That's good.  In response to those good faith

20   letters, however, did you follow up with your clients in

21   each of those occasions?

22       A.    Yes, I did.

23       Q.    When the Court entered the orders we've seen

24   compelling your clients to respond to discovery, did you

25   provide those orders to your clients?

46

1      A.    Yes, I did.

2      Q.    And did you explain to your clients their

3  obligations to respond to that discovery?

4      A.    Yeah.  Let me back up.  I want to make sure I get

5  this completely right.  Again, I'm not sure exactly that I

6  provided them with all the orders, but I did tell them about

7  the order and what was required.

8      Q.    So you certainly would have explained to them

9  their obligations to comply with those orders?

10      A.    Right.

11      Q.    What was your clients' response to those when you

12  explained those obligations to them?

13           THE WITNESS:  This is what I'm concerned about,

14      Your Honor.  I mean, I'm of record so --

15           THE COURT:  I understand.  And so you're raising

16      the attorney-client privilege?

17           MR. SCHEYD:  I think I should.

18           MR. GORDON:  Your Honor, and we would submit that

19      based on the papers and the positions taken by the

20      defendants in this case, they have invoked the advice

21      of counsel defense, and their cause for not being held

22      in contempt they would assert is what their prior

23      counsel did.  Therefore, under the Sword and Shield

24      Doctrine, a limited waiver of the privilege is

25      permitted so that I can inquire of their counsel what

47

1    was actually communicated in that regard.

2         THE COURT:  Mr. Pollard, awkward situation, but

3    since you're co-counsel, anything that you want to add?

4         MR. POLLARD:  I understand Mr. Scheyd's concerns

5    there from a standpoint of professional obligation but

6    I believe that analytically Mr. Gordon is correct.

7         THE COURT:  Okay.  Then the attorney-client

8    privilege is limited for -- for the purposes of this

9    deposition, at least as far as that question, and then

10   if you wish to raise it again, then I'll -- you know,

11   if I believe that it exceeds it and you object, then

12   I'll sustain that objection.

13        MR. POLLARD:  I believe there is a way to avoid

14   some of the stickiness of the issue, just by asking

15   what did the clients do in response to your directives,

16   that way you're not even getting into, you know,

17   communication, you're just getting into what did they

18   do in response?

19        THE COURT:  Well, and I'll let Mr. Gordon try his

20   case.  So that -- the objection is overruled.

21 BY MR. GORDON:

22   Q.    What was their -- your client's response?

23   A.    Different as to different requests for production

24 and discovery.  For some items, for instance the

25 communications request for production, they wanted to

48

1    provide it.  They asked for extensions.  I got extensions

2    and ultimately was told that it would take a year to provide

3    it.  For other things they were adverse to providing it and

4    made it known.  And on other items they provided them and I

5    provided them to -- to opposing counsel.

6         Q.    To the extent your clients have provided you with

7    documents to be produced, did you produce those to us?

8         A.    Yes.

9         Q.    You had mentioned that there were some items they

10   were adamant they were not going to provide.  I'd like to

11   address one, a DVDNow agreement, which is subject to the

12   contempt order and other orders.  Did you have a discussion

13   with your clients about their obligation to produce that

14   agreement?

15        A.    Yes, specifically Mr. Abreu.

16        Q.    And what did he say?

17        A.    He was not going to provide it.

18        Q.    Did he understand that he was under a court order

19   to provide it?

20        A.    Yes, he was.

21        Q.    And he told you he was not going to provide that

22   document even though he was under a court order to do so?

23        A.    That's correct.

24        Q.    What about the defendants' tax returns, did you

25   have discussions with them about their obligation to provide

49

1   tax returns?

2        A.    Yes.

3        Q.    Okay.  What did they tell you about that?

4        A.    Well, I didn't talk to all of them.  I believe it

5   was Mr. Abreu again, and he did not want to provide those.

6        Q.    Did you tell him he was under an order to provide

7   those documents?

8        A.    Yes.

9        Q.    Did you -- was Mr. Abreu your primary contact

10  with the defendants?

11       A.    Almost entirely until maybe around the mediation,

12  maybe a little bit before, and then my primary contact was

13  Andrew Manios.

14       Q.    Did you have discussions with Andrew Manios about

15  his obligation to provide documents?

16       A.    To the extent that that occurred after that time

17  frame because after the -- after the mediation, things sort

18  of changed as far as searching for a potential settlement

19  and that kind of thing but if I -- if I did get something, I

20  would communicate it to him then.

21       Q.    And we've seen where there was discussion with

22  him at his deposition about the obligation to provide

23  documents, correct?

24       A.    Correct.

25       Q.    And you saw his deposition testimony where he

50

1    said he had documents that he had not provided, correct?

2         A.    Correct.

3         Q.    And had he not even provided those documents to

4    you at the time?

5         A.    I don't remember what the documents were, to tell

6    you the truth.

7         Q.    Okay.

8         A.    So I'm not -- I can't testify positively to that.

9         Q.    And Mr. Abreu, was he your primary contact?  Was

10   he designated by the other defendants to be the primary

11   contact with you leading up through this case?

12        A.    Yes.

13        Q.    And Mr. --

14        A.    That was my understanding.

15        Q.    And Mr. Abreu told you that he was not going to

16   produce the tax returns, even with the court order?

17        A.    He didn't want to -- to produce the tax returns.

18        Q.    While you were involved, did he ever produce

19   those tax returns?

20        A.    No, he did not.

21        Q.    Even though you told him he was ordered to?

22        A.    Right.

23        Q.    When Mr. Pollard appeared in the case, what

24   became your respective roles with respect to responding to

25   discovery and complying with the court orders?

8fd9dd4f-333d-459d-9148-17a6c0339674

51

1        A.    I had no involvement.

2        Q.    Did Mr. Pollard ever inquire of you as to the

3   pending discovery obligations and issues in the case that

4   were pending?

5        A.    The only phone call I ever got from Mr. Pollard

6   was shortly after he filed a notice of appearance asking me

7   if procedures were followed for Mr. Manios' father's

8   deposition and that conversation lasted maybe sixty seconds,

9   that's the only phone call I've ever gotten from him.

10       Q.    You've only had one phone call with Mr. Pollard

11  since he appeared in this case?

12       A.    That's correct.

13       Q.    And that issue solely involved the deposition of

14  Louis Manios?

15       A.    That's correct.

16       Q.    He never inquired of you as to what discovery

17  obligations were pending?

18       A.    No.

19       Q.    He never inquired of you what had happened with

20  respect to complying with discovery orders?

21       A.    No.

22       Q.    Did you hand your file over to Mr. Pollard?

23       A.    Within a couple of days.  And, actually, my

24  clients had asked me to send the paperwork over.  I never

25  got a request from Mr. Pollard's office for the file but we

52

```
 1    immediately Fed Ex'd it over -- well, I had my assistant

 2    take care of it, put it together, and then we Fed Ex'd it

 3    over.

 4         Q.    With respect to the deposition of Louis Manios --

 5         A.    Yes.

 6         Q.    -- had you previously agreed to produce Mr.

 7    Manios, Louis Manios, for deposition?

 8         A.    Yes, after speaking with Andrew Manios.

 9               THE COURT:  Excuse me.  Who is Louis?  That's the

10         father of the two?

11               MR. GORDON:  Yes, Your Honor.

12               THE COURT:  Okay.

13               MR. GORDON:  And the CPA for all the defendants.

14               THE COURT:  Thank you.

15    BY MR. GORDON:

16         Q.    Andrew Manios, did he give you authority to agree

17    to produce Louis Manios for deposition without a subpoena?

18         A.    Yes.

19         Q.    Okay.  Did you tell Mr. Pollard that?

20         A.    I've never spoken to him about that.  Oh, oh, as

21    far as that --

22         Q.    In the sixty second --

23         A.    No.  We didn't get that far.

24         Q.    He simply asked if you had -- if a subpoena had

25    been issued?
```

8fd9dd4f-333d-459d-9148-17a6c0339674

53

1    A.    Right.  He was upset about that, as far as the

2    procedure to follow when the deponent is out of state.

3    Q.    So he never got around or gave you an opportunity

4    to explain that you had agreed to do that?

5    A.    Yeah.  The telephone conversation didn't last

6    that long.

7    Q.    But your clients gave you the authority to do so?

8    A.    Right.

9    Q.    At some point did you offer to comply with

10   discovery in a timely fashion or after multiple orders to

11   compel but before the contempt?  Did your clients authorize

12   you to offer to simply provide us with their hard drives and

13   computers to search?

14   A.    Yes.

15   Q.    And that was authority from your clients?

16   A.    Yes.

17   Q.    Okay.  And did you make that offer to us?

18   A.    Yes.

19   Q.    Did you or your clients ever produce those hard

20   drives and computers to us to comply with the discovery

21   orders?

22   A.    No.

23   Q.    Why not?

24   A.    Let me be as candid as I can, based on my memory.

25   That was around the time, again, of trying -- the effort to

8fd9dd4f-333d-459d-9148-17a6c0339674

54

1    resolve the case.  And I don't remember being urged to do

2    it.  I just think we kind of focused on what we thought was

3    a pending settlement, that's to the best of my memory.  I

4    just know it never happened.

5        Q.    And then at that time, is that when Mr. Pollard

6    got involved?

7        A.    Yeah.

8        Q.    Okay.  And are you aware of whether Mr. Pollard

9    has ever extended those documents to us?

10       A.    I don't know.  I don't know.

11       Q.    Did -- did you participate in the court-ordered

12   mediation in this case?

13       A.    Yes.

14       Q.    Have your clients paid the mediator's fee for

15   that?

16       A.    No.

17       Q.    Did you advise them of their obligation to do so?

18       A.    Yes.

19       Q.    When did that mediation occur?

20       A.    I don't really know.

21       Q.    Okay.

22       A.    A few months back, three or four months -- three

23   months?  I don't know, I really don't.

24       Q.    And months have passed and your clients still

25   have not paid the mediator?

55

1      A.     Right.

2             MR. GORDON:  Your Honor, I have no further

3      questions of Mr. Scheyd.

4             THE COURT:  Thank you.  Mr. Pollard?

5             MR. POLLARD:  Yes, Your Honor.  If I may address

6      some of the evidence that was put in a few moments ago.

7      First, with respect to the fact that --

8             THE COURT:  Okay.  Now, are you going to cross

9      Mr. Scheyd?

10            MR. POLLARD:  Yes.  Should I cross him first --

11            THE COURT:  Yes, sir.

12            MR. POLLARD:  -- and then go to the -- the

13     evidence?

14            THE COURT:  Yes, sir.

15            MR. POLLARD:  Thank you, Your Honor.

16                          CROSS-EXAMINATION

17     BY MR. POLLARD:

18     Q.     Mr. Scheyd, you testified moments ago that you

19     did not send the defendants copies of all of the orders,

20     pleadings, et cetera, received in this case, correct?

21     A.     Well, I'm not sure that I did; but I know I

22     certainly spoke to them about them.

23     Q.     But to be clear:  You did not, as a matter of

24     course, send each and every one of the defendants a copy of

25     each and every order entered by this Court?

56

1      A.    That -- what I said was I don't remember doing
2   that.
3      Q.    Okay.  So you can't sit here today and tell the
4   Court you sent each and every defendant all the Court's
5   orders?
6      A.    Well, the orders that he was discussing.
7      Q.    Mr. Scheyd, your testimony is a bit conflicted.
8   Did you send the clients, each one of the defendants, copies
9   of every order in this case?
10     A.    Yeah.  I don't know if I've done that.
11     Q.    Okay.  Wouldn't you agree with me that as a
12  matter of professional responsibility, it would be advisable
13  to send each of your clients in a significant trade secret
14  case copies of all the Court's orders in writing?
15     A.    I think it would certainly be advisable to keep
16  them informed of what the orders are and, in addition, to
17  provide it to them.
18     Q.    To provide them the written orders, that would be
19  advisable, correct?
20     A.    If not that, just to keep them informed of what
21  the order says.
22     Q.    Mr. Scheyd, you recall approximately fifteen of
23  these good faith discovery letters?
24     A.    I don't know how many there were.
25     Q.    There were -- there were a dozen plus, correct?

57

1      A.    I don't know.

2      Q.    Can you estimate how many there were?

3      A.    No.  There were several.

4      Q.    Mr. Scheyd, each time you got one of these

5  letters, what exact process did you follow?

6      A.    I don't know.  I either contacted them or

7  forwarded them a copy and then communicated with them to

8  tell them what was -- what was significant.

9      Q.    And when you say -- first, when you say

10 communicated with them, you've already testified, correct,

11 that you didn't email them all copies of this stuff?

12     A.    I don't know that I did.

13     Q.    Let's put the emailing aside.  You said you

14 otherwise communicated to them all that was going on?

15     A.    Yes.

16     Q.    Okay.

17     A.    That's -- yeah.  I think I did, yeah.

18     Q.    What's your hesitation there?

19     A.    I think I did.

20     Q.    You think you did?

21     A.    Uh-huh.

22     Q.    Why don't you know this for a fact?

23     A.    Because this case has been going on for a long

24 time, and I haven't been involved in it in the last

25 forty-five days and that's my testimony.

58

1      Q.    Mr. Scheyd, up until late July of this year, you

2   were the sole counsel for these defendants, were you not?

3      A.    I was.

4      Q.    Don't you think that there's a reasonable

5   expectation that you would be able to remember communicating

6   with them on all these important case events?

7      A.    I don't know.  I'm just telling you what the

8   truth is.

9      Q.    Mr. Scheyd, in terms of your day-to-day law

10  practice, have you delegated control of your cases to

11  someone else in your office?

12     A.    No.

13     Q.    So for this particular case, sir, do you mean to

14  tell me that you have had the primary day-to-day

15  responsibility for this case from its inception to the

16  present day?

17     A.    Yes.  Well, no, not to present day until you --

18     Q.    Through late July?

19     A.    Yeah.

20     Q.    And in spite of you having the primary day-to-day

21  responsibility, you forget what you might have emailed or

22  not emailed or what you might have communicated or not

23  communicated?

24     A.    Absolutely.

25     Q.    Why do you forget?

59

1          A.     I mean, I'm just being honest.

2          Q.     Are you under the influence of anything that

3    would cause you to have memory problems?

4          A.     No.

5          Q.     Have you ever been, during the pendency of this

6    litigation?

7          A.     Not that I'm aware of.

8          Q.     Not that you're aware of?

9          A.     Yeah.

10         Q.     Well, what do you mean?  Wouldn't you be aware if

11   you were under the influence of something?

12         A.     I think so.

13         Q.     Have you or have you not been under the influence

14   of something during this litigation?

15         A.     Just my medications prescribed by my

16   cardiologist.

17         Q.     Do those medications in any way impact your

18   memory?

19         A.     Nope, not that I'm aware of.

20         Q.     Mr. Scheyd, did you -- strike that.

21                Mr. Scheyd, when you communicated with the

22   clients, which we know you didn't do via email consistently,

23   you did so via telephone, correct?

24         A.     I did so by email and by telephone.

25         Q.     Okay.  But if you had communicated with the

8fd9dd4f-333d-459d-9148-17a6c0339674

60

1    clients via telephone on a particular case matter or an

2    order, would you call all three of the clients?

3         A.    No.  I make it very specific when I take on a

4    case that has multiple defendants, that I want to know who

5    the one point man was.  Because it's critical to me that I

6    don't have different people that are involved at -- as the

7    defendant or a plaintiff contacting me and me having to

8    field all of those discussions.  So I designate a point man

9    and that's usually the person that I communicate to.

10        Q.    Mr. Scheyd, are you paid for your time?

11        A.    No, not in this case.

12        Q.    Were you paid for your time?

13        A.    At one time.

14        Q.    At one time?

15        A.    Uh-huh.

16        Q.    Is it your testimony that responding -- strike

17   that.

18              To be clear, you represented the company, the

19   Manioses and Mr. Abreu?

20        A.    That's correct.

21        Q.    So you had four clients there?

22        A.    Correct.

23        Q.    As a matter of professionalism, don't you believe

24   it's incumbent upon you as an attorney for these four

25   different parties to communicate with each and every one of

61

1    the parties you represent?

2        A.    Can you ask that again?

3        Q.    Certainly.  You represent four parties in this

4    litigation, correct?

5        A.    Ultimately, yes.

6        Q.    Ultimately.  Let's put aside the corporate form.

7    Let's say you represent the three individuals.

8        A.    Uh-huh.

9        Q.    Don't you believe you have a professional

10   obligation to communicate with all three of those

11   individuals?

12       A.    Well, in this particular circumstance, whenever I

13   emailed, I send it usually to Abreu and then CC'd Chris and

14   Andrew.  When Andrew became the point man and I was

15   emailing, I sent it to Andrew and then CC'd Abreu and his

16   brother.  There wasn't a fourth email for Global.

17       Q.    But you just testified moments ago that you can't

18   even remember if you sent them everything via email or

19   writing?

20       A.    Right.

21       Q.    And so you had a bunch of phone calls with these

22   folks?

23       A.    I did.

24       Q.    So when you had phone conversations -- so let's

25   say hypothetically you had a phone conversation about an

62

1    important order, would you have that conversation with each

2    of the three individuals?

3        A.    No.

4        Q.    You would just call one of them?

5        A.    I called the one that was the point person.

6        Q.    Okay.  So if -- if stuff is hitting the fan in a

7    case like this and there's orders to compel, orders to show

8    cause, and orders for contempt, don't you believe it would

9    have been prudent for you to call each one of these three

10   clients and explain to them exactly what was going on?

11       A.    That's not what I did.

12       Q.    Why?

13       A.    I just explained to you.  I was calling a point

14   man and he would, in turn, talk to the others and it worked.

15   It wasn't a matter of -- of somebody not getting

16   information.

17       Q.    What do you mean, "it worked"?

18       A.    I mean everybody was aware.

19       Q.    Mr. Scheyd, you agree that the clients in this

20   case, these are not lawyers, correct?

21       A.    That's -- that's true.

22       Q.    These are laypeople?

23       A.    Yes.

24       Q.    They're not particularly educated?

25       A.    I don't know what their education level is.

63

1    Q.    And so you basically, if you had a phone call

2    with one of them, you basically would rely on that one

3    layperson to communicate all that's going on to the other

4    two?

5    A.    Given whatever conversation we had and the level

6    of detail, yeah, that's what I would rely on.

7    Q.    How can you expect they would communicate

8    correctly or even understand?

9    A.    Because that's what I expect and I make them

10   aware of it.

11   Q.    Mr. Scheyd, did you ever go to these folks and

12   say, give me your email account log in and your email

13   account password because I'm going to bring in a third-party

14   vendor to collect all these documents?

15   A.    No.

16   Q.    Mr. Scheyd, in the course of your professional

17   tenure, have you represented clients who take a stubborn

18   position and say, well, we don't want to do A, B, or C?

19   A.    We all have.

20   Q.    Absolutely.  And you agree with me that if you

21   practice long enough, you'll see a case where the clients

22   are stubborn and they want to do A, B, C or they don't want

23   to do A, B, C and you've got to sit them down and you've got

24   to give them what we call, frankly, a come-to-Jesus talk?

25   A.    Agreed.

64

1        Q.    Absolutely.  Where you say, you've got to do

2   this.

3        A.    Absolutely.

4        Q.    You've got to hand this stuff over right now, no

5   more games.

6        A.    Absolutely.

7        Q.    Did you have that talk with each single one of

8   these clients?

9        A.    I had it with Don Abreu.

10       Q.    What about the Manios brothers?

11       A.    Well, with Andrew when I was taking care of him

12  but -- or he was my point man.  But it went so far as to say

13  -- and I think you probably have the email, as far as the

14  DVDNow contract -- there was no concern about contempt or --

15  or anything like that.  I mean, he didn't want to give it to

16  them.  He didn't think it was -- it was something that they

17  -- they should have.  So, I mean, I did try.

18            THE COURT:  And I'm sorry, Mr. Scheyd.  When you

19       say "he," who is "he"?

20            THE WITNESS:  Pardon?

21            THE COURT:  When you said "he" didn't have any

22       concerns or "he" wasn't going to turn over that, who is

23       the "he"?

24            THE WITNESS:  Mr. Abreu as -- we're talking about

25       the discovery part.

8fd9dd4f-333d-459d-9148-17a6c0339674

65

1            THE COURT:  Yes, sir, thank you.

2            THE WITNESS:  Yeah.  I mean -- and I know what

3       you're saying.  I know to urge them on and it worked a

4       lot of times but if you -- if you recall, in the

5       beginning when discovery was started, we had an

6       incident where we couldn't get documents.  Ultimately,

7       there was a hearing.  There was a motion for contempt.

8       There was payment of attorney's fees.

9  BY MR. POLLARD:

10       Q.    Mr. Scheyd, would you agree that you could have

11  handled this case better?

12       A.    I think that I could have -- actually, no.  And

13  I'll tell you why, if you want me to tell you?

14       Q.    Certainly.

15       A.    My clients, after Mr. Abreu's deposition,

16  reflected I had concerns.  They asked me to hire an attorney

17  to evaluate the case, a third-party evaluator.  I did.  And,

18  you know, you can't -- you can't do any better than that.

19  And, you know, there was an agreement on -- on where the

20  case stood and so I think -- I think I did everything I

21  could do.

22       Q.    Mr. Scheyd --

23       A.    I don't think I could do it like you do it.

24       Q.    Mr. Scheyd, are you aware that we have since

25  produced tax returns to the other side?

8fd9dd4f-333d-459d-9148-17a6c0339674

66

1      A.    I just -- I heard that this morning.

2      Q.    How do you explain the fact that we were able to

3  get those tax returns when you suggested that the clients

4  didn't want to hand them over?

5      A.    I asked Don Abreu for them.  He didn't give them

6  to me.  He didn't want to give them to me.

7      Q.    Are you aware we brought in a company to collect

8  all these email accounts?  We've collected all the relevant

9  email accounts.  We're in the process of reviewing all these

10 documents.

11     A.    I heard you say that, yeah.

12     Q.    Why -- why didn't you do that?

13     A.    Because they wanted to give the hard drives to

14 them, that's what I was authorized to offer.  When I say

15 them, I mean the plaintiff.

16          MR. POLLARD:  Thank you, Your Honor.  I have no

17     further questions.  I would -- I'm sorry.

18          THE COURT:  Well, let him finish cross.

19          MR. POLLARD:  Yes, sir, Your Honor.

20          THE COURT:  Let me let them rest their case and

21     then you can put on yours.  Yes, sir.

22                    REDIRECT EXAMINATION

23 BY MR. GORDON:

24     Q.    A couple of quick follow-ups, Mr. Scheyd.  I just

25 want to confirm.

67

1      You had that come-to-Jesus discussion with Mr.

2   Abreu, correct?

3      A.   I feel I did, yeah.

4      Q.   And when Mr. Manios took over, Andrew Manios, you

5   had the come-to-Jesus discussion with Andrew Manios?

6           MR. POLLARD:  Objection.  Misstates prior

7       testimony.

8           THE COURT:  That's overruled.

9           THE WITNESS:  Yeah.  Well, that came in

10       conjunction with the mediation and, you know, the

11       settlement time frame and we reached an agreement, he

12       and I did.

13   BY MR. GORDON:

14      Q.   And in that context, you had a discussion with

15   Mr. Manios about if there wasn't an agreement, what his

16   obligations would be and the obligations to respond to

17   discovery that he had fallen short of, correct?

18      A.    Well, yeah, everybody was aware of what the

19   discovery -- where the discovery was.  He was -- they were

20   most concerned about those communications and how voluminous

21   that was.

22      Q.    And -- but there's no doubt in your mind that you

23   adequately explained to Andrew Manios his obligations and

24   where he had fallen short of those obligations in response

25   --

68

1          A.     I think I did, yeah.

2          Q.     With respect to the idea of when you represent

3     multiple defendants in a closely held company like this, is

4     it in your experience normal practice to have the clients

5     designate one person to be the communicator with the client

6     -- with counsel?

7          A.     Every time.

8          Q.     That's what you always do when you have multiple

9     defendants?

10         A.     Every time.

11         Q.     Okay.  Based on your discussion with the

12    defendants -- you've spoken with all three defendants,

13    correct?

14         A.     Yes, I have.

15         Q.     You met with all three, correct?

16         A.     Yes.

17         Q.     And have they all three confirmed that they

18    communicate regularly with one another about what's going on

19    in the case?

20         A.     That was my impression.  I can't say that I

21    specifically asked that question, hey, are you guys talking?

22    But, for instance, at the deposition -- I mean, at the

23    mediation they all showed up and I only communicated with

24    one of them on that and everybody was on the same page with

25    the content of what was about to happen.

8fd9dd4f-333d-459d-9148-17a6c0339674

69

1        Q.    And I've seen emails that we've admitted into

2    evidence where you did copy Chris Manios and Andrew Manios,

3    as you've testified, correct?

4        A.    In fact, when we -- when Mr. Abreu's deposition

5    was prepared and I received an email copy, I sent it to

6    everybody.  I sent a copy to all of my clients.

7             MR. GORDON:  Okay.  Your Honor, those are all the

8        questions I have for Mr. Scheyd.

9             THE COURT:  Okay.  Your next witness?

10            MR. GORDON:  Your Honor, rather than call a next

11       witness, if I don't have to, I would like to just go

12       through some evidence and see if there is a stipulation

13       and maybe we can just stipulate it into evidence.  I

14       want to know will the defendant stipulate that they did

15       not respond to the request for admissions to all three

16       clients until yesterday evening?

17            MR. POLLARD:  Yep.  We'll stipulate.

18            MR. GORDON:  And, Your Honor, you can take

19       judicial notice that those were due some months ago.

20            THE COURT:  Yes, sir.

21            MR. GORDON:  Will the defendants stipulate that

22       they've not complied with the Court's order to provide

23       a witness list?

24            MR. POLLARD:  I don't rightfully know on that.

25       We have been working on our witness list.  The problem

70

1   is the universe of people is so large and we have not

2   taken any depositions yet.  We haven't received much in

3   the way of discovery.  We have no idea how to narrow

4   the relevant universe.  We did not want to submit a

5   twenty page long witness list.  You know, we've been

6   working on that diligently but I'm not sure whether or

7   not we've submitted it.

8         MR. GORDON:  Your Honor, if I need to, I can call

9   Ms. Zamora to testify that a witness list has not been

10  received.

11        THE COURT:  It's up to you.

12        MR. POLLARD:  I'll take your representation.

13        MR. GORDON:  Well, I'm going to -- to be careful,

14  I'm going to put it in.  So, Your Honor, I would like

15  to briefly call Ms. Zamora.

16        THE COURT:  Ms. Zamora, if you will raise your

17  right hand?  Do you swear to tell the truth, the whole

18  truth, and nothing but the truth, so help you God?

19        MS. ZAMORA:  I do.

20        THE COURT:  Thank you, ma'am.

21  WHEREUPON,

22                     DARIAN ZAMORA

23  was called as a witness and after having been first duly

24  sworn by the Court, testified as follows:

25                   DIRECT EXAMINATION

71

```
 1    BY MR. GORDON:
 2         Q.    Ms. Zamora, you're responsible for receiving the
 3    discovery and the pretrial deadlines from the defendants in
 4    this case?
 5         A.    Yes, I am.
 6         Q.    All right.  The pretrial order from the Court
 7    required a witness list to be provided some time ago,
 8    correct?
 9         A.    Yes.
10         Q.    As of today, have the defendants produced a
11    witness list?
12         A.    No.
13         Q.    Okay.  The order also required an exhibit list
14    some time ago.  Have the defendants today provided an
15    exhibit list as ordered by the Court?
16         A.    No, they have not.
17              MR. GORDON:  No further questions, Your Honor.
18              THE COURT:  Any cross?
19              MR. POLLARD:  No, sir, Your Honor.
20              THE COURT:  Thank you.  Yes, sir.
21              MR. GORDON:  Your Honor, also there is an order
22         that this Court entered appointing a special master
23         that required that each side pay a five thousand dollar
24         retainer to the special master I think a week or so
25         ago.  I can stipulate that my clients paid that five
```

72

```
1       thousand dollar retainer.  I don't know if the

2       defendants can stipulate that they have or have not

3       paid that retainer to the special master.

4            MR. POLLARD:  To my knowledge, I don't believe we

5       have.

6            MR. GORDON:  Thank you.  Your Honor, based on

7       that, that's all the evidence that I have to present in

8       support of this motion.

9            THE COURT:  Okay.  Mr. Pollard, evidence?

10           MR. POLLARD:  I do not have any evidence to

11      present.

12           THE COURT:  Okay.  And arguments?

13           MR. GORDON:  Your Honor, again, I don't come here

14      lightly on a motion to strike pleadings.  You know,

15      we're not asking for a specific dollar amount at this

16      time but we do believe liability is appropriate.  You

17      have heard Mr. Scheyd testify that he communicated with

18      his clients and that Mr. Abreu, who was designated as

19      the point of contact, specifically said he was not

20      going to give the DVDNow contract, even if your Court

21      -- if you ordered it, which you've ordered it twice

22      now.  And even today, despite these evidence that --

23      that they may have produced something last night, they

24      have not produced that DVDNow contract.  There's no

25      evidence to the contrary.  They said they weren't going
```

8fd9dd4f-333d-459d-9148-17a6c0339674

73

1    to produce it even if you ordered it and they haven't

2    done it.  Similarly with the tax returns, they say they

3    produced them last night and we did receive some tax

4    returns.  We don't know if they are all of them or not,

5    we didn't have an opportunity to review; but again,

6    Your Honor, they didn't want to produce those.

7         There is the deposition testimony where these

8    defendants were aware of their obligations.  This isn't

9    something that surprised them.  At the end of the day,

10   Mr. Scheyd has testified that he met the standard of

11   care of a lawyer to keep his clients advised of their

12   obligations and to fulfill that and to get their

13   responses.  There's no obligation that he go out and

14   hire a third-party vendor to do all these things,

15   there's no evidence that his clients would have

16   authorized him to do so.  The testimony is they haven't

17   even paid him.  They haven't paid the mediator.  They

18   haven't paid the special master as ordered by the

19   Court.  At the end of the day, these defendants are

20   aware.  They've already been sanctioned twice now.  And

21   I assume Mr. Pollard, based on his representations and

22   questions to Mr. Scheyd, certainly had the

23   come-to-Jesus with his clients when the Court entered

24   the motion to compel that he was counsel for, the

25   contempt order that he was counsel for, and yet still

74

1     they have not complied.

2          Your Honor, at the end of the day, there's

3     nothing else.  My client is left with the position

4     discovery ends in a week.  This is all because of their

5     own dilatory tactics.  And, you know, whether Mr.

6     Pollard coming in, he's going to bring in these

7     third-party vendors, which I note none of that is in

8     evidence.  There's no evidence that they have committed

9     any efforts to actually comply with this discovery.

10    The representations of counsel are insufficient.

11    There's no evidence in this case they've done anything

12    to comply with this order, other than I will stipulate

13    last night on the eve of this hearing we got some

14    production of documents with an email from them saying

15    that isn't everything.  So other than them stipulating

16    they were still in contempt of Court, there's no

17    evidence of their compliance.  And, Your Honor, at this

18    point my client is left with no other choice other than

19    to have to extend this trial date, which would not be

20    fair after two-and-a-half years, or to proceed to trial

21    hamstringed by not having the evidence that they need.

22          So, Your Honor, I realize that it is a severe

23    sanction.  I don't take it lightly.  But I do believe

24    that based on this, the Court can find that the

25    defendants knew what was going on and they had a total

8fd9dd4f-333d-459d-9148-17a6c0339674

75

1          disregard for the consequences because here we are,

2          after having been sanctioned, after the warnings that

3          the counsel gave them, there's no reason they're not

4          here today to explain why they should not be held in

5          contempt further.  So, Your Honor, I respectfully ask

6          that the Court strike the defendants' pleadings, enter

7          a default judgment as to liability in favor of the

8          plaintiff, order that the trial proceed solely on the

9          issue of remedies and damages, and to award my client

10         fees and costs for this hearing in the amount of five

11         thousand seven hundred one dollars and fifty cents.

12         And I have an affidavit as to fees, if the Court would

13         like to see that.  Thank you, Your Honor.

14              THE COURT:  So strike the defendants' pleadings,

15         enter a judgment as to liability, and then have the

16         trial on damages?

17              MR. GORDON:  Yes, sir, Your Honor.

18              THE COURT:  Okay.  Mr. Pollard?

19              MR. POLLARD:  Yes, sir, Your Honor.  Thank you.

20         If we go back to where plaintiff's counsel started with

21         the Mercer case, we're again left with that language of

22         there was no showing that the defendant either

23         attempted to comply with discovery or communicated any

24         explanation or excuse to the Court by the time the

25         motion was heard.  I submit, Your Honor, that as an

8fd9dd4f-333d-459d-9148-17a6c0339674

76

1          officer of the court, if Ms. Zamora can testify to what

2          has been received or not been received, then I can

3          attest to what has been done, not been done, or been

4          produced.  And in the instant case, it is my sworn

5          testimony as an officer of the court --

6               THE COURT:  You're not under oath.

7               MR. POLLARD:  I'll go under oath.

8               THE COURT:  I asked you if you had any evidence

9          and you said no evidence.  So now you want to open the

10         case up and testify?

11              MR. POLLARD:  If I could, at this point --

12              THE COURT:  Okay.  Raise your right hand.

13              MR. POLLARD:  -- I would appreciate it, Your

14         Honor.

15              THE COURT:  Do you swear to tell the truth, the

16         whole truth, and nothing but the truth, so help you

17         God?

18              MR. POLLARD:  I do, yes, sir, Your Honor,

19         absolutely.

20    WHEREUPON,

21                    JONATHAN POLLARD

22    was called as a witness and after having been first duly

23    sworn by the Court, testified as follows:

24              MR. POLLARD:  I would offer the following

25         testimony.  I have engaged a third-party litigation

8fd9dd4f-333d-459d-9148-17a6c0339674

77

1    support vendor, who at this point in time has already

2    collected all of the relevant emails from all of the

3    relevant custodians.  We are in the process of

4    reviewing these documents in an attempt to get them

5    produced.  So we have, in fact, taken steps to comply

6    with the Court's order.  That is the extent of my

7    testimony, but I think it's important.

8              THE COURT:  Cross?

9              MR. GORDON:  Yes, sir, Your Honor.

10                      CROSS-EXAMINATION

11   BY MR. GORDON:

12        Q.    Mr. Pollard, you stipulate that your clients

13   remain in contempt of the Court's contempt order?

14        A.    Yes.

15        Q.    You agree your clients have not provided the

16   DVDNow contract?

17        A.    I am unaware of that.

18        Q.    So you're counsel of record?

19        A.    Yes.  I'm counsel of record.

20        Q.    You just asked Mr. Scheyd all these questions

21   about things he's supposed to know and understand.

22        A.    Yes, sir.

23        Q.    Have you delegated responsibility of this case to

24   someone else in your office?

25        A.    I've delegated parts of the responsibility.

78

1    However, if you ask me about a particular single document

2    out of thousands of documents and multiple agreements, I

3    cannot tell you with absolute certainty whether or not I

4    have produced the DVDNow agreement or not.

5        Q.    I'm specifically asking about the DVDNow

6    agreement that was in the Court's contempt order which he

7    specifically ordered you, when you were present, to produce.

8    Have you, as counsel of record, produced that document?

9        A.    I cannot tell you off the top of my head if I've

10   produced that exact document.

11       Q.    So you've only been involved in this case for

12   what, a month or two months?

13       A.    Slightly over a month.

14       Q.    Okay.  And you've attended two hearings before

15   this Court, correct?

16       A.    Yes, sir.

17       Q.    Both of which specifically address that DVDNow

18   agreement, correct?

19       A.    They addressed far more than the DVDNow

20   agreement.

21       Q.    Specifically, the DVDNow agreement was referenced

22   by the Court's order, correct?

23       A.    Yes.

24       Q.    Okay.  And you were aware of that?

25       A.    Yes.

8fd9dd4f-333d-459d-9148-17a6c0339674

79

1    Q.    And even today after only being in the case

2    slightly over a month, you don't even know whether your

3    clients have produced that document that was specifically

4    referenced in the Court's order of contempt?

5    A.    We -- we owe you thousands of documents.

6    Q.    I'm asking about the DVDNow agreement.

7    A.    Yes.  We owe you that document as well.

8    Q.    So you don't -- you do know you haven't produced

9    it?

10    A.    I said I cannot testify today that I've produced

11    that document.  If not, we owe you that document, in

12    addition to thousands of others that we are in the process

13    of working on getting for you.

14    Q.    And you've communicated to your clients their

15    discovery obligations in this case?

16    A.    Yes.

17    Q.    And you've not provided my office with the hard

18    drives and computers, as Mr. Scheyd testified he was

19    authorized to provide, correct?

20    A.    We have no problem providing you with the hard

21    drives.  We do have an objection to the scope of the search,

22    which was filed yesterday.

23    Q.    I want to be very clear.  Mr. Scheyd testified

24    that to avoid his clients being held in contempt of court,

25    he had been authorized by the defendants to provide the

80

1    computers and hard drives to my firm?

2        A.    Yes.

3        Q.    And my question is:  Your clients were

4    subsequently held in contempt of court, correct?

5        A.    Yes.

6        Q.    After you appeared as counsel, correct?

7        A.    Yes.

8        Q.    And you have not provided those documents as your

9    clients authorized Mr. Scheyd to do, correct?

10       A.    Excuse me.  Documents or drive?

11       Q.    The drives?

12       A.    When would you like the drive?

13       Q.    Have you done so?

14       A.    Have you requested that I produce the drive to

15   you?

16            MR. GORDON:  Your Honor, if he could just answer

17        the question?

18            THE COURT:  You just need to answer the question.

19            THE WITNESS:  No.  I have received no request

20        from the other side for a date certain on which to

21        produce the drive to them for inspection and at what

22        location.

23   BY MR. GORDON:

24       Q.    And you are in contempt of the Court's order,

25   correct?

81

1          A.    We are in contempt of the Court's order to compel

2     the documents from several days ago, yes.

3               MR. GORDON:   Your Honor, no further questions.

4               THE COURT:   Thank you.   Any redirect?

5               MR. POLLARD:   No, nothing further.   I would like

6          to end my testimony.   And the only reason why I

7          requested to do that is simply to ensure that there's a

8          record that we are attempting to comply.   I'll be, you

9          know -- it's clear that the plaintiffs and their

10         counsel have repeatedly advised Mr. Scheyd throughout

11         the pendency of the litigation of, you know, this is

12         what's due, this is what's outstanding, this is what's

13         delinquent, et cetera.   But what's not clear from the

14         record here today is that these dozens of good faith

15         conference letters, these numerous court orders, were

16         communicated to each of the defendants.   Because this

17         is not a situation where it's just one company and

18         everybody falls under the company umbrella.   These

19         folks are also being sued in their individual

20         capacities.   And the record before the Court does not

21         reflect that Mr. Scheyd communicated all of these

22         correspondences, all of the Court's orders.   He

23         testified moments ago that he didn't always send them

24         via email.   He didn't always send them via writing.

25         He'd have a phone call with one of them and not

8fd9dd4f-333d-459d-9148-17a6c0339674

82

1    necessarily the others.  So it cannot be conclusively

2    established or established beyond a reasonable doubt

3    that the defendants have acted in bad faith or

4    willfully failed to comply with the Court's orders.

5    And I believe the proof that they're not willful,

6    they've -- they failed to comply certainly but that it

7    hasn't been willful.  The proof of that is in the fact

8    that certain documents which Mr. Scheyd said, well,

9    they wouldn't hand over, they wouldn't give them to

10   them, we got them, the tax returns.

11        THE COURT:  I'm sorry?

12        MR. POLLARD:  The tax returns, for example.  Mr.

13   Scheyd said, well, they wouldn't hand over the tax

14   returns, we couldn't get those from them.  We got the

15   tax returns.  So if it were the defendants acting in

16   bad faith willfully obstinately saying we're not going

17   to give them these documents, they wouldn't have given

18   them to me.  I wouldn't have been able to produce those

19   tax returns.  And with respect to everything

20   outstanding, all we can do is attempt to comply.  The

21   case law, Mercer, makes clear that failing to comply,

22   even badly failing to comply and having a whole lot of

23   problems with it, that does not justify the ultimate

24   sanctions so long as there is evidence in the record

25   that the party at issue is attempting to comply and

83

1    there is an explanation there.  And in this case, we do

2    have an explanation, which is that the defendants are

3    laypeople.  They're not lawyers.  They're not highly

4    educated.

5            THE COURT:  There's no evidence of that.

6            MR. POLLARD:  Well, they're not lawyers.  There's

7    no evidence that they're lawyers.

8            THE COURT:  That's true.

9            MR. POLLARD:  They relied on Mr. Scheyd to

10   communicate with them their obligations.  And the

11   record reflects that, in my opinion, Mr. Scheyd did not

12   fully discharge that duty.  And the clients -- the

13   evidence in front of us, including the deposition

14   transcripts at issue -- to revisit one of them, if we

15   go back to Mr. Abreu's deposition, Mr. Abreu's

16   deposition says he thought he produced a whole bunch of

17   contracts.  There's -- there's nothing in the record to

18   indicate that Mr. Abreu didn't produce those contracts

19   and give them to Mr. Scheyd and that somewhere they got

20   lost along the way.  Again with Mr. Manios, in Mr.

21   Manios' deposition, they hammer him in this proceeding

22   for saying that he reviewed some documents that he knew

23   about these documents and he knew he had to produce

24   them but what they don't highlight is at the end of the

25   excerpt where Mr. Manios explains that he's got all of

84

1      these emails saved from his previous computer and it's

2      in a file and it doesn't open right.  He doesn't know

3      anything about computers, but he has these emails and

4      he's trying to get them.  So they highlight him saying

5      he reviewed these documents.  He knows he owes them but

6      at the end of the excerpt he says, they've got it on an

7      old computer.  I'm having problems with this.  I don't

8      know anything about technology.  I'm trying.  At the

9      end of the day, Your Honor, my clients have failed to

10     comply with their discovery obligations, that is not

11     something we can reasonably dispute, but the failure

12     has not been willful.  And I believe that issues with

13     their prior counsel have contributed to that failure,

14     and I respectfully request that my clients not be given

15     the ultimate sanction and be given the opportunity to

16     defend themselves.

17          THE COURT:  Thank you, Mr. Pollard.  Mr. Gordon,

18     anything else?

19          MR. GORDON:  Your Honor, just a couple of things.

20     Mr. Pollard notes the tax returns.  Last night, Your

21     Honor, is when those showed up.  We still don't even

22     know if they've complied.  They haven't submitted them

23     here today.  We know we got some tax returns.  No doubt

24     we would not have gotten those documents if we were not

25     here right now asking for this ultimate sanction.  We'd

8fd9dd4f-333d-459d-9148-17a6c0339674

85

1      still be waiting on those documents.  Unlike the Mercer

2      case, which was -- I mean, that was twenty days they

3      didn't respond.  The evidence shows this has been going

4      on for months.  This deposition testimony, that was

5      months and months ago that these guys still have not

6      produced anything or made an effort to produce it.

7      Since the contempt order was entered we've heard

8      nothing from Mr. Pollard.  There's no evidence that

9      during the time period for contempt that he filed a

10     motion saying, Your Honor, I need more time.  Well,

11     here is my justification or submitted evidence as to

12     what he was doing prior to the deadline set forth in

13     the contempt order.  Which, that's what was the problem

14     in Mercer, is during your period of compliance you just

15     were silent and that's exactly what has happened here,

16     but more so it's happened here after months and months

17     and months of knowing of their obligations and of not

18     producing them and the evidence is they knew they had

19     these documents.  They hadn't produced them.  They knew

20     they were required to.  Your Honor, at this point it is

21     one of those situations in which they're saying, well,

22     give us more of an opportunity to cure.  Well, Your

23     Honor, the time has run out.  And they wouldn't be

24     asking, but for the fact we're here now asking for this

25     sanction.  So I realize it is severe, Your Honor, but

86

1    we ask for that relief.

2         THE COURT:  The Court certainly acknowledges that

3    it's the ultimate sanction.  And as I did my homework

4    and went through the plaintiff's binder, I highlighted

5    different matters that were in there.  I thought the

6    chances of the plaintiff prevailing are very slim

7    because it's just really hard to fulfill that.  You

8    know, you're taking away all those rights from the

9    defendant without -- arguably without them having their

10   day in court.  And so coming in today, I didn't think

11   that I was going to grant it.  It's always, I do my

12   homework, I have my thoughts, sometimes I write down

13   notes, deny, grant, and put question marks next to

14   those on what I think where, when I'm sitting in here

15   and y'all are in the heat of battle and I'm watching,

16   at least I have my thoughts of what I was thinking in

17   the -- in my chambers without all of that heated

18   battle.  I don't always follow that advice that I'm

19   giving myself, or at least what my thoughts are when

20   I'm in my chambers, frequently I change it.  I do it

21   subject to what I hear and the evidence that I hear;

22   but at least from the pleadings and the documents, I

23   write down my thoughts.  I really didn't think that I

24   was going to grant this today.

25         However, the testimony of Mr. Scheyd, also

8fd9dd4f-333d-459d-9148-17a6c0339674

89

1     least one of the orders.

2              Whether the attorney offered reasonable

3     justification for the noncompliance, the Court finds

4     that there has not been a reasonable justification for

5     the noncompliance of the defendants.

6              Whether the delay created significant

7     problems of judicial administration, the Court finds it

8     does.  The case has been pending for all this time.

9     It's been set for trial.  There's no way that it's

10    going to go to trial if I don't grant this sanction.

11    So the Court does strike the defendants' pleadings.

12    The Court enters -- will enter a judgment as to

13    liability against the defendants and will go to trial

14    just on the damages only.  The Court does award

15    attorney's fees to the plaintiff.  But unless Mr.

16    Pollard stipulates to the 5701.50, the Court reserves

17    jurisdiction to determine the amount of that -- of

18    those fees.

19            MR. POLLARD:  We'd have to take it under

20    advisement and see what the time entries were.

21            THE COURT:  Okay.  So as far as the trial, we're

22    going on damages.  You've got a week left for your --

23    for the discovery.  It sounds like there are other time

24    periods that are gone as far as witness lists and all

25    those matters.  The pretrial conference, has that been

90

1    had yet?

2              MS. ZAMORA:  It's set for September 15th.

3              THE COURT:  Okay.  Okay.  Then unless you set a

4    hearing -- well, September 15th is next week.  So I

5    will see you next week at the pretrial conference.

6    We'll figure out where we go and what the timing is, if

7    that makes any difference on how long it will take to

8    try the case.  Mr. Scheyd?

9              MR. SCHEYD:  Can I get my order to withdraw now?

10             THE COURT:  Well, have you filed a motion to

11   withdraw?

12             MR. SCHEYD:  Yeah.  And it's noticed for next

13   Friday, and I was just hoping I could ore tenus move

14   for that.

15             THE COURT:  Mr. Pollard, any objection to that --

16   well, I don't know if you have the ability to

17   stipulate.  The rule says we either have a hearing on

18   it or your clients have to agree to it.

19             MR. SCHEYD:  Well, my -- well, not -- not based

20   on the rule that I've cited.  The -- the reasoning that

21   I've provided in there allows for me to be withdrawn or

22   to withdraw, regardless.  I don't have that with me so

23   maybe --

24             THE COURT:  But then I would have to have a

25   hearing on that before I could do it.

91

1          MR. SCHEYD:  But anyway --

2          THE COURT:  So, no, sir, I think I need to wait

3     for that hearing.

4          MR. SCHEYD:  Okay.

5          THE COURT:  Mr. Gordon, if you will please

6     prepare that proposed order?

7          MR. GORDON:  Yes, I will, Your Honor.  If I

8     could, and there may be -- and we can address it at the

9     pretrial conference next week.  There are still some

10    outstanding discovery issues, particularly where we

11    need more financial information that go to the damages

12    issue of being able to evaluate the costs -- profits

13    and maybe we can work with counsel between now and that

14    pretrial conference to come forward to the Court with a

15    proposed solution on how to address that prior to the

16    trial date and we'll address that next week.

17         THE COURT:  Okay.  Anything else for today?  I

18    know we ran over but --

19         MR. POLLARD:  I mean, we had seven or eight

20    motions set for today, many of which involved discovery

21    issues.

22         THE COURT:  Why don't we take a five-minute

23    recess and then we'll come back and we'll work on those

24    for -- until 11:30 or a little after, since my eleven

25    o'clock canceled, and then we'll see where we go from

92

1        there.

2                MR. POLLARD:  I mean, I don't know how -- we can

3        talk about what's pertinent.

4                THE COURT:  You want a ten-minute recess?

5                MR. GORDON:  Give us just a couple of minutes to

6        talk about, you know -- I think a lot of that can be

7        addressed but this order may address all that.

8                THE COURT:  Let's recess until 11:00.

9    (WHEREUPON, A BREAK WAS TAKEN FROM 10:54 A.M. TO 11:07 A.M.)

10               THE COURT:  Mr. Gordon, what do we have left?  I

11       know that there are many motions that were set.

12               MR. GORDON:  There were, Your Honor, and I think

13       that I've spoken with Mr. Pollard, and to the extent a

14       lot of those are discovery motions, I think that Mr.

15       Pollard and I need some time for the next week to kind

16       of go through the discovery and see if we can work

17       together on what now is at issue and the timing for

18       providing that and we'd like to -- if we can't agree on

19       something at the pretrial conference next week, we can

20       seek the Court's guidance in that regard.  The other

21       motions that we would like to go ahead and have heard

22       are two motions, one of which is our -- the Court

23       previously found that we were entitled to recover our

24       attorney's fees for the last contempt hearing.

25               THE COURT:  Yes, sir.

93

1          MR. GORDON:  So this is a motion -- a hearing on

2     the amount of those fees, which Ms. Zamora has

3     affidavits on that.

4          The second issue is the whole reason we were

5     to be here today.  Several months ago you had entered

6     an order compelling -- or allowing us to seek discovery

7     of various nonparties and seek documents, that was then

8     appealed on a petition for cert to the First DCA.  And

9     you entered a stay of that discovery either pending the

10    DCA's review or until today, at which time you would

11    re-address that.  And what we would request today is

12    their response brief is due I think next week to the

13    First DCA.  What we'd ask at this point is that this

14    Court lift your stay effective Monday of next week to

15    allow Mr. Pollard time as he's doing his -- his brief

16    to be filed, to then if he chooses to, to seek a stay

17    from the First DCA, at which point the First DCA can

18    enter the stay of the order.  But given where we are

19    with the discovery deadline, we would ask the Court

20    lift its stay and we would concede that would not be

21    effective until Tuesday of next week so that Mr.

22    Pollard would have the opportunity to seek the

23    appropriate emergency relief from the First DCA.

24          THE COURT:  Mr. Pollard?

25          MR. POLLARD:  I mean, I don't want to but I think

94

1     I have to oppose it, just based on my clients'

2     position.

3          THE COURT:  Okay.  The Court will extend the stay

4     through next Monday and then that discovery, that

5     production, will be allowed.

6          MR. GORDON:  Thank you, Your Honor.

7          THE COURT:  You need that information for your

8     damages?

9          MR. GORDON:  Yes, Your Honor.  It will go into

10    what they were paid by their customers and those types

11    of information.

12         THE COURT:  I understand.

13         MR. GORDON:  And we'll prepare an order on that,

14    if you'd like?

15         THE COURT:  Okay.  And do you want to take

16    testimony as far as -- well, you said affidavits.  Any

17    objection, Mr. Pollard, to the Court admitting into

18    evidence the affidavits regarding attorney's fees?

19         MR. POLLARD:  No objection.

20         THE COURT:  Okay.

21         MS. ZAMORA:  Your Honor, if I could just

22    summarize briefly, these are three affidavits, two

23    affidavits of attorney's fees and one for each motion

24    for civil contempt.  The first motion for civil

25    contempt which was filed on July 27th, the amount of

95

1      those attorney's fees is one thousand two hundred and

2      nine dollars and here is a copy for Your Honor and a

3      copy for Mr. Pollard.

4              THE COURT:  Thank you.

5              MS. ZAMORA:  The second motion for attorney's

6      fees which was filed on July 28th, this is the amended

7      motion for civil contempt.  The amount of those fees

8      are one thousand eight hundred and seventy-two dollars.

9      Here is a copy for the Court.

10             THE COURT:  Thank you.

11             MS. ZAMORA:  And so the total fees for both

12     motions is thirty thousand eighty-one dollars.  We also

13     have an affidavit of costs incurred in connection with

14     the amended motion for civil contempt.  Those costs

15     were to obtain the deposition transcript of Andrew

16     Manios, which we filed as evidence in support of that

17     motion, and also the appearance fee of a court

18     reporter.  And those costs are nine hundred and

19     eighty-two dollars and ninety cents.  Here is a copy

20     for the Court.

21             THE COURT:  Thank you.

22             MS. ZAMORA:  And the total amount of fees and

23     costs for both motions, the total of all those

24     affidavits, is four thousand sixty-three dollars and

25     ninety cents.

96

1          THE COURT:  First, Mr. Pollard, so there's no

2     objection to the affidavit of costs, affidavit of

3     attorney's fees and two affidavits of attorney's fees

4     being admitted into evidence?

5          MR. POLLARD:  I have no objection to the actual

6     documents themselves being admitted into evidence.

7          THE COURT:  Okay.  They're admitted into

8     evidence.  Okay.  Any other evidence from the

9     plaintiff?

10          MS. ZAMORA:  No, Your Honor.

11          THE COURT:  Okay.  Mr. Pollard, any evidence from

12     the defendant?

13          MR. POLLARD:  My concern is with respect to

14     costs.

15          THE COURT:  Okay.

16          MR. POLLARD:  And these being costs for a

17     deposition transcript that's part of the ordinary

18     course of litigation and not necessarily tied directly

19     to a motion for contempt, that's the sole reason why I

20     wouldn't stipulate to this.

21          THE COURT:  Okay.  Yes, ma'am, argument?

22          MS. ZAMORA:  Your Honor, those -- the deposition

23     transcript at issue, we've actually requested multiple

24     deposition transcript but the particular deposition

25     transcript that we're requesting reimbursement for was

8fd9dd4f-333d-459d-9148-17a6c0339674

97

1    filed in support of our motion for contempt and we

2    actually used portions of it during our argument at the

3    hearing.

4         THE COURT:  Okay.  The Court does award and finds

5    that the attorney's fees are reasonable, as are the

6    costs, and that all of those relate to the orders or

7    the motions for contempt.  And so the four thousand

8    sixty-three dollars and ninety cents is awarded.  Okay.

9    What's next?

10         MR. GORDON:  Your Honor, if I could, just going

11    back, I think those are the only other pending issues;

12    but it occurred to me as we were talking, there is the

13    matter of the hundred dollar per day coercive fines

14    that the Court imposed, that as of today would be a

15    thousand dollars.  Given the Court's ruling, I think

16    the coercive fines would stop today but there is a

17    matter of I think it's a thousand dollars.

18         MS. ZAMORA:  I believe it's nine hundred.

19         MR. GORDON:  Nine hundred dollars that there

20    needs to be an order to pay by a certain day.

21         THE COURT:  Mr. Pollard, argument?

22         MR. POLLARD:  None.

23         THE COURT:  Okay.  The Court does award a -- now,

24    how would that work?  Okay.  So, I mean, if I give a

25    final judgment, then you're on your own to try to

98

1    collect it.  Is it an order that requires them to pay

2    it?  And then if they fail to pay it, do you have to

3    prove that they have the ability to pay before I can do

4    a writ of bodily attachment?  Do -- do we put in there

5    that -- because I don't have evidence here.  I don't --

6    I don't have evidence of their ability to pay that

7    amount.  So do we say they pay it by this date and if

8    they fail to do it, then there's a hearing on an order

9    to show cause and you provide that to me ex parte and

10   then I -- all I do by that order is set the date for

11   the order to show cause?  And I've always wondered what

12   happens if the other side doesn't show up?  Although in

13   this case you have some financials and they were

14   entered into evidence on the -- on a previous motion

15   hearing but I've always wondered how does the Court

16   find somebody is able to pay money if they don't show,

17   just a thought I had.

18        MR. GORDON:  And, Your Honor, what I think is we

19   would ask that an order be entered that the nine

20   hundred dollars be paid by a date certain, and if it's

21   not paid, that there is an order to show cause.  At

22   which point, they would be required to come forward to

23   show cause as to why they can't pay.  Obviously, it's

24   an issue that we had briefed in these other things.

25   It's our position that so long as they are in violation

99

1    of that order, they cannot essentially reap the

2    benefits of litigation without shouldering the burdens.

3    So, obviously, until they comply with that, we would

4    say, well, they're not allowed to continue to litigate

5    the case against us until they have come into

6    compliance.

7         THE COURT:  Okay.  The nine hundred dollar

8    coercive sanctions shall be paid no later than 5:00

9    p.m. on October 7th of 2016.

10        MR. GORDON:  And are those paid to the Court,

11   Your Honor, or are they paid to us?

12        THE COURT:  Mr. Pollard, what are your thoughts

13   on that?  As you can tell, I don't do that very

14   frequently.  I have had ones paid in to the -- in to

15   the clerk before.

16        MR. POLLARD:  I believe it's paid in to the

17   court, Your Honor.  I believe their motions to recover

18   attorney's fees on the contempt orders appropriately

19   compensate them for that.  I believe a coercive

20   sanction by law and rule is paid in to the court.

21        THE COURT:  Okay.  It will be paid to the clerk

22   of court.

23        MR. GORDON:  Okay.

24        THE COURT:  Mr. Pollard, any motions that you

25   wish for me to hear today?

100

1          MR. POLLARD:  All of my motions related to

2     discovery, and per Mr. Gordon's remarks moments ago, I

3     believe that's something that Mr. Gordon and I will

4     have to confer on, given that at least some, if not

5     much, of what we were seeking in discovery would have

6     gone to the underlying merits of the case, as opposed

7     to all that's left now, which is damages.

8          THE COURT:  Okay.  Thank you.

9          MR. GORDON:  Thank you, Your Honor.

10          (WHEREUPON, THE HEARING WAS CONCLUDED.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

8fd9dd4f-333d-459d-9148-17a6c0339674

101

CERTIFICATE OF REPORTER

STATE OF FLORIDA)

COUNTY OF OKALOOSA)

    I, Rebecca S. Daniels, Registered Professional

Reporter, certify that I was authorized to and did

stenographically report the foregoing proceedings and that

the transcript is a true and complete record of my

stenographic notes.



_____

REBECCA S. DANIELS
REGISTERED PROFESSIONAL REPORTER

8fd9dd4f-333d-459d-9148-17a6c0339674